IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES W. RILEY, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 04-1435-GMS |
| | : | |
| THOMAS CARROLL, | : | |
| | : | |
| Warden, | : | |
| | : | |
| Respondent. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, the respondent states the following in response to the petition for a writ of habeas corpus:

A Superior Court jury convicted James Riley in 1982 for the murder of James Feeley, the owner of a liquor store which Riley and co-defendants Tyrone Baxter and Michael Williams had decided to rob on February 8, 1982. Riley's conviction and sentence were affirmed on direct appeal. *Riley v. State*, 496 A.2d 997 (Del. 1985). The Superior Court denied Riley's application for post-conviction relief, and the decision was affirmed on appeal. *Riley v. State*, 585 A.2d 719 (Del. 1990). Riley then sought federal habeas relief, and in 2001 the Third Circuit Court of Appeals reversed Riley's convictions and ordered a new trial. *Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001).

On April 11, 2003, Riley, was found guilty upon retrial by a Delaware Superior Court jury of first degree (felony) murder, first degree robbery and possession of a deadly weapon

during the commission of a felony. (A1).[1] The jury also acquitted Riley of intentional murder and a related conspiracy charge. Upon motion and after a hearing on the matter, Riley had proceeded *pro se* during the guilt phase of his trial, and the Superior Court appointed Riley's two attorneys as stand-by counsel. (A5-6). At Riley's request, however, stand-by counsel was then reappointed to represent Riley at the ensuing penalty phase hearing. (A7). Following the penalty hearing, the jury recommended a life sentence by vote of 12 to 0. Riley was then sentenced to a mandatory term of life in prison for the murder conviction and to a total of 25 years in prison on the remaining counts. (B128-33).

Riley appealed, and after an evidentiary hearing on remand, the Superior Court issued a report to the state supreme court which found that Riley voluntarily waived his right to counsel on appeal. The state supreme court then granted Riley's request to proceed *pro se*. The state supreme court also gave Riley to option of to have trial counsel continue as standby counsel on appeal, but Riley chose not to do so. The conviction and sentence were affirmed on direct appeal. *Riley v. State*, No. 259, 2003, 2004 WL 2850093 at *1 & n.3 (Del. June 18, 2004).

## Discussion

Riley advances four claims in the model § 2254 petition: 1) he was denied the Sixth Amendment right to counsel because defense counsel had a conflict of interest; 2) the trial court failed to conduct an adequate inquiry regarding an alleged conflict of interest between Riley and defense counsel; 3) the state supreme court decision is tainted by the participation of justices who should have been disqualified for participating in prior proceedings involving

---

[1]"A" and "B" herein refer respectively to the appellant's appendix and the State's appendix submitted with the briefs in *Riley v. State*, No. 259, 2003.

Riley; and 4) the state supreme court decision regarding Riley's conflict of interest claim was unreasonable. (D.I. 2 at 5-6 and handwritten addendum on back of pages 5-6).

In claims one, two and four, Riley presents three variations of a single issue: that he was denied the right to counsel because his trial attorneys should have been disqualified due to a conflict of interest. While Riley presents the issue in three numbered grounds for relief in the model § 2254 form, a plain reading reveals that each relates to the single underlying substantive claim. Riley presented the claim in his direct appeal, and thus state remedies have been exhausted. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

Federal habeas review in this case is subject to the terms of the Antiterrorism and Effective Death Penalty Act of 1996. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Revised § 2254 restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see, e.g., Price v. Vincent*, 538 U.S. 634 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 21-22 (2002); *Williams v.*

*Taylor*, 529 U.S. 362, 402-03 (2000). The issue here is thus whether a decision of the state supreme court on the merits of an issue was contrary to, or involved an objectively unreasonable application of, clearly established Federal law, as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state courts. *See Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000).

