Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Not Reported in F.Supp.2d, 1999 WL 127247
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Charles R. GETZ, Jr. Petitioner,
v.
Robert W. SNYDER, Warden, and M. Jane Brady,
Attorney General of the State of Delaware,
Respondents.
**No. CIV. A. 97-176-SLR.**

Feb. 18, 1999.

David P. Buckson, Esquire, Camden, Delaware,
Counsel for Petitioner.
Loren C. Meyers , Esquire, Timothy J. Donovan, Jr. ,
Esquire, William E. Molchen , Esquire, and Thomas E.
Brown , Esquire of the Delaware Department of
Justice, Wilmington, Delaware, Counsel for
Respondents.

MEMORANDUM OPINION

ROBINSON , District J.

## I. INTRODUCTION

Charles R. Getz, Jr. ("petitioner") is a state prisoner
serving a life sentence at the Delaware Correctional
Center ("DCC") in Smyrna, Delaware. Respondents
Robert W. Snyder and M. Jane Brady are the warden of
DCC and the Attorney General of the State of
Delaware, respectively. In August 1989, a Delaware
Superior Court jury found petitioner guilty of the first
degree rape FN1 of his eleven year old daughter. FN2
On April 10, 1997, petitioner filed a petition for habeas
corpus relief pursuant to 28 U.S.C. § 2254. FN3 (D.I.1)
In his application for federal habeas corpus relief under
28 U.S.C. § 2254, petitioner sets forth thirty-five
grounds for relief. The parties have briefed these issues
in full. For the following reasons, the court will deny
petitioner's application.

FN1. Following petitioner's indictment, but
before his sentencing, the Delaware
legislature recodified and renamed first degree
rape as "Unlawful Sexual Intercourse in the
First Degree" at 11 Del. C. § 775 (1987). The
legislature explicitly provided that the
amendments would not apply to crimes,
"committed, or alleged to have been
committed, before the dates of the enactment
of these amendments." See 65 Del. Laws ch.
494, § 5. Because petitioner was indicted
before the enactment of the amendments, the
state prosecuted him under the old first degree
rape statute. See 11 Del. C. § 764 (1979).

FN2. Initially, a Superior Court jury convicted
petitioner of first degree rape in 1986. On
direct appeal, however, the Delaware
Supreme Court overturned that conviction due
to the trial court's erroneous introduction of
"other crimes evidence" in violation of the
Delaware Rules of Evidence. See Getz v.
State, 538 A.2d 726, 734 (Del.1988); see also
Del. R. Evid. 404(b). On remand, petitioner's
second trial ended in a mistrial when a
prejudicial cartoon was discovered in the jury
room. See D.I. 6 at A387.

FN3. Petitioner filed his initial brief pro se.
On April 23, 1997, the court received a notice
of attorney appearance for petitioner from
David P. Buckson, Esquire. (D.I.9) Because
petitioner drafted his opening brief and large
portions of his reply brief, the court will
construe the petition liberally. See Haines v.
Kerner, 404 U.S. 519, 520-21 (1972).

## II. BACKGROUND

The court gleans the following facts from the Delaware
Supreme Court's findings in its opinion in petitioner's
direct appeal, Getz v. State, No. 364, 1990 WL 168288
(Del. Sept. 13, 1990) ("Getz I "), the Kent County
Superior Court's opinion in petitioner's motion for
postconviction relief, Getz v. State, Crim.A.No. IK
86-04-0085RI, 1994 WL 465543 (Del.Super.Ct. Jul.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 2
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

15, 1994) ("*Getz II* "), the Delaware Supreme Court's opinion affirming the denial of postconviction relief, *Getz v. State*, No. 301, 1994 WL 622022 (Del. Oct. 31, 1994) ("*Getz III*"), and the court's independent review of the state court proceedings and the briefs submitted by the parties. FN4

> **FN4.** Petitioner objects to the facts as recited by the Delaware Supreme Court and requests that the court accept petitioner's own factual allegations as true. (D.I. 36 at 3) Section 2254, however, requires courts considering habeas corpus petitions to accept a state court's findings of fact as correct in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Petitioner has presented no evidence to rebut this presumption of correctness.

At the time of the offense, the victim and her older brother lived with petitioner and his second wife-the victim's stepmother. (D.I. 33 at 2) The stepmother testified that she awoke on the night of March 27, 1986 and discovered that petitioner had left the bedroom. While searching the house for petitioner, the stepmother encountered him leaving the victim's room. The victim testified that petitioner had entered her room, removed her underwear, and began having sexual intercourse with her. (D.I. 6 at A434) The victim claimed that petitioner stopped when he heard her stepmother approaching the room. (D.I. 6 at A435) The stepmother confronted the victim the following morning, but the victim initially denied having intercourse with petitioner. (D.I. 6 at A435) During a domestic dispute ten days later between petitioner and the victim's stepmother, the victim's younger brother called the local police to petitioner's home. The victim then told the police that petitioner engaged in sexual intercourse with her.

At petitioner's third trial, the jury heard testimony from Dr. Walter Kuhn, who conducted a pelvic exam on the victim. Dr. Kuhn explained that the victim's hymen was only partially intact and that this was consistent with the sexual intercourse described by the victim.

Following testimony from the victim, her stepmother, police officers, rape counselors, and the defendant, the jury found petitioner guilty of first degree rape. The Delaware first degree rape statute provides that:

> A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and:
>
> (1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the victim, or
>
> (2) The victim was not the defendant's voluntary social companion on the occassion of the crime and had not previously permitted him sexual contact.

11 Del. C. § 764 (1979). For purposes of § 764, Delaware law presumes a lack of consent when the victim is less than sixteen years old. *See* 11 Del. C. § 767(3). In petitioner's case, the victim was eleven years old at the time of the offense.

Following petitioner's conviction, his trial attorney filed a direct appeal with the Delaware Supreme Court along with a motion to withdraw as counsel pursuant to Delaware Supreme Court Rule 26(c). FN5 In his motion to withdraw, petitioner's attorney listed four grounds for relief. Petitioner supplemented this brief with a sixty-eight page brief of his own alleging fifteen separate errors by the trial court. Claiming violations of his Fifth, Sixth, and Fourteenth Amendment rights, petitioner argued that the trial court erred in denying various motions, including motions to dismiss the indictment, to suppress evidence, and a motion for acquittal due to insufficient evidence. *See Getz I* at * *2. The Supreme Court affirmed petitioner's conviction, stating that "the issues on appeal are clearly controlled by Delaware law, there is sufficient evidence to support the jury's verdict and there is no abuse of judicial discretion." *Id.* at * *3.

> **FN5.** Rule 26(c) states, in pertinent part, that [i]f the trial attorney, after a conscientious examination of the record and the law, concludes that an appeal is wholly without merit, the attorney may file a motion to withdraw. Such motion will be accompanied by the following:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

(i) ... A brief referring to anything in the record which may arguably support the appeal.

Following his unsuccessful direct appeal, petitioner filed a preliminary injunction in United States District Court against several Delaware state officials. The district court dismissed petitioner's motion as frivolous pursuant to 28 U.S.C. § 1915(d). *See Getz v. Delaware et al.,* Civ.A. No. 91-504-JLL (D.Del. Sept. 17, 1991), *appeal dismissed,* No. 91-3688 (3d Cir. May 20, 1992), *cert. denied,* 506 U.S. 924 (1992). Petitioner then filed a motion for postconviction relief under Delaware Superior Court Rule 61.

In his Rule 61 motion, petitioner asserted ten separate grounds for relief, "several of which [were] variations on the same theme." *Getz II* at *1. Specifically, petitioner assailed the constitutionality of Delaware's rape statute, charged the prosecution with selective enforcement of the rape statute, reasserted several errors by the trial court, and claimed ineffective assistance of both trial and appellate counsel. *See id .* at *2. The Superior Court refused to address many of these issues on their merits, holding either that petitioner's claims were procedurally barred under Rule 61(i)(3) FN6 or barred as formerly adjudicated under Rule 61(i)(4). FN7 *See Getz II.* On October 31, 1994, the Supreme Court of Delaware affirmed the Superior Court's denial of postconviction relief. *See Getz III.* Petitioner then filed the habeas corpus petition currently under review.

FN6. Superior Court Criminal Rule 61(i)(3) states:
Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
(A) Cause for relief from the procedural default and
(B) Prejudice from violation of the movant's rights.

FN7. Superior Court Criminal Rule 61(i)(4) states, in pertinent part, that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction [or] in an appeal ... is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice ."

III. STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996). The AEDPA amended the standards for reviewing state court judgments in § 2254 proceedings. Since petitioner filed his habeas petition on September 13, 1996, following the enactment of the AEDPA, the court will apply the amended standards set forth in the AEDPA to petitioner's claims for federal habeas corpus relief. FN8 *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

FN8. The Third Circuit has held that "habeas petitions filed on or before April 23, 1997, may not be dismissed for failure to comply with § 2244(d)(1)'s time limit." *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998). Accordingly, the instant petition is not time-barred.

