# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES W. RILEY,                          )
                                         )
      Petitioner,                 )
                                         )
   v.                                    )   Civ. A. No. 04-1435-GMS
                                         )
THOMAS CARROLL, Warden, et. al.,         )
                                         )
      Respondents.                )

---

James W. Riley. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

---

## MEMORANDUM OPINION

June 19   , 2007
Wilmington, Delaware



**FILED**

JUN 1 9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



Sleet, District Judge

## I. INTRODUCTION

Petitioner James W. Riley ("Riley") filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.)  For the reasons that follow, the court will

deny his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1982, a Delaware Superior Court jury convicted Riley of murdering a liquor store

owner during the course of a robbery.  Riley was sentenced to death, and the Delaware Supreme

Court affirmed Riley's conviction and sentence.  Riley filed a motion for post-conviction relief

pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  The Superior Court

denied Riley's Rule 61 motion, and the Delaware Supreme Court affirmed that judgment.  *Riley*

*v. State*, 585 A.2d 997 (Del. 1985).

In August 1991, Riley sought federal habeas relief pursuant to 28 U.S.C. § 2254.  Riley

subsequently filed a motion to amend his § 2254 petition, and the Honorable Joseph J. Farnan, Jr.

denied the motion to amend as well as Riley's original § 2254 petition.  *Riley v. Snyder*, 840 F.

Supp. 1012 (D. Del. 1993).  Riley appealed, and the Third Circuit Court of Appeals reversed the

order denying Riley's motion to amend his habeas petition and remanded the case for further

proceedings.  On remand, Judge Farnan denied Riley's amended habeas petition.  *Riley v. Taylor*,

1998 WL 172856 (D. Del. Jan. 16, 1998).  Riley appealed, and although the Third Circuit Court

of Appeals initially affirmed that decision, the Third Circuit subsequently granted Riley's

petition for rehearing *en banc* on two issues and vacated the entire initial panel opinion.  *See*

*Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001).  Thereafter, the Third Circuit granted Riley's

1

petition for habeas relief and ordered a new trial. *Id.*

Judge Vaughn of the Delaware Superior Court appointed two attorneys to represent Riley during his re-trial. Riley filed several motions to represent himself and, in March 2003, Judge Vaughn conducted a colloquy and granted Riley's motion to proceed *pro se*. Judge Vaughn also appointed Riley's two defense attorneys as stand-by counsel. A Delaware Superior Court jury convicted Riley of first degree (felony) murder, first degree robbery, and possession of a deadly weapon during the commission of a felony, but acquitted Riley of intentional murder and a related conspiracy charge. *See Riley v. State*, 867 A.2d 902 (Table), 2004 WL 2850093 (Del. Oct. 20, 2004). Riley opted to have stand-by counsel represent him during the penalty phase of his proceeding. The Superior Court sentenced Riley to life imprisonment on the murder conviction and to a total of 25 years incarceration at Level V on the remaining two convictions. *Id.* at *1.

Thereafter, Riley filed a motion titled "motion to extend time to file a motion for new trial pursuant to Rule 33," which the Superior Court treated, and denied, as a motion for new trial. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No.259,2003, at A-145 and A-146, and A-151 to A-154.) Riley represented himself on direct appeal, and the Delaware Supreme Court affirmed his conviction and sentence. *See generally Riley*, 2004 WL 2850093.

Riley timely filed the instant petition pursuant to 28 U.S.C. § 2254. (D.I. 2.) The State filed an answer, and Riley replied. (D.I. 17; D.I. 18.) Riley's habeas petition is now ready for review.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B.  Standard of Review

If a petitioner presented a federal habeas claim to the state's highest state court, and that

court adjudicated the claim on the merits, then federal habeas relief will only be warranted if the

state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).  A claim has been adjudicated on the merits for the purposes of 28

3

U.S.C. § 2254(d) when the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct, and the presumption is only rebuttable by a demonstration of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Riley asserts the following four grounds for relief in his habeas petition:[1] (1) the trial court failed to conduct an adequate inquiry into the conflict of interest that existed between Riley and his two defense attorneys; (2) the Delaware Supreme Court erred in denying Riley's conflict of interest claim because it failed to determine if counsel possessed knowledge beyond a reasonable doubt that Riley's proposed alibi defense was perjurious; (3) Riley's waiver of representation was not voluntary or knowing because he only opted to represent himself in order to avoid representation by conflicted counsel; and (4) the Delaware Supreme Court decision affirming his conviction on re-trial is tainted by the participation of two justices who should have

---

[1]The court has re-numbered Riley's claims without changing the substantive arguments contained therein.

been disqualified for participating in prior proceedings involving Riley.

## A. Claims one, two, and three: Sixth Amendment violations

Claims one, two, and three, present variations of a single issue, namely, that the two

defense attorneys created, and were operating under, an actual conflict of interest because they

did not have an adequate reason for believing that Riley's proposed alibi defense was perjurious.

In his first two claims, Riley contends that he should be granted habeas relief because neither the

Superior Court, nor the Delaware Supreme Court, conducted an adequate factual inquiry into

counsels' basis for concluding that his alibi defense was false. In his third Sixth Amendment

claim, Riley argues that he did not knowingly and voluntarily waive his right to representation in

his re-trial because his request to proceed *pro se* was based on his fear of being represented by

conflicted counsel. (D.I. 18)

The factual background for Riley's Sixth Amendment claims, excerpted from the

Delaware Supreme Court's opinion and portions of the March 19, 2003 colloquy transcript, is as

follows.