The gist of Riley's underlying substantive claim is that the Superior Court did not conduct an adequate inquiry into Riley's claim of a conflict of interest with his two appointed conflict attorneys. As the argument goes, the inadequate inquiry compelled Riley to represent himself at trial. Importantly, the record reveals that during the trial proceedings, Riley never requested substitution of counsel prior to his trial, but instead Riley submitted a request to proceed *pro se*. In contrast to Riley's claim, the Superior Court conducted a lengthy and fully adequate inquiry in the nature of Riley's alleged conflict of interest. On March 19, 2003, the Superior Court conducted a pre-trial hearing specifically to determine the issue of Riley's request to proceed *pro se*. (A22-48; B48-50). After the hearing, the Superior Court found that Riley had knowingly and voluntarily exercised his right to self-representation at trial.[2] (A43; B49-50). The court conducted a lengthy colloquy with Riley discussing the implications of the decision. Riley agreed that his differences with counsel were irreconcilable because he wanted to present evidence at trial which defense counsel had concluded would have been unethical for an attorney to adduce at Riley's trial. Riley, in fact, balked when the Superior Court initially indicated that Riley's defense attorneys would be

---

[2]*See generally Faretta v. v. California*, 422 U.S. 806 (1975).

4

appointed as stand-by counsel. (A43-45). The court informed Riley that defense counsel would assist Riley only upon request, and that Riley was otherwise in charge of his own representation. Notably, stand-by counsel was appointed at Riley's request during the penalty phase, and Riley apparently has no complaint about the resulting 12-0 vote for a life sentence. Notably too, Riley then dismissed counsel yet again for purposes of the direct appeal, and he proceeded without any representation in the direct appeal.

Certainly, Riley was unequivocal in his request to represent himself. And Riley's right to self-representation was itself protected by the Sixth Amendment; significantly, the trial court would have run afoul of *Faretta v. California*, 422 U.S. 806 (1975) had it forced unwanted counsel upon Riley. *See Appel v. Horn*, 250 F.3d 203, 213 (3d Cir. 2001) (discussing "narrow line" between right to counsel and right to self-representation under *Faretta*). The Supreme Court has determined that a court cannot "compel a defendant to accept a lawyer he does not want" if he voluntary and intelligently chooses to represent himself. *Faretta*, 422 U.S. at 833. And against the backdrop of Riley's unequivocal demand for self-representation, the trial court would have violated the Sixth Amendment had it foisted unwanted counsel upon Riley at trial. *See Appel*, 250 F.3d at 213. But *Faretta* is equally clear that the courts should be on guard against the potential for a defendant's improper manipulation of this issue. 422 U.S. at 834 n.46. At trial, Riley knowingly and voluntarily exercised his right to proceed *pro se* and should not be heard to complain about the point here.

Consistent with *Faretta*, the Superior Court recognized Riley's right to proceed *pro se*. Then, when Riley reversed his position on this issue on appeal, the state supreme court

5

properly and correctly affirmed the Superior Court's conclusion that Riley's decision had been knowing and voluntary. *See Godinez v. Moran*, 509 U.S. 389, 400-01 (1993); Faretta, 422 U.S. at 385. As explained in *Godinez*, whether Riley's decision was knowing and voluntary requires that Riley understand "the significance and consequences of [his] decision and whether the decision [was] uncoerced." 509 U.S. at 401 n.12; *see also Buhl v. Cooksey,* 233 F.3d 783, 789-90 (3d Cir. 2000) (granting habeas relief because the state court did not permit defendant to represent himself); *Dunn v. Johnson*, 162 F.3d 302, 307 (5th Cir. 1998); *Gov't of the Virgin Islands v. James*, 934 F.2d 468, 471-72 (3d Cir. 1991).

      Here, as in the state courts, Riley does not contend that he was not competent to stand trial. *See Godinez*, 509 U.S. at 399-401. Nor is there any allegation that Riley was unable to understand the state court proceedings or the charges and potential sentence he faced. The trial judge granted Riley's request after conducting a hearing on the matter and engaging in a lengthy colloquy with Riley. Counsel was readily available to consult with Riley at that hearing. The trial judge reviewed Riley's background and the serious charges and potential sentence that Riley faced. The trial judge discussed potential pitfalls associated with self-representation and warned Riley in very strong terms that the court felt that Riley was making a big mistake. As found by the trial judge and determined by the state supreme court on appeal, the record clearly demonstrates that Riley was capable of communicating with his lawyer and that he understood the proceedings. *See James*, 934 F.2d at 471-72. The record clearly supports the conclusion of the state courts that Riley demonstrated a sufficient understanding of the proceedings to meet the constitutional standard of competence to stand trial, and perforce, to exercise his right to self-representation.