The federal habeas corpus statute, 28 U.S.C. § 2254 (1997), provides that a district court will consider a petition for a writ of habeas corpus presented by an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court need not consider a petition unless the petitioner has fulfilled certain procedural requirements, such as having "exhausted the remedies available in the courts of the State." *Id.* § 2254(b)(1)(A). State remedies are unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). Thus, a petitioner must raise before the state court of last resort

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

the factual and legal premises of the claims for relief asserted in the § 2254 petition. *See Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir.1987) ; *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986). The principle of comity underlies this exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings. A petitioner need not raise issues on collateral appeal that he addressed on direct appeal. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997). Generally, unexhausted state claims "must be dismissed without prejudice." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). As an alternative to dismissal, the court may deny the petition on the merits despite petitioner's failure to exhaust state remedies. *Id.* § 2254(b)(2).

The AEDPA prohibits district courts from granting a habeas petition for any claim heard on the merits at the state level unless such previous adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or unless the prior adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2). Additionally, the AEDPA increases the deference a federal court must pay to the factual findings and legal determinations made by state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). Like the prior § 2254(d) , amended § 2254(e)(1) provides that factual determinations made by a state court are presumed correct. *See* 28 U.S.C. § 2254(e)(1). The amended § 2254(e) goes further, however, by placing on the petitioner the burden of rebutting the presumption by clear and convincing evidence. *See id.* With these precepts in mind, the court now turns to an analysis of petitioner's claims.

### IV. DISCUSSION

In his voluminous opening brief, petitioner alleges

thirty-five grounds for habeas corpus relief. Several of these grounds present no constitutional question because they rest solely on substantive state law. Other grounds for relief are procedurally barred. The court will address first those claims that rest on state law and those that are procedurally barred. The court then will address grounds for relief adjudicated on the merits by the state courts below.

### A. Grounds that Rest on State Law

Petitioner asserts several grounds for relief for which he has exhausted state remedies, but which rest solely on interpretations of state substantive law. In ground one, petitioner argues that the Superior Court lacked jurisdiction to try him because the facts of his case satisfy the elements of incest FN9 (a misdemeanor crime within the exclusive jurisdiction of the Delaware Family Court), rather than the charged crime of first degree rape. *See Getz III* at * *3; *see also* 11 Del. C. § 766(a)-(b) (Incest). In grounds five and six, petitioner argues that Delaware state courts have erroneously and impermissibly interpreted the Delaware first degree rape statute to include within the definition of first degree rape voluntary sexual relations between a custodial parent and his minor child. FN10 In ground seven, petitioner argues that the Delaware legislature repealed the penalties for first degree rape. Grounds eight through eleven attack the sufficiency of petitioner's indictment. In grounds twenty-one and twenty-two, petitioner argues that the trial court permitted certain testimony in violation of the Delaware rules of evidence. Petitioner advanced all of these claims either on direct or on collateral appeal, thus exhausting his state remedies. *See Getz III* at * *3.

> FN9. Delaware law defines incest as, *inter alia,* sexual intercourse between "a male and his child." *See* 11 Del. C. § 766(a).

> FN10. Petitioner contests the Delaware Superior Court's holding in *State v. Hamilton,* 501 A.2d 778 (Del.Super.Ct.1985), aff'd, 515 A.2d 397 (Del.1986). In *Hamilton,* the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

Superior Court held that a custodial parent cannot claim that his child was his "voluntary social companion" so as to remove sexual intercourse with the child from the definition of first degree rape. *See id.* at 780.

The United States Supreme Court has stated on numerous occasions that claims based on questions of state substantive law are not cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ; *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977). In *Sykes,* the Court explained that any questions of state substantive law are excluded from consideration in federal habeas corpus proceedings. *See* 433 U.S. at 81. The Court has noted that "federal courts may intervene in the state judicial processes only to correct wrongs of a constitutional dimension." *Wainwright v. Goode,* 464 U.S. 78, 83 (1983). The Third Circuit also has recognized that federal courts may not second-guess a state supreme court's interpretation of a state penal statute. *See Helton v. Fauver,* 930 F.2d 1040, 1044 (3d Cir.1991) (citing *Missouri v. Hunter,* 459 U.S. 359, 368 (1983)). Even a "state court's misapplication of its own law does not generally raise a constitutional claim." *Geschwendt v. Ryan,* 967 F.2d 877, 888-89 (3d Cir.1992). This limitation on federal habeas review applies even if the petition is " 'couched in terms of equal protection and due process." ' *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (citation omitted).

1. Grounds One, Five, and Six

In ground one, petitioner argues that the facts of his case, if true, satisfy the definition of incest, not rape. Whether a given set of facts constitutes rape or incest in the State of Delaware is fundamentally a question of state substantive law. *See Helton,* 930 F.2d at 1044. Ground one presents no constitutional issues for this court to resolve. Consequently, ground one will be dismissed.

Grounds five and six present issues similarly within the exclusive jurisdiction of the Delaware courts. Here, petitioner claims that the Superior Court's decision in

*Hamilton* impermissibly broadened the first degree rape statute by preventing him from claiming that his minor child was his "voluntary social companion" during sexual intercourse. *See Hamilton,* 501 A.2d at 778. Petitioner also contends that the trial court retroactively applied the *Hamilton* interpretation of "voluntary social companion" in violation of the petitioner's due process rights. He further claims that the *Hamilton* court's interpretation constituted *ex post facto* lawmaking in violation of Article I, § 10 of the Constitution.

The United States Supreme Court has noted that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law," and it can deprive an individual of due process by punishing him or her for conduct "that was innocent when done." *See Bouie v. City of Columbia,* 378 U.S. 347, 353-56 (1964). The facts of the instant case demonstrate that the *Hamilton* decision could not have been applied retroactively to petitioner. The Superior Court decided *Hamilton* in 1985, and petitioner engaged in sexual intercourse with his daughter in 1986. Thus, mere chronology establishes that petitioner had fair warning that engaging in nonconsensual sexual intercourse with his daughter violated Delaware's first degree rape statute. FN11

> FN11. Even if the *Hamilton* decision were applied retroactively to petitioner, the Superior Court construction of the phrase was not an "unforeseeable" judicial enlargement of the statute. The first degree rape statute clearly prohibits a male from engaging in unconsented sexual intercourse with a woman not his voluntary social companion. To construe "voluntary social companion" to include one's daughter would not only defy common sense but also render the state's incest law a nullity. *See* 11 Del. C. § 771.

Petitioner's attack on the substance of the *Hamilton* decision is similarly meritless. When ruling on a habeas corpus petition, a federal district court must "take[ ] the statute with the interpretation placed upon it by the courts of that state...." *United States ex rel. Kirchner v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 6
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

*Johnstone,* 454 F.Supp. 14, 16 (E.D.Pa.1978). The principles of comity and federalism dictate that federal courts must defer to state court interpretations of state statutes. Accordingly, the court will not dispute the *Hamilton* court's construction of "voluntary social companion" contained in the Delaware first degree rape statute. FN12

> FN12. Because claim B of ground thirteen raises the same objection as grounds five and six, it is dismissed.

### 2. Ground Seven

Petitioner contends in ground seven that the Delaware legislature repealed the penalties for first degree rape in its 1986 amendments to the state criminal code. Petitioner argues that, while the legislature retained the crime of first degree rape for crimes committed before July 9, 1986, the legislature did not "save" the enhanced sentencing penalties for first degree rape.

The legislature amended the sentencing provisions for first degree rape contained in 11 Del. C. § 4209A by "striking first degree rape as it appears in the section title and in the section and by substituting in lieu thereof the phrase 'unlawful sexual intercourse in the first degree.'" 65 Del. Laws ch. 494, § 3. Petitioner maintains that, in the absence of an explicit savings clause for the first degree rape penalties, the legislature intended to repeal those penalties. Hence, petitioner argues, the trial court should not have applied the amended provisions of § 4209A in sentencing him to life imprisonment. (D.I. 4 at 82-83; D.I. 36 at 14-16)

In an opinion addressing this very issue, the Delaware Supreme Court held that the legislature had preserved the first degree rape penalties. *See Wicks v. State,* 559 A.2d 1194 (Del.1989). In *Wicks,* the Supreme Court examined the legislative history of the 1986 amendments and concluded that the legislature did not intend to "impose a lesser sentence for those individuals who happened to commit the most serious sexual offenses before July 9, 1986, but fortuitously were not convicted and sentenced until after that date."