> After Riley's convictions and sentences were overturned and his case returned to the
> Superior Court for re-trial, two attorneys were appointed by the Superior Court to
> represent him. On several occasions, Riley complained to the Superior Court judge about
> his court-appointed counsel. In 2003, Riley complained that his counsel improperly
> refused to file a writ of certiorari in the United States Supreme Court. Also in February
> 2003, Riley complained that his counsel refused to have certain fingerprint evidence
> examined and requested leave to proceed *pro se*. He later withdrew this request. In
> March 2003, however, Riley complained that his counsel had failed to provide him with
> discovery material and again asserted his right to proceed *pro se*. In a letter dated March
> 18, 2003, Riley's counsel notified the Superior Court judge that Riley intended to
> represent himself at trial if he decided not to accept the State's plea offer. Subsequently,
> Riley decided not to accept the State's plea offer and, on March 19, 2003, the Superior
> Court judge held a hearing on Riley's request to proceed *pro se* at trial.
>
> At the hearing, which was attended by Riley, Riley's two court-appointed defense

attorneys, and two prosecutors, the judge conducted a colloquy with Riley concerning the reasons why he wanted to represent himself. Riley responded that the reasons, which involved "differences of opinions" between himself and his counsel, should not be stated in open court, but should be explored in a "private meeting" with his counsel and the judge. The judge asked if the reasons had to do with differences regarding how his case should be handled. Riley answered, "Right, yes." The judge then asked Riley if he felt competent to represent himself. Riley responded that this would be his "first time" representing himself, but that he would try and was "pretty sure" that he could handle it. He also stated that he would rather represent himself "if I had to chose [sic] between poor representation and self representation."

The judge then reviewed the charges and possible sentences with Riley and reminded Riley that he was responsible for becoming familiar with the rules of procedure and the rules of evidence. The judge pointedly told Riley that it was a mistake to represent himself, listing a number of pitfalls of self-representation. Acknowledging these admonitions, Riley replied: " . . . if you knew the facts as far as why I request to represent myself, then maybe you wouldn't think it was a mistake." The judge once more asked Riley if the reasons for his request to proceed *pro se* stemmed from a disagreement about how the case should be handled. Riley agreed, referring specifically to a disagreement with his counsel over the presentation of "mitigating evidence" and an "alibi defense." The judge again strongly advised Riley against representing himself.

When the judge asked if the attorneys wished him to ask any further questions of Riley, one of the prosecutors stated that he wished to address some of the issues raised by Riley in more detail. The prosecutor stated it was well known that the State intended to present latent fingerprint evidence from a beer bottle at trial and that defense counsel had ethical concerns about Riley's proposed strategy for countering that evidence. He further stated: "So it's not simply . . . a disagreement in terms of strategy, but restrictions, ethical restrictions on what defense counsel may be able to do, which has caused a conflict."

Defense counsel responded that he had concerns about raising such issues with the judge, since the judge would be the fact finder for purposes of sentencing. Defense counsel further stated that he had contacted the Professional Ethics Committee for input on his ethical concerns, and had raised those concerns with Riley. He stated that, due to the possible prejudicial impact on the trial, someone other than the trial judge should conduct an inquiry into the specific nature of the evidence in dispute.

*Riley*, 2004 WL 2850093, at *1-3.

At this point, the trial judge asked defense counsel "[w]hat are you asking me to do . . .

[if] anything?" ( D.I. 24, at 55.) The following interaction occurred:

6

DEFENSE COUNSEL: I don't think - - I would say, based upon what I believe this discussion would be between Your Honor and Mr. Riley, and I assume with [the other defense attorney] and I present, that [an *ex parte in camera* hearing] would not be appropriate at this point in time. That it would be appropriate – and just so you are clear, [the other defense attorney] can disagree with me, if his opinion view is different – we do not oppose Mr. Riley's application [to proceed *pro se*] based on our discussion with him. But I think the court can make its determination without having the inquiry, and I believe the inquiry would be detrimental to the process at this point in time.

THE COURT: Okay. Well, without going into any specifics, do I understand that there's an irreconcilable difference regarding evidence?

DEFENSE COUNSEL: I would say there's certainly likely to be, yes, sir.

THE COURT: All right. Do you agree with that, Mr. Riley?

RILEY: Yes. And . . . for them reasons there, that's why they can't represent me. Because if they do represent me, then certain evidence they couldn't put on. . . .

*    *    *    *

RILEY: It's something greater than that, that I think should be discussed in private chambers, between me and my lawyers and you, yourself.

(D.I. 24, at 55-57.)

After asking several questions concerning Riley's level of education, the judge ruled on his request to proceed *pro se*, explicitly declining to inquire further into the evidentiary issues that formed the basis for the disagreement between Riley and his counsel. The judge stated: ". . . I have endeavored to ascertain the reasons . . . why Riley wanted to represent himself, and . . . those reasons seemed to focus on issues of evidence, probably strategy, and I've tried to satisfy myself that . . . it's irreconcilable . . . and, further, . . . I am not inclined, . . . having satisfied myself that the differences between counsel and the defendant seem to relate directly to the case itself, . . . to hold some kind of an *in camera* proceeding with the defendant where I get involved in the details of that issue."

Once again strongly admonishing Riley about the dangers of representing himself, the judge determined that Riley's decision to proceed *pro se* was knowing, intelligent and voluntary. He further ordered that Riley's counsel would remain as "standby counsel." When Riley objected to that arrangement, both the judge and counsel assured Riley that the purpose of standby counsel was to assist him only if he requested assistance. When the judge then explained that standby counsel would step in to represent Riley if he changed his mind about representing himself during the trial, Riley again objected, stating that the arrangement would result in a "conflict of interest."

> During trial, Riley represented himself, with the help of standby counsel. . . . After trial
> had concluded, Riley requested that standby counsel represent him during the penalty
> phase. The Superior Court granted Riley's request.

*Riley*, 2004 WL 2850093, at *1-3.