The record thus reveals that the trial judge conducted a thoroughly adequate inquiry and that Riley was capable of communicating with counsel and the trial judge. Having lost at trial, Riley reversed his stance on appeal. The state supreme court, however, rejected Riley's argument: "The transcript of the March 19, 2003 hearing clearly reflects that the judge conducted a detailed examination of the specific circumstances of Riley's request to proceed *pro se* and, while warning him repeatedly of the risks of doing so, properly granted his request." *Riley*, *supra*, 2004 WL 2850093 at ¶ 20. Riley thus made his decision voluntarily, fully informed of the dangers inherent to self-representation, and with the adequate assistance of counsel. Certainly, the decision of the state supreme court (that Riley knowingly and voluntarily exercised his right to self-representation under *Faretta)* cannot be deemed an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). *See Early*, 537 U.S. at 8; *Woodford*, 537 U.S. at 24-25; *Williams*, 529 U.S. at 402-03. Nor did the state courts' rejection of the claim involve an unreasonable determination of the facts in light of the evidence presented at the March 19, 2003 hearing which was conducted specifically to address Riley's request to proceed *pro se*. *See* 28 U.S.C. § 2254(d)(2); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). Therefore, Riley's claim that the trial court should not have permitted him to represent himself at trial fails to provide a basis for federal habeas relief.

To the extent that Riley's claim is deemed to be an allegation that counsel's representation at trial was constitutionally deficient, that claim too fails to provide a basis for federal habeas relief. In order to prevail on a claim of ineffective assistance of counsel, Riley was required to allege and establish facts meeting the test of *Strickland v. Washington*, 466

U.S. 668, 695 (1984): (1) that counsel's actions fell below an objective standard of reasonableness, and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *United States v. Brown*, 991 F.2d 1162 (3d Cir. 1993). Riley must allege not only the errors of counsel, but how these errors undermined his trial. *See Hill*, 474 U.S. at 60.

The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised § 2254(d). *E.g.*, *Woodford*, 537 U.S. at 22; *Williams*, 529 U.S. at 390; *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001); *Johnson v. Carroll*, 327 F. Supp. 2d 386, 395 (D. Del. 2004). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: performance deficiency and prejudice to the defense. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." In evaluating defense counsel's performance, a reviewing court should also "eliminate the distorting effects of hindsight," and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In a letter dated March 18, 2003, one of Riley's appointed attorneys informed the Superior Court that Riley had indicated that he would proceed *pro se* if he did not plead guilty. (A4; B44-47). Thus, the court conducted the hearing regarding Riley's request to proceed *pro se* after Riley indicated he would not accept a plea offer. At no time did Riley request new counsel. (A23-24). At the hearing, Riley explained that he disagreed with his

attorneys about how the case, some of the evidence, and his proffered alibi defense should be handled. (A27-29, 31). Riley told the court that he felt competent to represent himself at trial. (A29-30). The record reveals that defense counsel felt ethically constrained not to present the alibi defense advanced by Riley due to Riley's interviews with prior counsel in which "he described in significant detail his own participation in the robbery and subsequent murder." (A14). Counsel, in fact, sought ethical guidance from the Professional Ethics Committee of the State Bar Association as to whether counsel had an ethical obligation to inform the trial court that Riley intended to present false testimony. (A15). Defense counsel also carefully articulated his position to the trial court without revelation of the substance of Riley's intended perjury: Riley's was a capital murder trial, and the court would ultimately pronounce sentence. *See United States v. Long*, 857 F.2d 436, 446 (8th Cir. 1988) (risk of prejudice associated with disclosure of defendant's intended perjury to judge who will sentence defendant) (citing *Holloway v. Arkansas*, 435 U.S. 475, 487 n.11 (1978)). And Riley's claim that defense counsel somehow manufactured record support for their position at the March 19, 2003 hearing is belied by the record and amounts to no more than a conclusory and unsubstantiated claim which cannot provide a basis for federal habeas relief.