*Id.* at 1196. Thus, the Delaware Supreme Court has spoken definitively on the statutory construction issue raised by petitioner. Federal courts may not question or overrule the state supreme court's holding on the construction of a state penal statute. *See* Helton, 930 F.2d at 1044. Therefore, the court will dismiss ground seven of the petition. FN13

> FN13. The court also will dismiss claims I and J of ground thirteen because they merely restate the same allegation as ground seven.

### 3. Grounds Eight through Eleven

In these putative grounds for relief, petitioner attacks the sufficiency of the indictment. In ground eight, he claims that his first degree rape indictment failed to allege the element of force. FN14 *See* D.I. 4 at 84-85. In grounds nine through eleven, he claims that the indictment failed to allege facts regarding his state of mind, that the date of the alleged offense was based on false testimony, and that the time of the offense alleged in the indictment was vague. *See* D.I. 4 at 86-94. Petitioner raised grounds nine through eleven on direct appeal, thus exhausting state remedies.

> FN14. Habeas corpus review of this claim is procedurally barred because petitioner failed to present this issue to the Delaware Supreme Court and because petitioner has not shown cause for his failure to raise the issue and actual prejudice resulting therefrom. Because this issue concerns state substantive law, consideration of its merits would be barred anyway, and the court will consider it along with the related claims in this section for ease of analysis.

Challenges to the sufficiency of indictments do not raise cognizable issues in habeas corpus appeals. *See* Knewel v. Egan, 268 U.S. 442, 446 (1925) ; *United States ex rel. Potts v. Rabb,* 141 F.2d 45, 47 (3d Cir.1944). The Delaware Supreme Court found that petitioner's indictment comported with Delaware law

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

and that it provided a "plain, concise and definite written statement of the essential facts constituting the offense charged." *See Getz I* at * *2 (citing Super. Ct.Crim. R. 7(c)). In light of *Knewel,* further federal court review of the Delaware Supreme Court's conclusion is inappropriate. *See McGuire,* 502 U.S. at 67-68; *Sykes,* 433 U.S. at 81. Grounds eight through eleven will be dismissed. FN15

> FN15. In ground two, petitioner alleges that the trial court erroneously refused to consider his motion to dismiss the indictment on grounds that it alleged the wrong offense. Because the sufficiency of indictments is a matter of state substantive law, the court also will dismiss ground two.

4. Grounds Twenty-One and Twenty-Two

In his twenty-first and twenty-second grounds for relief, petitioner challenges the admission of certain testimony at his trial. He argues that the trial court erroneously denied his motion *in limine* to exclude his wife's testimony that she saw petitioner leave the victim's room on the night of the rape. (D.I. 4 at 160-61; D.I. 6 at A386F-G) He also argues that the trial court erred in permitting the prosecution to ask petitioner when he last had sexual relations with his wife. (D.I. 4 at 162-63) Petitioner raises no constitutional objections. In essence, petitioner alleges errors in the trial court's application of the Delaware rules of evidence.

The United States Supreme Court has stated unequivocally that, "[s]uch an inquiry ... is no part of a federal court's habeas review of a state conviction." *McGuire,* 502 U.S. at 67. In *McGuire,* the Supreme Court reviewed a federal court of appeals decision granting habeas relief on the grounds that a state trial court had improperly interpreted the California rules of evidence. In reversing the lower court, the United States Supreme Court determined that state evidentiary rulings were matters of state substantive law. It also reemphasized that "it is not the province of a federal habeas court to reexamine state-court determinations of

state-law questions." *McGuire,* 502 U.S. at 67-68, 72. In the case at bar, the Delaware Supreme Court found that the testimony in dispute was relevant and nonprejudicial pursuant to Delaware rules of evidence. This court may not question that determination. *See id.*

Even assuming petitioner raised due process objections to the admission of this testimony, petitioner suffered no due process violations. Petitioner claims that his wife's testimony was inconsistent with her prior testimony and with the victim's account of the crime. The weighing of inconsistencies in testimony is a matter for the jury, not a federal court conducting a habeas corpus review. Petitioner contends that the prosecutor's questions relating to petitioner's marital sexual practices inflamed the jury. The record reveals, however, that the prosecutor limited his questions to the frequency that petitioner engaged in sexual intercourse with his wife. *See* D.I. 6 at A550L-R. The court finds that such questions, even if irrelevant, did not " 'so infect [ ] the entire trial that the resulting conviction violate[d] due process.' " *McGuire,* 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). Accordingly, the court will dismiss grounds twenty-one and twenty-two.

B. Procedurally Barred Grounds

The court finds that the following grounds for relief are procedurally barred because petitioner failed to properly present them to the Delaware Supreme Court. In ground twenty-six, petitioner contends that the trial court's jury instructions were defective because the court failed to inform the jury that the prosecution had to prove that petitioner used force or placed the victim in fear of her life. *See* D.I. 4 at 172-73. Petitioner raised this ground for the first time in a motion for reargument on the Supreme Court's denial of postconviction relief. *See* D.I. 5 at A250, A250C. Rejecting the motion on procedural grounds, the Supreme Court refused to address the merits of petitioner's motion. In ground thirty-four, petitioner alleges for the first time ten separate errors by the Delaware Supreme Court in its "Rule 26" review of petitioner's direct appeal. FN16

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN16. Petitioner claims to have raised these grounds for relief in ground nine of his postconviction appeal to the Supreme Court. *See* D.I. 4 at 197. Ground nine of his postconviction brief raises only ineffective assistance of appellate counsel claims. Accordingly, the court finds that petitioner failed to raise the issues contained in ground thirty-four before the Delaware Supreme Court.

Petitioner has failed to present these claims to the Delaware Supreme Court. Thus, he has failed to exhaust his state remedies with respect to these two claims. Because Delaware Superior Court Rule 61(i)(2) prevents petitioner from seeking further postconviction relief, petitioner is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989) (finding that because "collateral relief would be unavailable to petitioner," "fundamental fairness" requires that the exhaustion requirement be deemed fulfilled).

Nonetheless, Rule 61(i)(2) acts as a procedural bar to these grounds for relief. *See Flamer v. Chaffinch*, 827 F.Supp. 1079, 1087-88 (D.Del.1993) (stating that in "a federal habeas review, a procedural bar requires a finding that the procedural default is based on independent and adequate state law grounds," and finding analogous Rule 61(i)(3) an adequate ground to bar federal habeas review), *aff'd,* 68 F.3d 710 (3d Cir.1995) (en banc). A federal district court may not consider a procedurally barred claim unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show "cause," petitioner must establish "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish a "miscarriage of justice," petitioner must show "that it is more likely than not that no reasonable juror would have convicted him." *Dawson v. Snyder*, 988 F.Supp. 783, 805 (D.Del.1997) (citing *Schlup v.*

*Delo,* 513 U.S. 298, 326). The miscarriage of justice exception applies only in extraordinary cases. *See Murray*, 477 U .S. at 496.

Petitioner presents no evidence of cause for his failure to raise these grounds for relief. Instead, petitioner claims in his reply brief that the court should excuse his default because of his inexperience in the law. *See* D.I. 36 at 66. The Supreme Court, however, did not so qualify its explicit prohibition against considering procedurally defaulted claims. *See Coleman*, 501 U.S. at 750. Because petitioner has failed to demonstrate cause, the court need not reach the question of whether petitioner suffered any actual prejudice from these alleged violations of law. *Bailey v. Snyder*, 855 F.Supp. 1392, 1402 (D.Del.1993), *aff'd,* 68 F.3d 736 (3d Cir.1995).

Petitioner also has failed to demonstrate that a "miscarriage of justice" would occur if the court did not review his procedurally barred claims. To demonstrate a miscarriage of justice, petitioner must present colorable claims of actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). The petitioner must show "a fair probability that ... the trier of the facts would have entertained a reasonable doubt of his guilt." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 n. 17 (1986) (internal citations and quotations omitted).

Petitioner has presented no colorable evidence of his actual innocence. Petitioner merely argues that the jury would have acquitted him had the judge instructed it in the necessity of proving force. (D.I. 4 at 173) Force, however, is not an element of first degree rape in Delaware. FN17 In order to prove first degree rape under § 764, the state must show that "the victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact in addition to ... the defendant's intentional engagement in sexual intercourse without the victim's consent." *Tyre v. State*, 412 A.2d 326, 328 n. 1 (Del.1979) (construing 11 Del. C. § 746 (1979)). Thus, because the element of force is not essential to a first degree rape conviction, the trial court's refusal to include the element of force in its jury instruction does not establish a miscarriage of justice.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 9
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

FN17. Petitioner cites *Miller v. State,* 233 A.2d 164 (Del.1967) for the proposition that force is an essential element of first degree rape. In *Miller,* the Delaware court had to construe the elements of common law rape because the first degree rape statute in existence at the time, 11 Del. C. § 781 (1953), did not define the elements of rape. The first degree rape statute under which the state prosecuted petitioner, however, does specify the elements of rape, and force is not an essential element of that crime. *See* 11 Del. C. § 746 (1979). The court also will dismiss claim D of ground thirteen because it merely restates petitioner's belief that force is essential to a first degree rape conviction.