Riley presented his conflict of interest claims to the Delaware Supreme Court on direct

appeal of his re-trial, and the Delaware Supreme Court denied the claims as meritless. Therefore,

the court will review the Delaware Supreme Court's decision under § 2254(d)(1) to determine if

the decision was either contrary to, or an unreasonable application of, clearly established

Supreme Court precedent.[2]  Additionally, where Riley challenges the state court decision on

factual grounds, the court will review the state court decision under § 2254(d)(2) to determine if

it was based on an unreasonable determination of the facts in light of the evidence presented.

The Sixth Amendment guarantees a criminal defendant "the right to adequate

representation by an attorney of reasonable competence and the right to the attorney's undivided

loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir.

1988). To prevail on a Sixth Amendment claim based on a conflict of interest, the petitioner

"must establish that an actual conflict of interest adversely affected his lawyer's performance."

*Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). An actual conflict of interest arises when "trial

---

[2]A Sixth Amendment conflict of interest claim is usually treated as a special type of
ineffective assistance of counsel claim because, if the attorney actively represented conflicted
interests that adversely affected his performance, the attorney's assistance will be presumed to
have been prejudicially ineffective. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In
Delaware, ineffective assistance of counsel claims must be asserted and reviewed on post-
conviction review pursuant to Delaware Superior Court Criminal Rule 61. Therefore, when the
Delaware Superior Court conducted a hearing on Riley's motion to proceed *pro se*, it specifically
stated that any allegations involving the effectiveness of counsels' assistance would not be
reviewed on direct appeal. (D.I. 17, *State v. Riley*, No. 259,2003, "Findings of Fact and
Conclusions of Law", at ¶ 15 (Del. Super. Ct. Aug. 18, 2003)

counsel's interests and the defendants' interests diverge[] with respect to a material factual or

legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135

(3d Cir. 1984). Although typical conflict of interest cases arise in the context of an attorney's

representation of multiple clients, the Third Circuit has held that conflicts of interest can arise in

other cases, such as when counsel's personal interests are "'inconsistent, diverse, or otherwise

discordant' with those of his client and [those interests] affected the exercise of his professional

judgment on behalf of his client."[3] *Id.*; *see also United States v. Gambino*, 864 F.2d 1064, 1070

(3d Cir. 1988). A petitioner establishes an actual conflict of interest by "demonstrat[ing] that

some plausible defense strategy or tactic might have been pursued . . . [and] that the alternative

defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or

interests." *Gambino*, 864 F.2d at 1070.

### 1. Claim One: Superior Court's inquiry into the conflict of interest

In his first claim, Riley criticizes the Superior Court for failing to conduct an *ex parte in

camera* proceeding regarding the "conflict of interest" he had with his two defense attorneys.

---

[3]The seminal Supreme Court case involving actual conflicts of interest is *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). *Sullivan* and subsequent Supreme Court jurisprudence regarding actual conflicts of interest arose in the context of an attorney's representation of multiple clients, where "the conflict exists between the interests of one defendant and the interests of other defendant's served by the same attorney." *Zepp*, 748 F.2d at135. Recently, in *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court questioned the applicability of *Sullivan* to conflicts arising outside the context of multiple representation, and opined that it remains an open question whether *Sullivan* should be extended to other kinds of conflict of interest cases. *Id.* at 175-76. However, in its 1983 *Zepp* decision, the Third Circuit expressly extended *Sullivan* to conflict of interest cases other than those arising in the multiple representation context. *Zepp*, 748 F.2d at 135. The Third Circuit has not addressed the effect of *Mickens* on its holding in *Zepp*. Therefore, the court assumes that *Sullivan*'s doctrine regarding actual conflicts of interest applies in Riley's case.

Pursuant to *Holloway v. Arkansas* and *Cuyler v. Sullivan*, a trial judge must conduct a threshold

inquiry to determine if an actual and disqualifying conflict of interest exists in two situations:

first, when an objection is made to an attorney's multiple representation, or second, in other

"special circumstances." *Holloway v. Arkansas*, 435 U.S. 475 (1978); *Cuyler v. Sullivan*, 446

U.S. 335 (1980). Although the Supreme Court has identified when a threshold inquiry into a

potential conflict is required, the Supreme Court has not articulated a standard explaining how a

court satisfies that threshold duty of inquiry. Therefore, as an initial matter, the Delaware

Supreme Court's decision to deny Riley's claim regarding Judge Vaughn's failure to conduct an

*ex parte in camera* hearing was not contrary to clearly established Federal law. *See Williams v.*

*Taylor*, 529 U.S. 362, 406 (2000); *Fischetti v. Johnson*, 384 F.3d 140, 147-49 (3d Cir. 2004) .

The court's inquiry under the reasonableness prong of § 2254(d)(1) is a bit more

complicated. According to the Third Circuit, where, as here, there is no clearly established

Supreme Court precedent addressing the issue before the court, the court

> reviewing the reasonableness of the state court's application of Supreme Court precedent
> [under § 2254(d)(1)] . . . must use as [its] point of departure the specific holdings of the
> Court's decisions. When assessing whether the state court acted reasonably in applying
> or refusing to apply that precedent, [the court] must be mindful that the issue is whether
> Supreme Court law "dictated" a result in [the] case, or whether the circumstances
> presented here were "closely analogous" to those that formed the basis of earlier high
> court decisions.

*Fischetti*, 384 F.3d at 150-51(internal citations omitted). A court may also consider the

decisions rendered by lower federal courts when determining whether the state court reasonably

applied Supreme Court precedent. *Id.* at 149; *Chadwick v. Janecka*, 312 F.3d 597, 613 (3d Cir.

2002).

In Riley's case, the court uses as its point of departure the Supreme Court's rule that a

court must conduct a threshold inquiry into a potential conflict.  Then, in order to flesh out the

steps needed to satisfy that threshold duty, the court turns to the Third Circuit's decision

*Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984).  Pursuant to *Zepp*, the

relevant issue is whether Judge Vaughn's conclusion that defense counsel did not need to be

disqualified was the result of a sufficient factual inquiry "into the nature of the conflict and the

client's awareness of the conflict."  *Id.* at 139.