In sharp contrast to Riley's allegations, therefore, defense counsel's representation both before and during the hearing was manifestly reasonable. This is so because an attorney who threatens to withdraw and refuses to cooperate with prospective perjury does not deprive a defendant of his right to counsel or his right to testify truthfully. *Nix v. Whiteside*, 457 U.S. 157, 173-74 (1986) (cited in *Williams*, 529 U.S. at 391-92). The right to effective assistance of counsel simply does not include the right to present perjured testimony. *E.g., Shockley v.*

9

*Kearney*, Civ. Act. No. 95-207-SLR, 1996 WL 431093 (D. Del. July 25, 1996) (citing *Nix*, 475 U.S. at 160-61). And here, comparable to the situation in *Nix*, it was Riley's own statements which caused defense counsel to pursue the course they did. 475 U.S. at 176. Riley also conveniently ignores that he requested the re-appointment of counsel for the penalty phase of his trial, a point in the proceedings where Riley, as a practical matter, could no longer contemplate the presentation of false alibi testimony.

Moreover, Riley cannot demonstrate any conceivable prejudice. As detailed above, the scope of the constitutional right to testify does not extend to testifying falsely. *Nix*, 475 U.S. at 173. But as a practical matter, the actions of defense counsel did not prevent Riley from testifying. During the trial, Riley decided not to testify after discussing the matter with the trial judge. (A126-28). As Riley said, "I made the decision voluntarily." (A128). And as observed by the state supreme court, Riley advanced evidence of his alibi defense from the first trial but chose not to press the matter further in closing argument. *See Riley*, *supra*, 2004 WL 2850093 at ¶ 11. Finally, Riley's *pro se* efforts yielded at least some positive results for his defense case: the jury acquitted Riley of first degree intentional murder and the corresponding conspiracy charge. (A1). In turn, defense counsel were reappointed as counsel of record to represent Riley at the penalty phase of the trial (A7) after which the jury recommended by a vote of 12 to 0 that Riley be sentenced to life in prison and not death. Accordingly, Riley's complaints about defense counsel manifestly fail to establish prejudice.

In sum, the state courts' rejection of Riley's claim that he should not have been permitted to proceed *pro se* was consistent with clearly established legal principles and was a reasonable application of those principles to the facts in this case. As a result, by the terms

10

of § 2254(d), Riley's first, second and fourth claims do not provide a basis for federal habeas relief. *See Hartey v. Vaughn*, 186 F.3d 367, 373 (3d Cir. 1999).

*Second Claim Presents Only an Issue of State Law*

In the third claim, Riley argues that the state supreme court decision is tainted by the participation of justices who should have been disqualified for participating in prior proceedings involving Riley. In particular, Riley identifies Chief Justice Myron Steele and Justice Randy Holland as the two state supreme court justices whose participation in the direct appeal upon retrial he deems objectionable. The state supreme court decided Riley's direct appeal upon retrial in a decision dated September 13, 2004. Based on arguments which Riley advanced in a motion for rehearing *en banc*, the court reconsidered Riley's appeal with a new panel. The panel consisted of Justices Randy Holland, Caroline Berger and Jack Jacobs. The new panel issued a superseding order affirming Riley's conviction dated October 20, 2004. *Riley v. State*, No. 259, 2003, 2004 WL 2850093 at *1 nn.1-2 (Del. Oct. 20, 2004) (*en banc*) (citing DEL. SUPR. CT. R. 4) . A plain reading of the state supreme court opinion reveals that Chief Justice Steele did not participate in determining the superseding order, and Riley's allegation therefore is simply a *non sequitur*. Absent the factual predicate of Chief Justice Steele's actual involvement in determining the final order in Riley's direct appeal upon retrial, there is no reason to undercut the validity of the state supreme court's October 20, 2004 decision. Accordingly, Riley's claim as it relates to Chief Justice Steele lacks any basis in law or fact and should be summarily rejected.