Petitioner's complaints about the Delaware Supreme Court's Rule 26 review procedures on petitioner's direct appeal also do not raise any colorable claims of actual innocence. As such, even if the Supreme Court did not follow its own internal review procedures, no miscarriage of justice would occur by denying habeas corpus review of petitioner's claims. Accordingly, the court will dismiss grounds twenty-six and thirty-four.

C. Grounds for Relief Not Addressed by the
Delaware Supreme Court

Petitioner presented the following grounds for relief to the Delaware Supreme Court on direct appeal from his conviction. Thus, petitioner has exhausted his state remedies with respect to these claims. The Supreme Court, however, refused to address these grounds on their merits because petitioner had failed to provide the court with a transcript of the Superior Court proceedings. *See Getz I* at * *2 (citing *Trioche v. State,* 525 A.2d 151 (Del.1987)). In its answer to petitioner's application for habeas corpus relief, the state concedes that the Supreme Court erred and that it, in fact, did have the Superior Court transcripts. *See* D.I. 33 at 74-75; D .I. 6 at A647 (Superior Court order for preparation of transcript). If petitioner had failed to provide a transcript of his trial, the Supreme Court's

refusal to consider his grounds for relief would serve as a procedural bar to habeas corpus review. Since the court cannot determine whether the Supreme Court received the transcript, the court will review on the merits those claims not addressed by the Supreme Court.

1. Ground Three-Selective Prosecution

Petitioner claims that the state violated his due process and equal protection rights by selectively prosecuting him for first degree rape, rather than incest. *See* D.I. 4 at 72-74. The Constitution permits the government "the conscious exercise of some selectivity" in the enforcement of its criminal laws, *see Oyler v.. Boles,* 368 U.S. 448, 456 (1962); however, any systematic discrimination in enforcement or "unjust and illegal discrimination between persons in similar circumstances," *Yick Wo v. Hopkins,* 118 U.S. 356, 374 (1886), violates equal protection and renders the prosecution invalid. *See United States v. Torquato,* 602 F.2d 564, 568 (3d Cir.1979) ; *United States v. Berrigan,* 482 F.2d 171, 174 (3d Cir.1973). In order to state a claim of selective prosecution, petitioner bears the burden of showing that the government intentionally and purposefully discriminated against him by failing to prosecute other similarly situated persons. *See Torquato,* 602 F.2d at 569-70 & n. 8 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)). Petitioner need not show that he belongs to a protected racial, ethnic, or religious class. *See Torquato,* 602 F.2d at 569 n. 9.

Petitioner objects to the Delaware Attorney General's policy of "charging the highest offense appropriate." *See* D.I. 4 at 72. The Constitution, however, does not require prosecutors to charge the least serious offense applicable to a given set of facts. *See United States v. Batchelder,* 442 U.S. 114, 123-24 (1979) (noting that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants"). Petitioner also argues that the rule of lenity requires the state to prosecute him for incest rather than rape. The rule of lenity demands resolution

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

of ambiguities in criminal statutes in favor of defendants, but it operates only after the court determines that a statute is ambiguous. *See United States v. Shabani,* 513 U.S. 10, 17 (1994) ; *United States v. Turcks,* 41 F.3d 893, 901 (3d Cir.1994). No court has found the Delaware first degree rape statute ambiguous. Therefore, petitioner may not invoke the rule of lenity.

Petitioner also proffers evidence of others who engaged in sexual intercourse with minors, but who received more lenient sentences than he. *See* D.I. 4 at 74; D.I. 7 at A833-61. This evidence does not demonstrate that these other individuals were "similarly situated" to petitioner. Moreover, it fails to demonstrate purposeful discrimination by the prosecution against petitioner. Thus, petitioner cannot state a claim of selective enforcement. FN18 Ground three will be dismissed. FN19

> FN18. To the extent that ground three raises an Eighth Amendment cruel and unusual punishment claim, the court finds that petitioner has not shown that his punishment includes "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion." *Ingraham v. Wright,* 430 U.S. 651, 658 (1977).

> FN19. In ground twenty-nine, petitioner bases an ineffective assistance of counsel claim on his trial counsel's failure to "investigate matters of law and fact" relating to selective prosecution. *See* D.I. 4 at 181. Because there was no evidence to support such a charge, trial counsel's failure to object to selective prosecution did not fall below an objectively reasonable standard of professional behavior. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984). Therefore, insofar as petitioner's ineffective assistance of counsel claim rests on ground three, it is dismissed. Because claim A of ground thirteen raises the same selective enforcement objection, it is

dismissed.

2. Ground Four-Denial of a Speedy Trial

Petitioner argues that the state strategically delayed his trial for three years in violation of his Sixth Amendment right to a speedy trial. *See* D.I. 4 at 75-76. The Sixth Amendment provides that "in all criminal prosecutions, the accused will enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial applies to the states through the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U.S. 213, 218 (1967). The United States Supreme Court has noted that courts must assess alleged violations of an accused's right to a speedy trial on an *ad hoc* basis. *See Barker v. Wingo,* 407 U.S. 514, 530 (1972). In *Barker,* the Supreme Court identified four factors that courts must consider in assessing an alleged denial of a speedy trial. These factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *See id.*

The record reveals that approximately sixteen months elapsed between petitioner's conviction in the first trial and the reversal of that conviction by the Delaware Supreme Court. Nearly eleven months elapsed after the reversal and the commencement of petitioner's second trial, which resulted in a mistrial. Following the mistrial, seven months passed before the state renewed its prosecution in petitioner's third and final trial.

The state contends, and petitioner does not dispute, that most of the delay was attributable to the Supreme Court's consideration of petitioner's direct appeal. Petitioner also does not dispute that the substitution of defense counsel caused four months of the delay. Courts have found that delays related to the substitution of defense counsel do not raise speedy trial concerns. *See United States v. Ashford,* 924 F.2d 1416, 1421 (7th Cir.1991) ; *United States v. Bolton,* 905 F.2d 319, 322 (10th Cir.1990). Two months passed without trial because of the unavailability of state witnesses. The United States Supreme Court has found that delays due to the unavailability of material witnesses are reasonable. *See Barker,* 407 U.S. at 531.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 11
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

The record reveals that petitioner complained about trial delay in a letter to his attorney, *see* D.I. 6 at A344, but petitioner never filed a formal complaint with the trial court. The Third Circuit has noted that "if a defendant is to tip the *Barker* scales significantly in his favor on the factor of assertion of the right ... some formal motion should be made to the trial court or some notice given to the prosecution." *Hakeem v. Beyer,* 990 F.2d 750, 765 (3d Cir.1993). Plaintiff took neither of these steps.

Petitioner also contends that this delay prejudiced his defense and that the prosecution used the delay "to justify to the jury[ ] the reason for the conflicting testimony of the witnesses." D.I. 4 at 76; D.I. 36 at 11. Petitioner, however, presents no compelling evidence of prejudice. Indeed, petitioner admits that the delay adversely affected the consistency of the testimony presented by the prosecution. *See* D.I. 4 at 76. Thus, it appears that the delay prejudiced the prosecution more than it did the defendant.

Accordingly, the court finds that petitioner has failed to demonstrate a violation of his Sixth Amendment right to a speedy trial. The reasons for the delay were justified by an appeal that led to a reversal of his conviction, substitution of defense counsel, a mistrial, and the unavailability of material witnesses. Petitioner has not demonstrated prejudice from the delay between his indictment and his final trial. Moreover, petitioner never alerted the trial court to his speedy trial concerns. Consequently, the court will dismiss ground four.

3. Ground Twenty-Failure to Disclose *Brady* Material

Petitioner argues that the prosecution failed to produce exculpatory evidence in violation of *Maryland v. Brady,* 373 U.S. 83 (1963). Under *Brady,* the prosecution must disclose exculpatory evidence to the accused that is material to either guilt or punishment. *See Brady,* 373 U.S. at 87. In order to establish a *Brady* violation, a defendant must first demonstrate that the prosecution had the requested information within its actual or constructive possession. *See United States v.*

*Veksler,* 62 F.3d 544, 550 (3d Cir.1995). Even if the prosecution had the evidence within its possession, not every failure to disclose evidence favorable to the accused requires a reversal of a conviction. *See Veksler,* 62 F.3d at 550. The undisclosed evidence must be material, and "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (internal quotation and citation omitted). A conviction need not be vacated where the prosecution has not disclosed repetitious or cumulative evidence to the accused. *See United States ex rel. Marzeno v. Gengler,* 574 F.2d 730, 735 (3d Cir.1978).