 Prior to the March 19, 2003 colloquy,  Riley filed two motions asserting his

dissatisfaction with counsels' treatment of the fingerprint evidence from the beer bottle found at

the scene of the murder.  One motion requested Judge Vaughn to personally examine the

fingerprint evidence, and the other motion requested permission to proceed *pro se* because

defense counsel allegedly refused to have the fingerprint evidence properly evaluated.  (D.I. 17,

*Riley v. State*, No.259,2003, App. to State's Ans. Br., B-13 through B-32, B-33 through B-36).

Chemical testing performed prior to Riley's re-trial revealed that the fingerprint in question

belonged to Riley.

 During the March 19, 2003 colloquy on Riley's motion to proceed *pro se*, Riley again

voiced his dissatisfaction with counsel's treatment of the evidence.  Riley still described the

problem as "evidentiary" in nature, and never asserted any other reason for his discontent with

counsel's performance.  After one of the prosecutors explained that  Riley's characterization of

the issue failed to recognize that the problem for defense counsel also involved a possible ethical

dilemma, Judge Vaughn asked defense counsel to describe the nature of the disagreement.

Counsel responded that the issue involved an ethical concern regarding the admissibility of

evidence, and he informed Judge Vaughn that he had actually written a letter that same morning

to the Co-Chair of Delaware's Professional Ethical Committee regarding his concern. Judge

Vaughn explicitly asked counsel what type of action was required, and counsel replied that the

situation with Riley did not necessitate an *ex parte in camera* hearing at that particular point in

time. Judge Vaughn then asked Riley more questions to ascertain the nature of the

disagreement, and Riley still described the problem as a difference of opinion over the

presentation of evidence. Riley consistently maintained that he wanted to represent himself, and

he never asked for the appointment or substitution of new counsel.

In short, Judge Vaughn's factual inquiry into the nature of the "conflict" and into Riley's

awareness of the "conflict" sufficiently satisfied his threshold duty of inquiry, thereby

eliminating the need for any other type of inquiry such as an *ex parte in camera* proceeding. *See*

§ 2254(d)(1). Further, Judge Vaughn properly relied on counsel's assessment of the situation in

determining that there was no conflict or need to conduct an *ex parte in camera* hearing, and he

reasonably determined that the situation involved an evidentiary dispute that did not disqualify

counsel from acting as stand-by counsel. *See Mickens*, 535 U.S. at 167-68 ("defense counsel is

in the best position to determine if a conflict exists."); *See* § 2254(d)(2). Moreover, because

Judge Vaughn repeatedly asked Riley to describe the problem in his own words, and Riley

consistently referred to the problem as one of evidence, it was reasonable for Judge Vaughn to

conclude that the problem between Riley and counsel involved a difference of opinion over

strategy and the presentation of evidence.[4] *Id.* Accordingly, the court will deny Riley's first

---

[4]Although Riley objected to the appointment of the two attorneys as stand-by counsel by
stating that such appointment would create a conflict, Riley subsequently agreed to the
appointment of counsel on a stand-by basis after being assured by counsel and Judge Vaughn that
he would be the one deciding what to offer as evidence and testimony. In response to Riley's
objection to the appointment of stand-by counsel, counsel specifically stated that his

claim.[5]

## 2. Claim Two: Delaware Supreme Court's inquiry into the perjury issue

In his next claim, Riley argues that he is entitled to habeas relief because the Delaware

Supreme Court failed to hold an evidentiary hearing to determine if counsel possessed

knowledge beyond a reasonable doubt that Riley's proposed alibi defense constituted perjury.

Riley contends that the Delaware Supreme Court should not have relied on the statements

contained in counsels' letter to the Professional Ethics Committee in determining the perjury

issue; instead, the Delaware Supreme Court should have independently reviewed the records to

which counsel referred.

As an initial matter, Riley's pronouncement that attorneys must possess knowledge

beyond a reasonable doubt that the defendant intends to commit perjury is a standard imposed by

Delaware caselaw.[6]  *See Shockley v. State*, 565 A.2d 1373, 1379 (Del. 1989).  Therefore, to the

---

understanding of stand-by counsel's role was "to protect [Riley's] interest in fundamental
fairness as he proceeds, but not to interject into the trial any views we might have about the
offering of testimony." (D.I. 17, App. to Appellant's Br. in *Riley v. State*, No. 259,2003, at A-
44.) Judge Vaughn also explained that "[t]he stand-by counsel is there to assist you, to the extent
that you wish to have their assistance, in making decisions and handling the case. They, as stand-
by counsel, they don't tell you what to do, and it's up to you to as to when you want their
assistance." *Id.* at A-45.  Finally, Judge Vaughn specifically stated that if there were any issues
that "develop in [the] area [of stand-by counsel's role), the Court can address them." *Id.*

[5]Additionally, even if Judge Vaughn should have undertaken a further initial inquiry,
Riley is not entitled to habeas relief because there was no actual conflict of interest that
adversely affected counsel's performance. *See infra* at 14-17.

[6]The Third Circuit has articulated a requirement that a defense attorney have a "firm
factual basis" for believing that the defendant intends to testify falsely before informing the trial
court of the defendant's perjurious intent. *United States ex rel Wilcox v. Johnson*, 555 F.2d 115,
122 (3d Cir. 1986).  Yet, even the Third Circuit has not addressed the precise issue here, namely,
whether a state appellate court must conduct an evidentiary hearing to determine the basis for an
attorney's belief regarding his client's planned perjury when that defendant represented himself

extent Riley's claim is premised on a violation of Delaware law, the claim fails to present an

issue cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62. 67-8 (1991).