Riley also apparently objects to Justice Holland's participation in determining the direct appeal upon retrial because Justice Holland also sat on the panel which determined

Riley's post conviction appeal (*Riley v. State*, 585 A.2d 719 (Del. 1990) (*en banc*)). There is no basis to conclude that Justice Holland harbored any actual bias toward Riley, and Riley does not allege otherwise. Similarly, there is no record support to support a conclusion that Justice Holland relied on any extrajudicial information in determining Riley's direct appeal. Instead, Riley's narrow complaint is limited to an objection based on Justice Holland's participation in the 1990 *en banc* decision affirming the denial of state post-conviction relief. That claim, however, manifestly fails to provide a basis for federal habeas relief. *E.g., Bowen v. Snyder*, Civ. Act. No. 97-375-SLR, 1999 WL 1011972 at *7 (D. Del. Oct. 22, 1999) (rejecting challenge to trial judge's participation in state post-conviction proceeding); *Getz v. Snyder*, Civ. Act. No. 97-176-SLR, 1999 WL 127247 at *21 (D. Del. Feb. 18, 1999) ("Because the record fails to establish any bias toward petitioner by the trial judge, no constitutional harm arose from the trial judge's review of petitioner's post-conviction appeal."); *see generally Johnson v. Carroll*, 369 F.3d 253 (3d Cir. 2004) (sentencing judge was not required to be recused based on an appearance of bias standard); *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (holding trial judge's participation in prior proceedings involving defendant did not support recusal on grounds of impartiality); *United States v. Jackson*, 627 F.2d 1198, 1207 n.20 (D.C. Cir. 1980) (same); *Wilkerson v. United States*, 591 F.2d 1046, 1047 (5th Cir. 1979) (holding trial judge did not have duty to recuse himself because he had presided over another trial where defendant was convicted of a felony).

Finally, to the extent that Riley objects merely to the re-issuance of the order by a different panel of the state supreme court, that presents merely an issue of state law for which

habeas relief is unavailable. *See Coleman v. Thompson*, 501 U.S. 722, 739 (1991). As stated succinctly in *Coleman*, the Court has "no power to tell the state court how they must write their opinions." 501 U.S. at 739. It is axiomatic, therefore, that in the context of federal habeas review, Riley cannot seek review of the state court judgment, but merely the lawfulness of his custody. *See id.* at 730. Accordingly, Riley's claim regarding the nature of the state supreme court's disposition of his appeal does not implicate either federal law or the Federal Constitution, and thus it falls beyond the scope of rights protected by habeas review. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 63, 67-68 (1991); *see, e.g.*, *Davis v. Snyder*, Civ. Act. No. 99-547-GMS, 2002 WL 169261 at * 7 (D. Del. Jan. 31, 2002) (claim that state supreme court failed to conduct a meaningful review not cognizable on federal habeas review).

Conclusion

Based upon the Superior Court docket sheet, it appears that the transcripts of Riley's trial proceedings and sentencing have been prepared. In the event that the Court directs production of any other transcript, the respondent cannot state with specificity when the transcript could be produced, but reasonably expects that production would take 90 days from the issuance of any order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/
Thomas E. Brown
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID#  3278
*ThomasE.Brown@state.de.us*

Date: June 20, 2005


# CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of this Court, hereby certifies that on June 20, 2005 he caused to be electronically filed the attached document (Answer) with the Clerk of the Court using CM/ECF. I hereby certify that on June 20, 2005 I have also caused to be mailed by first class U.S. Mail two copies of the document to the following non-registered participant, the petitioner:

    James W. Riley (No. 00169716)
    Delaware Correctional Center
    1181 Paddock Road
    Smyrna, DE 19977.

/s/_____
Thomas E. Brown
Deputy Attorney General
Del. Dept. of Justice

Counsel for Respondent

Date: June 20, 2005