Petitioner bases his *Brady* claims on a letter that he, not his defense counsel, wrote in July 1988 requesting the Delaware Attorney General to disclose allegedly exculpatory evidence. *See* D.I. 6 at A324-28. The Attorney General did not respond to this letter, and petitioner argues that this constituted a *Brady* violation. Much of petitioner's letter, however, requested legal advice and interpretations of the criminal code. *See* D.I. 6 at A324-28, ¶¶ 1-4, 7, 8, 13-16. Because such information is not exculpatory evidence, *Brady* does not apply. His letter also requested the following information: (1) a detailed account of the state police investigation and proof that a thorough investigation was conducted; (2) proof that the victim's statements in the police report were her own and evidence that the victim voluntarily made those statements; (3) evidence of the time and date of the alleged offense; (4) proof that petitioner penetrated the victim with his penis; (5) evidence of the victim's serious physical, mental, or emotional injury; (6) evidence of the petitioner's intent; (7) test results conducted on the victim by a rape crisis unit; and (8) all other evidence regarding petitioner. *See* D.I. 6 at A324-28, ¶¶ 5, 6, 9-12, 17, 18.

Petitioner has failed to demonstrate that the state possessed this allegedly exculpatory evidence. Indeed, petitioner admits that the state did not have any of this evidence when he notes in his reply brief that, "the state had no evidence to disclose because no evidence exists to prove any of the elements of the crime." *See* D.I. 36 at 56. Thus, petitioner's allegations are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 12
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

self-contradictory and fail to demonstrate that the prosecution actually or constructively possessed any of this allegedly exculpatory evidence. *See Veksler, 62 F.3d at 550*.

Moreover, the record reveals that petitioner's defense counsel had access to the allegedly exculpatory evidence prior to trial. For instance, during his August 1989 pretrial oral arguments, petitioner's trial counsel refers to police reports, the victim's prior testimony, and the date and time of the alleged offense reported by the police officers. *See* D.I. 6 at A396-400. The state also presented its evidence at two previous trials and at least one preliminary hearing before the start of petitioner's third trial. *See* D.I. 6 at A396-400. Petitioner knew from the victim's previous testimony that she voluntarily reported the rape and that she suffered serious emotional injury from the encounter. Petitioner also knew from his previous trials that no evidence existed of his intent to rape or of penetration. Indeed, the prosecution relied on the victim's testimony and circumstantial evidence in order to prove these elements of its case.

Petitioner has failed to demonstrate that the prosecution possessed the listed evidence. Furthermore, the record reveals that petitioner had access to the listed evidence before his third trial. Therefore, petitioner has not stated a *Brady* violation. The court will dismiss ground twenty.

## D. Other Grounds for Relief

The Delaware Supreme Court addressed the merits of the following grounds for relief either on direct appeal or on petitioner's postconviction appeal. Accordingly, petitioner has exhausted state remedies with respect to these claims. The court will review the Supreme Court's rulings for unreasonable applications of clearly established federal law and for unreasonable factual determinations in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2).

### 1. Ground Thirteen-Constitutional Challenges to the

## Delaware Rape Statute and the Trial Court's Jury Instructions

Petitioner argues that the Delaware first degree rape statute is "void for vagueness" and that the trial court violated his due process rights by refusing to instruct the jury on incest as a lesser included offense of first degree rape. In support of these arguments, petitioner advances several grounds of relief already dismissed by the court. The court, however, will conduct an independent constitutional review of the statute and the jury instructions.

### a. Void for Vagueness

The void for vagueness doctrine requires legislatures to set reasonably clear guidelines for law enforcement officials and courts in order to prevent arbitrary and discriminatory enforcement of a criminal statute. *See Smith v. Goguen, 415 U.S. 566, 572-73 (1974)*. The United States Supreme Court has explained that the void for vagueness doctrine "simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy Prods. Corp., 372 U.S. 29, 32-33 (1963)*. In assessing a statute for vagueness, a court must ask whether the statute is

> sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalities ... consonant alike with ordinary notions of fair play and the settled rules of law; and a statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Const. Co., 269 U.S. 385, 391 (1926); see also San Filippo v. Bongiovanni, 961 F.2d 1125, 1136 (3d Cir.1992)*. Simply because a criminal statute could have been written more precisely does not render it unconstitutionally vague. *See United States v. Powell, 423 U.S. 87, 94 (1975)*.

Petitioner assails several elements of the Delaware first

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 13
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

degree rape statute as ambiguous. Petitioner argues that the terms "voluntary social companion," "sexual intercourse," and "without consent" are ambiguous. Petitioner's arguments are without merit. The Delaware rape statute clearly establishes that:

A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and:

(1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the victim, or

(2) The victim was not the defendant's voluntary social companion on the occassion of the crime and had not previously permitted him sexual contact.

11 Del. C. § 764 (1979). According to the code, sexual intercourse occurs upon "any penetration, however slight." *Id.* § 773. The code further defines "without consent" as, *inter alia,* sexual intercourse with a female less than sixteen years old. *See id.* § 767(3). Moreover, as noted above, in 1985 the Delaware Superior Court ruled that a minor child of a custodial parent could not be that parent's "voluntary social companion." *See Hamilton,* 501 A.2d at 778.

The court finds that the statute is clear and that it defines the crime of first degree rape with sufficient definiteness. Men of reasonable intelligence would comprehend that the statute prohibits sexual intercourse with an eleven year old girl. Sexual intercourse with one so young could not be consensual; intercourse under those circumstances almost certainly would inflict serious physical, mental, or emotional injury. Because the statute put petitioner on notice of the unlawfulness of his actions, petitioner's void for vagueness argument is without merit. FN20

FN20. Petitioner premises an ineffective assistance of counsel claim in ground twenty-nine on his trial counsel's failure to raise objections based on the rule of lenity and the void for vagueness doctrine. Because objecting on these grounds would have been meritless, trial counsel's failure to object did not fall below an objective standard of reasonableness or result in prejudice to

petitioner. *See Strickland,* 466 U.S. at 686.

b. Lesser Included Offense Instruction

In a related claim, petitioner argues that the Superior Court violated his due process rights when it refused to instruct the jury on the crime of incest as a lesser included offense of first degree rape. (D.I. 4 at 170-71) The trial court denied petitioner's request, noting that incest required proof of an additional element. *See* D.I. 6 at A557-58. On direct appeal, the Supreme Court affirmed the trial court's conclusion. *See Getz I* at * *2.

The Third Circuit has noted that "jury instructions in State trials are matters of state law.... reviewable by a federal court on collateral attack where the instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment." *Hallowell v. Keve,* 555 F.2d 103, 106 (3d Cir.1977). Several courts have held that the failure to give lesser included offense instructions in a noncapital case does not present a constitutional question. *See Pitts v. Lockhart,* 911 F.2d 109, 112 (8th Cir.1990) ; *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975). Nonetheless, the court will review the constitutionality of refusing to instruct the jury on the crime of incest.

Delaware law defines a lesser included offense, in pertinent part, as one that "is established by the proof of the same or less than all the facts required to establish the commission of the offense charged." 11 Del. C. § 206(b)(1) (1979). Delaware courts must instruct a jury on a lesser included offense only where "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." 11 Del. C. § 206(c) (1979). The United States Supreme Court has ruled that federal courts must give lesser included offense instructions where "the elements of the lesser offense are a subset of the elements of the charged offense." *Schmuck v. United States,* 489 U.S. 705, 716 (1989) (interpreting Fed.R.Crim.P. 31(c)). The Court explained that a lesser included offense instruction is not required, "[w]here the lesser offense requires an element not required for the greater offense...." *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 14
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

Delaware's first degree rape statute requires proof of intentional sexual intercourse, by a male, without the consent of a woman, and proof either that the male inflicted serious mental, emotional or physical harm or proof that the victim was not the defendant's voluntary social companion and that she had not previously permitted him sexual contact. *See* 11 Del. C. § 764 (1979). Incest, on the other hand, requires proof of sexual intercourse between blood relations. *See id.* § 771. A showing of kinship is not an element of first degree rape. Thus, the Delaware Supreme Court did not err in its assessment that incest was not a lesser included offense of first degree rape. *See Getz I* at * *2. This determination also comported with the United States Supreme Court's test for lesser included offenses. *See Schmuck*, 489 U.S. at 716. Accordingly, the Delaware Supreme Court did not violate any "clearly established federal law as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). The court will dismiss ground thirteen in its entirety. FN21

> FN21. Petitioner also argues that the Delaware first degree rape statute violates the Equal Protection Clause because it punishes only males for engaging in unconsented sexual intercourse. The United States Supreme Court has rejected this argument. *See Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464 (1981) (plurality opinion). Accordingly, the court will not consider this ground for relief.