Further, the court has not found any Supreme Court precedent addressing the precise

issue here, namely, whether a state court presented with a post hoc issue involving a defendant's

intent to commit perjury is required to conduct an evidentiary hearing to ascertain the factual

basis for defense counsel's belief that the defendant intended to commit perjury, or whether the

state court may rely on the reasons proffered by counsel for reaching that conclusion.[7] The

closest Supreme Court precedent addressing this issue is *Nix v. Whiteside*, 475 U.S. 157 (1986),

in which the Supreme Court held that a defendant's Sixth Amendment right to effective

assistance of counsel is not violated when an attorney refuses to cooperate with the defendant in

presenting perjured testimony at trial, or threatens to withdraw. In *Nix*, after the jury found the

defendant guilty of second degree murder, the defendant filed a motion for new trial, asserting

that his attorney had violated his right to a fair trial by advising him not to present certain

testimony because counsel believed the testimony to be perjurious. The trial court held a

hearing, heard testimony by the defendant and counsel, and denied the motion for new trial after

determining that the defendant would have perjured himself had he testified at trial. Thereafter,

the state appellate court, the federal district court, the federal circuit court, and the United States

Supreme Court all accepted the trial court's finding that "counsel believed with good cause that

[the defendant] would testify falsely." *Id.* at 163.

Although the trial court in *Nix* actually did conduct an evidentiary hearing to determine if

_____

at trial and did not testify at trial.

[7]The court also has not found any Third Circuit case addressing the precise issue here.

14

the defendant's proposed testimony constituted perjury, the court finds nothing in *Nix* requiring a

state appellate court to conduct an evidentiary hearing when, as here, the state trial court did not

do so.[8] Therefore, the court concludes that the Delaware Supreme Court's failure to conduct

such a hearing was neither contrary to, nor an unreasonable application of, clearly established

Federal law.

    The court's inquiry, however, is not over.  The fact that the Delaware Supreme Court did

not conduct an evidentiary hearing regarding Riley's intended perjury and that it did not make

any express findings of historical fact with respect to the perjury does not mean that the Delaware

Supreme Court refrained from making any factual findings with respect to counsels' belief that

Riley intended to commit perjury.  "[I]f no express findings of fact have been made by a state

court, the District Court [in a habeas proceeding] must initially determine whether the state court

has impliedly found material facts." *Townsend v. Sain*, 372 U.S. 293, 314 (1963), *overruled on

other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Additionally, the presumption of

correctness under § 2254(e)(1) applicable to a state court's explicit factual findings applies to

factual findings that are implicit in the state court's decision, unless the petitioner provides clear

---

[8]In fact, the record reveals that Riley actually asked the Superior Court to refrain from
conducting an inquiry into the perjury issue.  After the jury issued its guilty verdict,  Riley filed a
motion for new trial, arguing that stand-by counsel had been operating under a conflict of interest
because they threatened to reveal attorney-client privileged information to the court if he
presented his alibi defense during his trial. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*,
No. 259,2003, at A-153.) Riley specifically stated that, "[a]t this late stage in the proceedings it
would be potentially prejudicial for the court to review any new evidence in connection with
[his] motion for new trial that could influence the trial judge's final decision as to the appropriate
penalty." *Id*. at A-154.  Limiting its review of the matter to "the colloquy at the time that [Riley]
waived . . . counsel . . .," the Superior Court denied the motion for new trial because it was
"satisfied that [Riley's] attorneys did not have any conflict of interest as such.  There was simply
a disagreement over trial strategy." *Id*. at A-146.

and convincing evidence to the contrary. *See Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000);

*Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)(presumption of correctness applies to the

factual determinations of both state trial and appelllate courts). And finally, "[e]ven [when] a

petitioner can rebut a state court's factual finding by clear and convincing evidence, [a court] can

only grant habeas relief if the state court's factual finding was 'an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding.'" *Davenport v.*

*Diguglielmo*, 2007 WL 412422, at *3 (3d Cir. Feb. 7, 2007)(non-precedential); *see* Fed. R. App.

P. 32.1 (permitting the citation of federal judicial opinions that have been designated as non-

precedential, unpublished, etc.) Therefore, the court must determine if the Delaware Supreme

Court implicitly found Riley's proposed alibi defense to be perjurious, and if so, whether that

determination was reasonable in light of the facts presented to the state appellate court on direct

appeal.

The court will base its review under § 2254(d)(2) upon the following record, which is the

same record that was presented to the Delaware Supreme Court. During his first trial in 1982,

Riley testified that he was in Philadelphia at the time of the robbery and that he did not

participate in the crime. However, no witnesses testified during that trial to support Riley's alibi

defense, and a latent fingerprint lifted from a beer bottle found at the scene of the crime and

identified as Riley's was introduced into evidence during the trial. *See Riley v. Snyder*, 840 F.

Supp. 1012 (D. Del. 1993), *vacated on other grounds by Riley v. Taylor*, 62 F.3d 86 (3d Cir.

1995); (D.I. 17, App. to State's Ans. Br. in *Riley v. State*, No.259,2003, at B-57 through B-61.)