### 2. Grounds Twelve and Fourteen-Denial of Motions for Acquittal

Before the start of petitioner's third trial, petitioner's trial counsel presented a motion for judgment of acquittal. *See* D.I. 6 at A381-82. Petitioner's counsel argued before the trial court that acquittal was necessary because of conflicting testimony about the exact time of the offense. *See* D.I. 6 at A395-409. Petitioner claims that the trial court violated his due process rights by summarily denying the motion "without review or consideration on the merits or law."

*See* D.I. 4 at 95, 133.

A court may grant federal habeas relief where a state court's error in interpreting or applying its own law rendered the trial so fundamentally unfair that it deprived petitioner of due process. *See McGuire*, 502 U.S. at 67-68. Thus, the court must look to Delaware law to determine if the trial court correctly applied Delaware law and, if not, whether petitioner's due process rights were violated.

Under Delaware law, courts treat a motion for judgment of acquittal made prior to the presentation of evidence as a motion made under Rule 12 of the Superior Court Criminal Rules. *See State v. Crawford*, 297 A.2d 55, 55 (Del.Super.Ct.1972). Rule 12 permits written or oral motions. *See* Super. Ct.Crim. R. 12(b). Where factual issues are involved in deciding a motion, Rule 12 only requires a court to "state its essential findings on the record." Super. Ct.Crim. R. 12(e).

The record reveals that, contrary to petitioner's assertions, the court heard extensive oral arguments on the motion for judgment of acquittal. *See* D.I. 6 at A395-409. In denying the motion, the court stated that [t]he defendant's motion for judgment of acquittal for insufficient evidence is not ripe at this time because the State's evidence has not been presented. That motion will be denied as premature without prejudice to any motion for judgment of acquittal at the close of the State's case.
*See* D.I. 6 at A409. The trial court's disposition of the motion for judgment of acquittal fulfilled the bare' requirements of Rule 12 and, moreover, the trial court's ruling did not "so infect[ ] the entire trial that the resulting conviction violate[d] due process." *McGuire*, 502 U.S. at 72. Accordingly, petitioner's due process claim is without merit. Grounds twelve and fourteen will be dismissed.

### 3. Ground Twenty-Three-Denial of a Motion to Disqualify the State Prosecutor

In ground twenty-three, petitioner claims that the trial court denied him his Sixth Amendment right to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 15
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

compulsory process by refusing to disqualify the state prosecutor so that the defense could call him as a witness. *See* D.I. 4 at 164-65. Petitioner contends that the state prosecutor, accompanied by petitioner's trial counsel, went to petitioner's home to observe the crime scene. At the time, the victim and her stepmother were living there. While there, petitioner claims that the prosecutor "coached" the victim and her stepmother (as well as a police officer) on their upcoming testimony in petitioner's third trial. Petitioner instructed his trial counsel to move to disqualify the prosecutor. The trial court denied the motion. *See* D.I. 6 at A418.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides the accused in a criminal prosecution the right to offer the testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI; *see also* Washington v. Texas, 388 U.S. 14, 18-19 (1967) ; Government of the Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir.1992). This right, however, is not absolute. *See* Mills, 956 F.2d at 446. In order to establish a violation of the Sixth Amendment's right to compulsory process, petitioner must demonstrate that

> he was deprived of the opportunity to present evidence in his favor ... that the excluded testimony would have been material and favorable to his defense ... and ... that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

*Id.* (citing Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

In the present case, petitioner has not demonstrated that the trial court denied him an opportunity to present favorable evidence. Petitioner, through his counsel, had the opportunity to elicit from the police officer, the victim, and her stepmother whether or not the prosecutor had "coached" their testimony. Petitioner also could impeach the three witnesses with inconsistencies in their prior testimony. Furthermore, the prosecutor denied on the record that he urged any of the witnesses to change their testimony. *See* D.I. 6 at A413. Thus, requiring the prosecutor to take the stand would not have elicited any new, favorable evidence to the defense.

Neither can petitioner establish that the prosecutor's testimony would have been material. Petitioner's defense counsel admitted at trial that he submitted the motion at petitioner's insistence. *See* D.I. 6 at A412, 417. Petitioner's trial counsel also conceded that

> the only thing I can say is I don't know what fruit will come out of that questioning, but the defendant believes he has a right to put [the prosecutor] on the stand and ask him specifically, I presume, if he in fact talked to anyone. If he says no, then that's going to end it.

D.I. 6 at A417. In light of these admissions, the trial court's refusal to disqualify the prosecutor was not arbitrary or "disproportionate to any legitimate evidentiary or procedural purpose." *See* Mills, 956 F.2d at 446. Ruling on a similar issue, the Third Circuit has noted that a trial court "may properly refuse to allow the defense to call the prosecutor if it does not believe that 'he possesses information vital to the defense.'" ' United States v. Newman, 476 F.2d 733, 738 (3d Cir.1973) (quoting Gajewski v. United States, 321 F.2d 261, 268-69 (8th Cir.1963)). The court finds that the Delaware Supreme Court did not violate clearly established federal law in affirming the trial court's denial of the motion to disqualify. Accordingly, the court will dismiss ground twenty-three.

### 4. Grounds Sixteen and Seventeen-Witness Bribery and "Coaching"

Petitioner alleges that the prosecution "coached" the victim and other witnesses and induced the victim and her stepmother to testify against petitioner by a promise of monetary awards from the Delaware Victim's Compensation Board. *See* D.I. 4 at 140-51. The Delaware Supreme Court addressed both of these allegations and decided them adversely to petitioner. Petitioner presented the improper "coaching" allegation to the Supreme Court on his direct appeal, and the Court dismissed it, finding that the "the prosecutor conducted himself appropriately throughout the trial." *Getz I* at * *2. Petitioner presented his allegations of witness bribery to the Supreme Court on his postconviction relief appeal. In its ruling, the Court noted that petitioner relied upon unsworn, hearsay

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 16
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

statements of his family members in support of this allegation. *See Getz III* at * *2. The Court also affirmed the Superior Court's determination that "the record did not support a finding that the victim was promised money by the State in exchange for her testimony at trial." *Id.* at * *3.

The federal habeas corpus statute requires federal courts to accept as correct the factual determinations of state courts, unless the petitioner rebuts this presumption of correctness with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has presented only the sworn affidavits of himself and his mother to rebut the factual determinations of the state courts. *See* D.I. 7 at A870-72. Without clear and convincing evidence of witness bribery and improper coaching, the court will accept the factual determinations of the state courts as correct. Accordingly, grounds sixteen and seventeen are dismissed.

### 5. Ground Nineteen-Illegal Search and Seizure

Petitioner claims that the trial court violated the Fourth Amendment in dismissing his motion to suppress Dr. Kuhn's medical examination of his daughter. Petitioner rightly claims that, under the Delaware Rules of Evidence, guardians may exercise a minor child's privilege to refuse to disclose that child's medical records. *See* Del. R. Evid. 503(b)-(c). Nonetheless, the trial court denied petitioner's motion. *See* D.I. 6 at A423. The trial court reasoned that, since the State exercised custody over the victim following petitioner's arrest, Rule 503(c) inevitably would have entitled the State to the information contained in Dr. Kuhn's report. *See* D.I. 6 at A423. The Delaware Supreme Court affirmed the denial of the motion. *See Getz I* at * *2.

The United States Supreme Court has held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494 (1976)

(footnotes omitted). The holding in *Powell* applies squarely to petitioner's claims. The record reveals that the trial court afforded petitioner a full and fair opportunity to argue his motion to suppress. *See* D.I. 6 at A420-23. Accordingly, the court will dismiss ground nineteen.

### 6. Ground Twenty-Four-Prosecutorial Misconduct in Closing Arguments

In support of this ground for relief, petitioner asserts nineteen separate counts of prosecutorial misconduct during the state's closing arguments. *See* D.I. 4 at 166-69. Petitioner specifically alleges instances of improper vouching and assails the prosecutor's closing for its reliance on "known false evidence." Petitioner also contends that the prosecutor stated personal opinions about petitioner's guilt. The Delaware Supreme Court dismissed petitioner's allegations on direct appeal, noting that "the prosecutor conducted himself appropriately throughout the trial." *See Getz I* at * *2.

When conducting a habeas corpus review of a state prosecutor's closing arguments, the court must determine if the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)). The Third Circuit has noted that "[t]he prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme,* 939 F .2d 108, 117 (3d Cir.1991). Nonetheless, the prosecutor may not vouch for the credibility of state witnesses. Vouching occurs when the prosecutor assures the jury of the credibility of state witnesses through personal knowledge or by other information outside of the testimony and evidence presented to the jury. *See United States v. Walker,* 155 F.3d 180, 184 (3d Cir.1998).