Prior to his re-trial in 2003, Riley sought chemical testing on the same beer bottle found

at the crime scene in 1982. The chemical testing identified the fingerprint as Riley's. According

16

to counsel, Riley told counsel that he intended to testify that the police planted his fingerprint on

the bottle, and that he intended to testify that he was in Philadelphia at the time of the murder and

not in Dover (where the murder took place). Riley also stated that he would produce witnesses

indicating that he was in Philadelphia at the time of the murder.[9]

Counsel received a box of file materials from Riley's former post-conviction counsel

during their preparation for Riley's re-trial. That box contained former counsel's notes outlining

his interviews with Riley. In those interviews, Riley described in significant detail his own

participation in the robbery and subsequent murder. Riley also described other actions that were

consistent with events both prior to and subsequent to the crime. Faced with the inconsistency

between Riley's proposed alibi defense and the information contained in the post-conviction file,

defense counsel concluded that Riley's proposed alibi defense was false. (D.I. 30, App. to

Appellant's Op. Br. in *Riley v. State*, No. 259,2003)

At some point after that determination, Riley informed counsel that he intended to

represent himself during his trial. Given the possibility of being appointed as stand-by counsel,

counsel dictated a letter to the Co-Chair of Delaware's Professional Ethics Committee on March

19, 2003, the same morning on which the Superior Court was to conduct a hearing on Riley's

motion to proceed *pro se*. In that letter, counsel asked if stand-by counsel would have an ethical

obligation to advise the court of Riley's intent to present false testimony and, if so, whether it

would be proper to notify Judge Vaughn about Riley's intent or whether counsel should notify a

judge other than Judge Vaughn. Counsel also sent a letter to President Judge of the Superior

_____

[9]This information was revealed in counsel's letter to the co-chair of Delaware's Ethical
Committee. (D.I. 30, App. to Appellant's Op. Br. in *Riley v. State*, No. 259,2003)

Court who was not presiding over Riley's 2003 criminal trial warning him that there may be a

potential problem in the future that would require review from someone other than Judge

Vaughn. *Id.* Later that morning, after conducting a thorough colloquy, Judge Vaughn granted

Riley's motion to proceed *pro se* and appointed defense counsel as stand-by counsel.

Evidence of the latent fingerprint lifted from the beer bottle in 1982 was introduced

during Riley's re-trial, as was evidence from the chemical testing in 2003 that also identified the

fingerprint as Riley's. Although Riley voluntarily waived his right to testify on re-trial, his

testimony from the 1982 trial, including his alibi defense, was read to the jury.

Riley was convicted, and he appealed. On direct appeal, Riley argued that counsel did

not have a reasonable basis for concluding that Riley's proposed alibi defense was false. In fact,

Riley argued that counsel manufactured the evidence demonstrating the falsity of Riley's alibi

defense. (D.I. 17.) However, Riley never disputed counsels' statements that Riley had informed

counsel about his intent to present the alibi defense on re-trial and find witnesses to support that

defense. The Delaware Supreme Court denied the claims raised in Riley's appeal.

After reviewing the state supreme court's decision in context with the record summarized

above, the court concludes that the Delaware Supreme Court's decision reflects an implicit

factual determination that Riley's proposed alibi defense was perjurious. In his initial appellate

brief, Riley explicitly argued that the trial court had failed to conduct a "*Shockley*" inquiry to

determine if counsel possessed accurate knowledge beyond a reasonable doubt Riley intended to

testify falsely at trial.[10] Then, in his "motion for reargument *en banc*" presented to the Delaware

Supreme Court, Riley specifically argued that the Delaware Supreme Court needed to conduct

---

[10]*Shockley v. State*, 565 A.2d 1373, 1379 (Del. 1989).

the "*Shockley*" inquiry into the basis for counsels' belief that Riley intended to commit perjury. Although the Delaware Supreme Court did not explicitly address Riley's *Shockley* argument in its decision, the Delaware Supreme Court did discuss the three March 2003 letters written by Riley's counsel explaining the basis for counsels' conclusion that Riley intended to commit perjury. The Delaware Supreme Court also considered, and rejected, Riley's argument that counsel fabricated the evidence indicating that his planned alibi defense was not true, and characterized the issue before it as involving a client's "planned perjury," or an attorney's questioning of "the veracity of his client's anticipated trial testimony," *Riley*, 2004 WL 2850093, at *3. Finally, at the end of its analysis, the Delaware Supreme Court cited *Shockley* to support its statement that "[t]his Court has recognized that no per se conflict of interest between attorney and client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony." *Riley*, 2004 WL 2850093, at *3.

When viewed in this context, the Delaware Supreme Court's final conclusion that there was no "factual or legal basis for Riley's contention that his counsel's actions constituted a conflict of interest or that his counsel should have been disqualified from representing him"[11] demonstrates the state supreme court's implicit factual determination that Riley's proposed alibi defense was fictitious. Riley attempts to rebut this factual finding by arguing that counsel was angered by Riley's failure to accept the plea agreement and therefore manufactured the evidence indicating the falsity of his alibi defense. However, because the record belies this specious argument, the court concludes that Riley has failed to provide any clear and convincing evidence to rebut the presumption that the Delaware Supreme Court's factual finding is correct. In turn,

---

[11]*Riley*, 2004 WL 2850093, at *3.

the court also concludes that the Delaware Supreme Court's determination that Riley planned to

commit perjury was reasonable in light of the facts presented to the state appellate court during

Riley's direct appeal. Therefore, to the extent Riley challenges the Delaware Supreme Court's

decision on factual grounds, the court concludes that habeas relief is not warranted under §

2254(d)(2).

Having determined that the Delaware Supreme Court reasonably concluded that Riley's

proposed alibi defense constituted perjury, the court must next determine if the Delaware

Supreme Court's denial of Riley's conflict of interest claim was either contrary to, or an

unreasonable application of, clearly established Supreme Court precedent. In *Nix*, 475 U.S. at

176, the Supreme Court held that the type of conflict arising from a client's proposal to commit

the crime of perjury does not constitute an actual conflict rendering an attorney's performance

presumptively ineffective or requiring the attorney's automatic disqualification. The Supreme

Court explained that, "[i]f a 'conflict between a client's proposal and counsel's ethical obligation

gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty

criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by

illegal means." *Id.* at 176.

Here, because the alleged conflict stemmed from Riley's proposal to commit perjury, the

Delaware Supreme Court properly identified *Nix* as the governing precedent and analyzed Riley's

claim within its framework. Therefore, the Delaware Supreme Court's decision was not contrary

to clearly established Federal law.