After a thorough review of the prosecutor's closing arguments, the court cannot find any evidence of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 17
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

impropriety. At no point in the closing arguments did the prosecutor personally vouch for the credibility of state witnesses. Although the prosecutor argued that the victim and her stepmother testified truthfully, his arguments relied upon the evidence before the jury and upon the jury's common sense. In sum, the prosecutor's closing arguments were "based on reasonable inferences which the jury could draw from the evidence at trial." *United States v. Green,* 25 F.3d 206, 210 (3d Cir.1994). The prosecutor made no inflammatory remarks and did not misstate the evidence. FN22 None of his comments infected the trial with unfairness or prejudice. *See Darden,* 477 U.S. at 181. Accordingly, ground twenty-four will be dismissed. FN23

> FN22. The prosecutor's comments about petitioner's sexual urges, taken in isolation, could be construed as improper. *See* D.I. 6 at A643-44. No evidence was presented on petitioner's sexual urges. The prosecutor, however, was merely rebutting claims raised in defense counsel's closing that suggested the state's case rested solely on petitioner's sexual frustrations. *See* D.I. 6 at A631 ("[The state] wants you [the jury] to believe that [petitioner] is having sex with his daughter because he wasn't having it with his wife.").

> FN23. Petitioner also raises an ineffective assistance of counsel claim premised upon his trial counsel's failure to object to the prosecutor's closing arguments. *See* D.I. 4 at 169. Since those arguments were proper, trial counsel's failure to object did not prejudice petitioner.

### 7. Ground Twenty-Seven-Improper Jury Instruction on the Element of Intent

Petitioner argues that the trial court's jury instructions on the element of intent violated his due process rights by impermissibly placing the burden of disproving intent upon him and by denying him the presumption of innocence. *See* D.I. 4 at 174-76. The Due Process

Clause requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime attributed to the accused. *See In re Winship,* 397 U.S. 358, 364 (1970). The United States Supreme Court has held that jury instructions violate due process when they raise a mandatory presumption of intent from an act of the accused. *See Sandstrom v. Montana,* 442 U.S. 510, 521-23 (1979) ; *United States v. United States Gypsum Co.,* 438 U.S. 422, 435, 446 (1978) ; *Morissette v. United States,* 342 U.S. 246, 274-75 (1952). A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from consideration once the state has proved the predicate acts giving rise to the presumption. *See Francis v. Franklin,* 471 U.S. 307, 314 n. 2 (1985). A rebuttable presumption does not remove the presumed element from the case but, rather, requires the jury to accept the element as proved unless the defendant rebuts the presumption. *See id.; see also Sandstrom,* 442 U.S. at 524; *Mullaney v. Wilbur,* 421 U.S. 684 (1975). Permissive inferences, on the other hand, violate the Due Process Clause only "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Franklin,* 471 U.S. at 314-15. In reviewing jury instructions for constitutional infirmity, a court must "focus initially on the specific language challenged." *Id.* at 315. Thus, the court must analyze the Superior Court's jury instructions to determine if they raise a mandatory or permissive presumption.

The trial court gave the following instructions to the jury:

> I have instructed you [that] an element of the offense of rape in the first degree is that the defendant acted intentionally. It is, of course, difficult to know what is going on in another person's mind; therefore, our law permits the jury to draw an inference or, in other words, to reach a conclusion about the defendant's state of mind from the facts and circumstances surrounding the act the defendant is alleged to have done.
>
> In reaching this conclusion, you may consider whether a reasonable man in the defendant's circumstance would have had or lacked the requisite intention. You should, however, keep in mind at all

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

times that it is the defendant's state of mind which is at issue here and in order to convict the defendant you are required to find beyond a reasonable doubt that he in fact had the intention required for guilt.

D.I. 6 at A571-72. Although the trial court's instruction permitted the jury to infer intent from the defendant's actions, the instructions did not require the jury to do so. Indeed, the court reiterated the importance of finding intent beyond a reasonable doubt. The trial court's instructions merely created a permissive inference of intent that did not relieve the state of its burden of persuasion. Consequently, the jury instructions did not violate petitioner's due process rights. Ground twenty-seven will be dismissed. FN24

> FN24. Petitioner premises an ineffective assistance of counsel claim on trial counsel's failure to object to the jury instructions. Because the jury instructions did not violate the Due Process Clause, any objection would have been overruled. Thus, petitioner cannot establish prejudice from his trial counsel's failure to object. His ineffective assistance of counsel claim will be dismissed.

### 8. Improper Supplemental Jury Instruction

During deliberations, the jury informed the trial court of its inability to reach a unanimous verdict. The court then gave the jury a supplemental, *Allen* instruction-so-called after the United States Supreme Court decision recognizing the constitutionality of supplemental jury instructions. *See Allen v. United States,* 164 U.S. 492 (1896); *see also* D.I. 6 at A584-88. The trial court's *Allen* charge reminded the jury that the current trial had been time-consuming and expensive and that there was no "reason to believe that the case [could] be tried again better or more exhaustively than it [had] been in this trial." *See* D.I. 6 at A585. The court added that no juror should surrender his or her "conscientious convictions" and that the jurors should consult with each other "with a view to reaching a verdict" if doing so would not do violence to each juror's individual judgment. *See* D .I. 6 at A586. The court concluded its supplemental

instruction with the following charge:

> In the performance of this high duty, you are at liberty to disregard any comments of both the court and counsel, including of course, the remarks I am now making. Remember at all times no juror is expected to yield his conscientious conviction which he may have as to the weight and effect of the evidence, and remember also that after full deliberation and consideration of all of the evidence it is your duty to agree upon a verdict if you can do so without violating your individual judgment and conscience.

D.I. 6 at A587.

Petitioner argues that the trial court's *Allen* charge had a coercive effect upon the jury. Petitioner contends that the trial court's reminder that the jury could "disregard any comments of both court and counsel" undermined the court's prior instructions on presumption of innocence and the need to find petitioner guilty beyond a reasonable doubt. Petitioner further claims that the trial court prejudiced the jury by commenting on the cost and expense of the trial and the quality of the jury. The Delaware Supreme Court found no errors in the trial court's supplemental charge. The court will review that determination in light of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

A review of the trial court's supplemental charge begins with an analysis of the charge "in its context and under all the circumstances." *Jenkins v. United States,* 380 U.S. 445, 446 (1965). Although the trial court encouraged the jury to reach a unanimous decision, the trial court did not require the jury to do so. The trial court stressed that jurors should reach a unanimous verdict only if doing so would not do violence to their individual consciences. Pointing out the cost of the trial and the necessity of trying it again if the jury could not reach a verdict did not unduly prejudice the jury. The Third Circuit has upheld similar supplemental reminders as constitutional. *See Landano v. Rafferty,* 856 F.2d 569, 574-75 (3d Cir.1988) ; *Government of the Virgin Islands v. Gereau,* 502 F.2d 914, 936 (3d Cir.1974).

The trial court's contention that the jurors could

Not Reported in F.Supp.2d                                                                Page 19
Not Reported in F.Supp.2d, 1999 WL 127247
(Cite as: Not Reported in F.Supp.2d)

disregard any statements by the court and counsel also must be viewed in context. *See* D.I. 6 at A587. The trial court was not suggesting, as petitioner contends, that the jury could disregard the court's instructions on the law and on the necessity of proving petitioner's guilt beyond a reasonable doubt. Instead, this statement merely emphasized that individual jurors should disregard the court's supplemental instructions on the desirability of reaching a final judgment if their individual consciences would not permit them to reach a majority verdict. This interpretation is confirmed by the next sentence read by the judge, where he reminded the jurors that

> at all times no juror is expected to yield his conscientious conviction which he may have as to the weight and effect of the evidence, and remember also that after full deliberation and consideration of all of the evidence it is your duty to agree upon a verdict if you can do so without violating your individual judgment and conscience.

D.I. 6 at A587. Viewed as whole, the trial court's supplemental instructions were neither coercive nor prejudicial to petitioner. Because the supplemental instructions did not violate petitioner's due process rights, ground twenty-eight will be dismissed. FN25

FN25. Petitioner's ineffective assistance of counsel claim, premised on his trial counsel's failure to object to the supplemental instructions, also will be dismissed. Because the supplemental instructions passed constitutional muster, trial counsel's failure to object was neither objectively unreasonable nor prejudicial to petitioner.

9. Ground Fifteen-Lack of Evidentiary Support for the Conviction

Petitioner contends that his conviction lacked evidentiary support. In support of his claim, petitioner raises many arguments already rejected by the court. Petitioner contends that the testimony was contradictory and that the state failed to prove several elements of the crime. The Delaware Supreme Court also rejected these arguments, finding that "[t]he

evidence presented by the State fully supports the conviction of [petitioner] of Rape First Degree. All elements of the crime are present." *Getz I* at * *1.

The United States Supreme Court has explained that, in reviewing the constitutionality of a state court conviction, a federal court must determine if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The Court noted that this standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* A federal court presented with alleged inconsistencies in the record must presume that the trier of fact resolved these conflicts in favor of the prosecution. *See id.* at 326. A review of the record convinces the court that a reasonable factfinder could have found petitioner guilty beyond a reasonable doubt of first degree rape.