Further, given *Nix*'s clear and unequivocal holding that the type of conflict arising from a

client's intent to commit perjury does not constitute an actual conflict, the court concludes that

the Delaware Supreme Court reasonably applied Supreme Court precedent in holding that Riley's

two defense attorneys were not operating under an actual conflict of interest requiring their

disqualification.[12] And finally, given the absence of any actual conflict of interest, the court

concludes that the appointment of the two attorneys as stand-by counsel did not violate Riley's

Sixth Amendment right to conflict-free counsel.

Having determined that there was no actual conflict of interest, the court must review

Riley's claim under the two-pronged standard articulated by the Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984) to determine if counsels' actions violated Riley's Sixth

Amendment right to the effective assistance of counsel.[13]  *See Hess v. Mazurkiewicz*, 135 F.3d

905, 910 (3d Cir. 1998) (if a petitioner can only establish the existence of a potential conflict of

interest, then, pursuant to *Strickland*, the petitioner will have to demonstrate prejudice in order to

prove counsel was ineffective).  Under the first *Strickland* prong, a petitioner must demonstrate

---

[12]For example, the Delaware Supreme Court determined that defense counsels' refusal to pursue an alibi defense did not constitute a "conflict of interest" under the Delaware Lawyers' Rules of Professional Conduct because the case did not involve the representation of more than one client or involve representation materially limited by a personal interest of the attorney. Then, referring to Delaware caselaw and *Nix*, the Delaware Supreme Court explained that "no *per se* conflict of interest between an attorney and client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony." *Riley*, 2004 WL 2850093, at *3. The Delaware Supreme Court also explained that, under *Nix*, a criminal defendant's right to testify does not include the right to testify falsely, and that an attorney may refuse to cooperate with a client's planned perjury without depriving the defendant of his right to counsel. *Id.*

[13]Although the Delaware Supreme Court did not explicitly review the merits of Riley's ineffective assistance of counsel claims under *Strickland*'s two-pronged standard, the Delaware Supreme Court implicitly addressed the issue by concluding that, pursuant to *Nix*, "an attorney who refuses to cooperate with his client's planned perjury, as is ethically required, does not deprive the defendant of his right to counsel." *Riley*, 2004 WL 2850093, at *3. Therefore, the court will review the claims under § 2254(d)(1).

that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must establish prejudice by showing "a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). The *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Riley first contends counsel performed ineffectively by threatening to expose his perjury to the court and by threatening to withdraw unless Riley accepted the plea agreement. The record belies this challenge. Counsel's letters to the Co-Chair of Delaware's Professional Ethics Committee and to the President Judge demonstrates counsel's conscientious attempt to avoid revealing the substance of Riley's intended perjury to the trial court. Additionally, even though counsel urged Riley to accept the plea offer, neither the letters nor any other document in the record indicates that counsel threatened to withdraw. (D.I. 3, at A-11 and A-12.)

Moreover, even if counsel did threaten to reveal Riley's perjury or to withdraw as counsel, such conduct did not fall below an objective standard of reasonableness. As explained in *Nix*, "[w]hether [counsel's] conduct is seen as a successful attempt to dissuade his client from committing the crime of perjury, or whether seen as a 'threat' to withdraw from representation

and disclose the illegal scheme, [counsel's] representation of [defendant] falls well within

accepted standards of professional conduct and the range of reasonable professional conduct

acceptable under *Strickland*." *Nix*, 475 U.S. at 171.

Riley also cannot satisfy the prejudice prong of the *Strickland* standard. First, because the

right to testify does not include the right to testify falsely, *Harris v. New York*, 401 U.S. 222, 225

(1971), Riley "has no valid claim that confidence in the result of his trial has been diminished by

his desisting from the contemplated perjury." *Nix*, 475 U.S. at 176. Second, to the extent Riley

contends that counsels' threats forced him to forego testifying at his re-trial, the transcript of the

trial demonstrates that Riley's decision not to testify was both voluntary and knowing. (D.I. 17,

App. to Appellant's Op. Br. in *Riley v. State*, No.259,2003, at A-125 to A-129.) And, perhaps

most significantly, Riley cannot establish prejudice because his testimony from his first trial

setting forth the alibi defense was actually admitted into evidence in his re-trial. Accordingly, the

court concludes that Riley's claim regarding counsels' alleged threats does not warrant habeas

relief.

Riley also contends that trial counsel provided ineffective assistance during the hearing

on Riley's motion to proceed *pro se* because counsel argued against Judge Vaughn conducting an

*ex parte in camera* inquiry into Riley's disagreement with counsel. In *Holloway v. Arkansas*, the

Supreme Court held that an attorney should not disclose client confidences to the judge who may

be called upon later to impose the defendant's sentence for fear of creating a significant risk of

unfair prejudice. *Holloway*, 435 U.S. at 487 n.11. During the March 19, 2003 colloquy, counsel

actually stated that, if any *ex parte in camera* hearing was needed at a later date, Judge Vaughn

would not be the proper person to conduct such a hearing because of the impropriety of

23

discussing evidentiary issues with a judge who, pursuant to Del. Code Ann. tit. 11, § 4209, would

become the finder of fact for sentencing purposes. (D.I. 24, at 53.) Accordingly, because the

Delaware Supreme Court's denial of the instant claim was explicitly based on *Holloway*, the

court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an

unreasonable application of, clearly established Federal law.

### 3. Claim Three: involuntary waiver of representation

Finally, Riley contends that his waiver of representation was involuntary and unknowing

because he only asked to proceed *pro se* in order to avoid representation by conflicted counsel.