The state submitted the following testimony and evidence to the jury. The prosecution elicited testimony from the victim that petitioner engaged in sexual intercourse with her. The victim also testified that petitioner was interrupted when he heard the victim's stepmother approach the victim's bedroom. This testimony was corroborated by the stepmother who testified that she saw petitioner leaving the victim's bedroom. The stepmother also claimed that, after leaving the victim's room, petitioner returned to the stepmother's bedroom. The stepmother noticed that petitioner had an erection, and she testified that petitioner immediately engaged in sexual intercourse with her. The state also presented medical evidence of damage to the victim's hymen-damage consistent with, but not conclusive of, sexual intercourse. Petitioner took the stand and denied having sexual intercourse with his daughter. He also disputed the testimony of the stepmother and claimed that he was not in the house at the time of the alleged rape.

Petitioner's conviction clearly turned on the credibility of the witnesses. Credibility determinations are solely

Not Reported in F.Supp.2d                                                               Page 20
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

within the province of the factfinder. *See Jackson,* 443 U.S. at 319. A reasonable factfinder could have disbelieved petitioner's testimony and accepted the testimony and evidence presented by the State. The State's evidence, if believed, establishes that petitioner had vaginal intercourse with his eleven year old daughter and that, in doing so, he caused her severe mental and emotional anguish. The circumstantial evidence presented also would enable a reasonable factfinder to infer that petitioner had the requisite intentional state of mind during the rape. Thus, the court must conclude that a reasonable factfinder could have found petitioner guilty of first degree rape. Ground fifteen will be dismissed.

### 10. Ground Eighteen-Recusal of the Trial Judge During Postconviction Proceedings

Petitioner argues that the trial judge interfered with his attempts to obtain documents for his postconviction appeal and that, therefore, the same judge should have recused himself from petitioner's postconviction hearing. D.I. 4 at 152-53. Petitioner bases his allegation of interference on a letter from his trial counsel stating that the trial counsel's superiors in the public defender's office had instructed him to not comply with petitioner's request for documents. *See* D.I. 7 at A868. The letter also obliquely suggests that the trial judge, in an October 27, 1992 letter, informed petitioner of trial counsel's refusal to supply the requested documents. *See* D.I. 7 at A868. The trial judge's letter, however, only advises petitioner that petitioner's postconviction discovery request was premature. *See* D.I. 7 at A867.

From this inconsistency, petitioner infers that the trial judge conspired with petitioner's trial counsel to withhold documents from petitioner. The evidence does not support this inference. Because the record fails to establish any bias toward petitioner by the trial judge, no constitutional harm arose from the trial judge's review of petitioner's postconviction appeal.

### 11. Grounds Thirty to Thirty-One-Ineffective Assistance of Counsel

In his motion, petitioner argues that his Sixth Amendment rights were violated by his trial counsel's refusal to (1) object to various pretrial rulings, (2) interview state witnesses, and (3) present twenty-five character witnesses on petitioner's behalf. The Sixth Amendment provides that an accused has the right to the assistance of counsel in all criminal proceedings. U.S. Const. amend. VI. The United States Supreme Court has interpreted this right to include the right to effective assistance of counsel. *See Strickland,* 466 U.S. at 686. The right to effective assistance of counsel exists to protect an accused's fundamental right to a fair trial. *See id.* at 684; *see also Nix v. Whiteside,* 475 U.S. 157, 175 (1986) ; *United States v. Cronic,* 466 U.S. 648, 653 (1984).

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of these alleged deficiencies. *See Strickland,* 466 U.S. at 686; *see also Burger v. Kemp,* 483 U.S. 776, 788-89 (1987) ; *Darden v. Wainwright,* 477 U.S. 168, 184 (1986) ; *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). Under *Strickland,* a petitioner establishes prejudice by demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In determining the reasonableness of counsel's actions, the court must give considerable deference to the attorney's decisions. The Supreme Court has noted that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 688-89 (quoting *Michel v. Louisiana,* 350 U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91, 101 (1955)).

Petitioner must illustrate not only the derelictions of his counsel, but also that "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn,* 96 F.3d 666, 670 (3d Cir.1996) (citing *Strickland,* 466 U.S. at 668). When evaluating counsel's performance, however, a court should not "focus[ ] solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993). "To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the [petitioner] a windfall to which the law does not entitle him." *Id.* (citing *Cronic,* 466 U.S. at 658).

Petitioner's trial counsel presented a motion to dismiss and a motion for judgment of acquittal. *See* D.I. 4 at A409-10. The trial court dismissed both motions after a brief discussion. Petitioner argues that trial counsel should have objected to this "summary" dismissal of these motions. Counsel's failure to object was reasonable. The motions had been denied, and it is apparent from the record that further argument would not have altered the trial court's decision. Petitioner, therefore, cannot demonstrate either that his trial counsel's performance fell below an objective standard of reasonableness or he suffered prejudice. Accordingly, ground thirty will be dismissed.

Similarly, petitioner's objections to his counsel's trial preparation and tactics do not establish that his attorney's performance fell below an objective standard of reasonableness. Trial counsel had the benefit of transcripts from a previous trial, and the prosecution had not indicated that it would present any new witnesses during petitioner's third trial. Thus, it was reasonable for petitioner's trial counsel to refrain from interviewing prosecution witnesses. Moreover, petitioner fails to demonstrate how trial counsel's failure to interview these witnesses prejudiced his case.

Petitioner also contends that his lawyer's refusal to call

numerous witnesses constituted ineffective assistance of counsel. Petitioner does not allege specific facts regarding the substance of the testimony to be offered by these witnesses. In the absence of such evidence, petitioner cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland,* 466 U.S. at 688-89. Moreover, without specific examples of the testimony foregone by counsel's failure to call these witnesses, petitioner cannot establish that he suffered any prejudice. Thus, his ineffective assistance of counsel claims are without merit. Ground thirty-one will be dismissed.

12. Ground Thirty-Two-Ineffective Assistance of Appellate Counsel

Finally, petitioner alleges that his trial counsel "completely abandoned" him on direct appeal. See D.I. 4 at 191-94. The record reveals that petitioner's attorney filed a appellate brief and a motion to withdraw pursuant to Supreme Court Rule 26(c). *See Getz I* at * *1. This brief, which comported with Rule 26(c), certified one issue for appeal. Petitioner premises his ineffective assistance of appellate counsel claim in part upon his attorney's assurances that he would file a traditional brief on the merits.

The United States Supreme Court has noted that counsel, not client, determines which issues to brief on appeal. *See Jones v. Barnes,* 463 U.S. 745, 753-54 (1983). Appellate counsel, relying upon his or her professional judgment, has the right and the duty to select only the most promising issues for appellate review. *See id . at 752.* Accordingly, the filing of a Rule 26(c) brief that stated only one issue did not constitute ineffective assistance of appellate counsel.

Petitioner also contends that his attorney refused to file the appropriate record and that he withheld information from petitioner. In order to state a claim of ineffective assistance of appellate counsel, petitioner must satisfy the two-prong test enunciated in *Strickland. See* 466 U.S. at 686. Because the court cannot determine whether the Supreme Court received the trial transcript,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 22
Not Reported in F.Supp.2d, 1999 WL 127247
**(Cite as: Not Reported in F.Supp.2d)**

the court will assume that petitioner's attorney failed to file the record.

Even assuming that this omission fell below an objective standard of reasonableness, petitioner suffered no prejudice from the attorney's mistake. The Delaware Supreme Court refused to consider a variety of issues, including petitioner's claims relating to selective prosecution, denial of a speedy trial, and the prosecution's failure to disclose exculpatory evidence. *See Getz I* at * *2. As the court has noted above, each of these claims lacks merit. Thus, even if the Delaware Supreme Court had considered these issues, it would not have found any constitutional violations. Accordingly, petitioner has suffered no prejudice from his attorney's failure to provide the Supreme Court with the trial transcript.

Petitioner's ineffective assistance of counsel claim also rests on his attorney's refusal to provide him with certain information. Petitioner does not specify the nature of this evidence or its relevance to his appeal. Consequently, petitioner cannot satisfy either prong of the *Strickland* test. Ground thirty-two will be dismissed.

### V. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for a writ of habeas corpus. FN26 Petitioner's request for an evidentiary hearing is denied. *See* D.I. 38. An order shall issue consistent with this memorandum opinion.

FN26. Ground thirty-three, where petitioner objects to an increase in bail following the reversal of his first conviction, is dismissed as moot. *See* D.I. 4 at 195-96.

D.Del.,1999.
Getz v. Snyder
Not Reported in F.Supp.2d, 1999 WL 127247

Briefs and Other Related Documents (Back to top)

• 1:97CV00176 (Docket) (Apr. 10, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.