Interestingly, however, Riley filed his motion to proceed *pro se* before counsel determined that

Riley's proposed alibi defense was false, thereby casting doubt on his contention that he only

decided to proceed *pro se* after counsel allegedly threatened to withdraw. Moreover, as

previously explained, Riley's two defense attorneys were not operating under an actual conflict

of interest. These two reasons alone provide the court with a sufficient basis for denying Riley's

instant claim as factually baseless.

More significantly, however, the court concludes that Riley's claim does not warrant

habeas relief when reviewed under § 2254(d)(1) and the framework provided the clearly

established Supreme Court precedent governing self-representation claims. Pursuant to *Faretta*

*v. California*, 422 U.S. 806 (1975), a criminal defendant's waiver of counsel is only valid if the

defendant is "made aware of the dangers and disadvantages of self-representation, so that the

record will establish that he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835. A trial court must ensure that a defendant's waiver of counsel is

knowing, voluntary, and intelligent before permitting a defendant to proceed *pro se*. *Iowa v.*

*Tovar*, 541 U.S. 77, 88 (2004).

Here, the Delaware Supreme Court's decision that Riley voluntarily and knowingly waived his right to representation by counsel constituted a reasonable application of *Faretta*. Prior to granting Riley's request to proceed *pro se*, Judge Vaughn reviewed Riley's background, explained the serious charges and potential sentence that Riley faced, reviewed the rules that Riley would have to follow during his criminal proceeding, warned Riley that making mistakes could severely hurt his case, and repeatedly advised Riley that he should not represent himself. In turn, Riley repeatedly stated that he understood his rights and the consequences of waiving counsel. Thus, even if Riley's decision to proceed *pro se* stemmed from his desire to present evidence that counsel was ethically constrained to present, Judge Vaughn conducted a sufficient *Faretta* inquiry and reasonably concluded that Riley's decision to represent himself was not involuntary or coerced. Accordingly, the court will deny Riley's involuntary waiver of representation claim.

### B.  Claim Four: participation of judges in Riley's direct appeal

In his final claim, Riley alleges that the Delaware Supreme Court erroneously affirmed his convictions and sentence due to the fact that two judges improperly participated in the decision. First, Riley contends that Chief Justice Myron Steele should have been disqualified from hearing his appeal because the Chief Justice presided over the 1989 post-conviction evidentiary hearing on Riley's *Batson* claim. (D.I. 2, at ¶ 12C.)  The court will deny this claim as factually baseless. Although Chief Justice Steele participated in the initial appellate panel that denied Riley's appeal in September 2004, he was not on the actual panel that reconsidered and

decided Riley's appeal *en banc* in October 2004.[14]

Riley also contends that Justice Holland should not have been included in the new appellate panel on re-trial because Justice Holland was on the panel which denied Riley's post-conviction appeal back in 1990, and it was the reversal of that 1990 decision that led to Riley's re-trial in 2003. Although the record reveals that this claim is procedurally defaulted,[15] the court will invoke its authority under § 2254(b)(2) to review the merits of the instant claim rather than engage in an analysis under the procedural default doctrine. *See Hameen v. Delaware*, 212 F.3d 226, 251-52 (3d Cir. 2000)(stating that a federal court may "act consistently with [28 U.S.C. § 2254(b)(2)] when there is a possible procedural default."); *see also Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005)(rejecting a procedurally defaulted claim as meritless).

The Third Circuit has held that the appearance of bias on the part of a state court judge, without more, does not rise to the level of a constitutional violation cognizable on habeas review. *See Johnson v. Carroll*, 369 F.3d 253, 259 (3d Cir. 2004). Here, Riley does not allege, and the record does not reveal, any evidence that Justice Holland was actually biased against Riley, or

---

[14]The Delaware Supreme Court affirmed Riley's conviction and sentence rendered on re-trial on September 13, 2004. Riley filed a motion for rehearing *en banc*, which resulted in the formation of a new panel to re-consider Riley's appeal. That new panel, consisting of Justices Randy Holland, Caroline Berger, and Jack Jacobs, reconsidered Riley's appeal and issued a new superseding order dated October 20, 2004 affirming Riley's conviction and sentence. *See Riley v. State*, 2004 WL 2850093, at *1 nn.1-2 (Del. Oct. 20, 2004)(en banc)(citing Del. Supr. Ct. R. 4).

[15]Riley never presented his objection regarding Justice Holland to the Delaware state courts, and any attempt on Riley's part to obtain state court review of the instant claim at this point in time would be time-barred by Delaware Superior Court Criminal Rule 61(i)(1). Therefore, this claim is procedurally defaulted, precluding review on the merits absent a showing of cause and prejudice, or a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

that Justice Holland relied on any extrajudicial information in determining Riley's direct appeal.

Therefore, the court will deny Riley's claim regarding Justice Holland as meritless.[16]

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule

22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Riley's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Riley's petition for habeas relief pursuant to 28 U.S.C. § 2254 is

denied. An appropriate order shall issue.

---

[16]If, however, the court cannot properly deny a procedurally defaulted claim as meritless, the court alternatively denies Riley's claim about Justice Holland as procedurally barred. Riley has not alleged, and the court cannot discern, any cause for Riley's failure to raise this claim to the Delaware state courts prior to filing the instant petition. In the absence of cause, the court does not need to address the issue of prejudice. Moreover, Riley has not provided reliable evidence of his actual innocence to satisfy the miscarriage of justice exception to the procedural default doctrine.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JAMES W. RILEY,                    )
                                   )
            Petitioner,            )
                                   )
        v.                         )      Civ. A. No. 04-1435-GMS
                                   )
THOMAS CARROLL, Warden, et. al.,   )
                                   )
            Respondents.           )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner James W. Riley's petition for the writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.  (D.I. 2.)

2.  The court declines to issue a certificate of appealability.  *See*  28 U.S.C. § 2253(c)(2).


Dated: _June 19_ , 2007

_____
UNITED STATES DISTRICT JUDGE



FILED

JUN 1 9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE