UNITED STATES COURT OF APPEALS
FOR THE **THIRD** CIRCUIT

James W. Riley,
    Petitioner - Appellant,

Case No. 07-3012

04-1435

v.

Warden Thomas Carroll and
Attorney General OF State OF Delaware
    Respondents - Appellees.

Application for Certificate of
Appealability



**NOTICE AND INSTRUCTIONS**

Your application for a certificate of appealability will be evaluated by the court using
these standards:

**Certificate of Appealability.** There must be a substantial showing of the denial of a
constitutional right by demonstrating that the issues raised are debatable among jurists,
that a court could resolve the issues differently, or that the questions deserve further
proceedings. 28 U.S.C. § 2253(c); _Lennox v. Evans_, 87 F.3d 431 (10th Cir. 1996).

**FAILURE TO SET FORTH FACTS AND ARGUMENTS SHOWING THAT
YOU MEET THE APPROPRIATE STANDARD WILL SUBJECT YOUR
APPEAL TO DISMISSAL WITHOUT FURTHER NOTICE.**

You may use this form to furnish a statement of the case, the issues you intend to raise on appeal, and the reasons your appeal meets the applicable standards. The form is intended to guide you in meeting the above standards. If you need more space to answer, additional pages may be attached. The information you furnish, together with the full record of the proceedings in the district court, will be the basis for this court's decision. You should bear in mind that an appeal is not a retrial, but rather a **review** of the district court's judgment and record of proceedings.

## APPLICATION

1. **Statement of the Case.** (This should be a brief summary of the proceedings in the district court.) On March 31, 2003, the appellant James W. Riley was re-tried by a jury on two counts of Murder in the First Degree, One count of Conspiracy in the Second Degree, Possession of A Deadly Weapon During the Commission of A Felony and One count of Robbery in the First Degree in the Kent County Superior Court.

(Continued on reverse side)

2. **Issues to be Raised on Appeal.** (New issues raised for the first time on appeal generally will not be considered.) Appellant James Riley was Deprived of His 6th Amendment Right To Be Represented By Competent Counsel At Every Stage Of The Trial Proceedings Due To Trial Court's Failure To Conduct The Requested Ex Parte Inquiry Into The Conflict Of Interest Between Riley and Counsel. The actual conflict resulted in Riley involuntary waiver of several of his fundamental Constitutional rights in order to protect other important Constitutional rights where the death penalty was a potential sentence option.

3. **Summary of Your Argument Showing that Your Appeal Meets the Standards Stated on Page 1.** The Delaware Supreme Court and District Court decisions are totally contrary to all STATE and Federal Courts prevailing norms of practice governing the 6th Amendment inquiry that must be made whenever an attorney accuse his or her client of perjury. The District Court's decision seem to suggest that Delaware Courts owe no constitutional duty to conduct any specific inquiry whenever an attorney accuse his client of perjury which is contrary to its ruling in Shockley v. Kearney, 1996 WL 431093 and United State ex rel Wilcox v. Johnson, 555 F.2d 115 (3d Cir. 1986). Also, the district court erroneously held at Footnote 6 on page 13-14 of its decision ✱

COA-1 Application for Certificate of Appealability 1/99                    Page 2

✱ that the <u>Wilcox</u> court did not require STATE Courts to conduct an evidentiary hearing into an attorney's belief of client perjury when in fact this Court in <u>Wilcox</u> affirmed the district court's granting habeas relief for STATE Courts' failure to establish a record of adequate inquiry for counsel's belief of client perjury. (See District Court's Decision exhibit F-21 to 22).

The trial date was approaching. Appellant had not heard from trial counsel regarding the preparation for trial. The fingerprint evidence needed to be re-tested and the defense witnesses needed to be interviewed. In Febrary 2003, Appellant Riley filed a motion in the trial court invoking his 6th Amendment right to self-representation in order to get the case ready for trial. However, Riley's trial counsels wanted him to accept the STATE's guilty plea offer to natural life imprisonment for one count of murder in first degree to avoid a possible death sentence. Riley rejected the plea offer and insisted on going in trial as scheduled. In response to Appellant Riley rejecting the plea offer, prior to trial on March 14, 2003 Appellant received a letter from his trial counsel, Mr. Joseph A. Gabay, stating that:

> I see items within your mitigation file
> that would not support ethically putting
> on alibi defense. These relate to an
> interview you had with (Dr.) Blumberg
> back in September 1987.

(see. Mr. Gabay's Letter exhibit "A" attached hereto)

A couple days later Appellant met with counsel at the Kent County Courthouse holding cell to discuss why counsel stated he could not represent Appellant's alibi defense. At that time counsel stated that Appellant had previously confessed to committing these crimes during a taped interview with psychiatrist Neil Blumberg in 1987; and because of this allege confession counsel vowed that if Appellant pursue an alibi defense or testify that he was not present at the scene of the crime then counsel would reveal to the court and prosecution (in open court) that Appellant's testimony is perjury. Thus, counsel further stated that because of these incriminating interviews and confessions he will not represent

(continued on back of page 3 )...

4.  **Do you think the district court applied the wrong law? If so, what law do you want applied?** The district court and the Delaware Supreme Court failed to apply the 6th Amendment inquiry they approved for deciding conflict of interest claims based upon an attorney's allegations of client perjury. See Shockley v. State, supra, aff'd Shockley v. Kearney, supra. Delaware adopted the ABA prevailing norms of practice that an attorney must possess knowledge beyond a reasonable doubt before accusing a client of perjury. The Delaware Lawyer's Rules of Professional Conduct (Adopted from ABA Model Rules) Rule 3.3.(d) provide for an ex parte hearing to enable the Judge to make an informed decision on an attorney's charge of perjury.

5.  **Did the district court incorrectly decide the facts? If so, what facts?** When adopting ABA's prevailing norms of practice and Rule 3.3 (d) ex parte inquiries Shockley v. State cited United States ex rel Wilcox v. Johnson, 555 F.2d 115 (3d Cir. 1986), A case factually similar to the Appellant herein. However the district court incorrectly held that the facts of this case doesn't raise to a level of an actual conflict of interest. (See Appellant's Motion To Alter The Judgement Filed in the District Court exhibit F-38 to F-43).

6.  **Did the district court fail to consider important grounds for relief? If so, what grounds?** No Delaware State or Federal ever examined the evidence supporting trial counsel's perjury allegations against appellant which consist of claims that appellant made several incriminating confessions to committing these crimes during interviews with three of his postconviction counsels in 1991 & 1992 and during interviews with psychiatrist in 1989. No confessions were ever made part of the State Court records which district court deferred to.

7.  **Do you feel that there are any other reasons why the district court's judgment was wrong? If so, what?** Since appellant trial counsel was making perjury accusations against him then it was counsel's duty under Rule 3.3 (d) to inform the trial court in exparte of the factual circumstances supporting counsel's belief that appellant planned to testify falsely. However, when appellant requested such an ex parte hearing be conducted by the trial court his trial counsel argued against it. Based upon trial counsel's improper arguments which were accepted by the trial court, no ex parte hearing was held to review the evidence supporting trial counsel erroneous belief that appellant intended to commit perjury. Thus, if trial counsel's perjury allegations are inaccurate then appellant would prevail on his actual conflict of interest claims.

Appellant contend that he never confessed to committing these crimes and there has been no Rule 3.3 (d) review of the evidence of any alleged incriminating confessions made by appellant in 1991, 1992 or 1989. The district court was wrong for not conducting its own ex parte evidentiary hearing as was done and affirmed by this Court in Wilcox.

Appellant at all critical stages of the trial proceedings.

On March 20, 2003, counsel sent a letter to Adam Singer, Co-Chairperson of the Professional Ethics Committee, detailing facts that he had actual tape recorded interviews with psychiatrist and other interviews with postconviction counsels Lawrence J. Connell, Mary M. Maloney Huss and Thomas J. Allingham, during which time Appellant made incriminating statements about his participation in these crimes. (See Counsel's Letter To Ethics Committee, exhibit B-1).

Also, see, Counsel's personal notes listing the issues for beliefs that there will be an ethical problem preventing him from representing Appellant at trial; and in support of those beliefs counsel listed five interviews appellant supposedly had with postconviction counsels Lawrence J. Connell (LC or LJ), Mary M. Maloney Huss (MMH) and Thomas Allingham (TA). (Counsel's Notes, exhibit B-4 & B-5 ).

Trial Counsel went as far as to manufacture a false transcript of the taped interview Appellant had with psychiatrist Neil Blumberg in 1989, which contains deliberate false incriminating statements attributed to Dr. Blumberg against the appellant. (Appellant has this manufactured document in his possession and will allow the Court to review it at an ex parte request from this Court). This same offer to review the evidence was made to the Delaware Supreme Court. (See page 3 to 4 of Appellant's Opening Brief to Supreme Court, exhibit D-1 thru D-32).

On March 24, 2003, trial counsel sent the Honorable Henry DuPont Ridgely a letter regarding the false allegations of ethical conflicts about alleged confessions or incriminating statements Appellant deny ever making. (See Counsel's letter to Judge Ridgely, exhibit C ).

On March 28, 2003, trial counsel received a response from the Professional Ethics Committee advising counsel that whenever a client is suspected of perjury the accusing attorney must have knowledge beyond a reasonable doubt before he can determine under Rule 3.3 that his client has committed or is going to commit perjury, citing Shockley v. State, 565 Ad. 1373 (Del. Supr. 1989). (See Ethics Committee's Opinion, exhibit B-6 to B-8). The Shockley 6th Amendment inquiry was Affirmed by the Delaware District Court in Shockley v. Keavey, 1996 WL 431093 page 9 (D. Del.).

(continued on back of page 4 ) ...

8. **What action do you want this court to take in your case?** First, read all the Briefs and motions that appellant filed in the Supreme and District Courts contained in Exhibits A thru E attached hereto. Second, apply the Law cited in those Briefs and motions. Third, since appellant raised his actual conflict of interest claims _ prior to trial and made a timely appeal to the Supreme and District Courts whom failed to apply the governing standard of Law then this Court shall reverse appellant's convictions and sentences. And Fourth, Court shall reverse based upon its decision in Wilcox.

9. **Were you required to seek and exhaust administrative remedies prior to filing your claim in district court? If yes, what steps did you take to exhaust those remedies?** Appellant Riley was permitted to raise on direct appeal to the Delaware Supreme Court that he was constructively denied his right to counsel at trial and on appeal due to counsel's alleged conflict of interest. (See Supreme Court's December 9, 2003 Order exhibit D-69 to D-78.)

However, the Supreme Court denied appellant's requests to gain access to documents in his case files that trial counsel altered and to obtain Affidavits from postconviction counsel Lawrence J. Connell and psychiatrist Neil Blemberg to show that trial counsel's perjury allegations themself are false and are premised upon manufactured transcripts taken from a 1989 tape recorded interview appellant had with psychiatrist Blemberg. (See Appellant's Motion To Stay All Proceedings filed in Supreme Court exhibit D-58 to D-62 and D-63 to D-68).

Therefore the District Court's ruling that the Supreme Court was not required to inspect the evidence supporting trial counsel's perjury accusations against appellant was a clear error of law. If its proven that counsel manufactured and altered documents to incriminate appellant then that violates the Model Rules Of Professional Conduct and the Model Code Of Professional Responsibility adopted by Delaware's Lawyer Rules Of Professional Conduct. *

_July 20, 2009_
Date

_James W. Riley_
Signature    Appellant

* An attorney's violation of the Rules of Conduct establishs an actual conflict of interest. See, United States v. Greig, 967 F. 2d 1018 (5th Cir. 1992) citing Government of Virgin Islands v. Zepp, 748 F. 2d 125 (3d Cir. 1984), at 1023. Trial Counsel's False incriminating Accusations could have resulted in Appellant being Sentenced to death.

Obviously trial counsel's false accusations that appellant made incriminating taped statements to psychiatrist Neil Blumberg caused a serious conflict of interest between trial counsel and appellant which prompted Appellant to invoke his 6th Amendment right to self-representation in order to protect his 5th Amendment right against self-incrimination.

On March 19, 2003, the trial court held a hearing to determine representation which appellant specifically requested an ex parte in camera hearing so he could reveal the existing conflict of interest and supporting evidence to the court. (These facts are conceded in the District Court's Decision).

The reason why appellant did not want to reveal the facts of the conflict of interest in open court is because the information was overwhelmingly incriminating and involved accusations that appellant intended to offer false testimony during trial. These accusations by trial counsel was false and to permit such information to leak out to the news media prior to jury selection would have certainly prejudiced the whole jury venire against him. Over 90 per cent of all Delawareans either read the newspapers or witch the local news on television.

Thus, both, trial counsel and appellant alerted the trial judge prior to trial that there were serious ethical concerns involving the conflict of interest in counsel's representation of appellant. (This fact is conceded in the District Court's Decision).

However, over the objections of appellant, the trial court accepted Stand-By counsel's request not to conduct an ex parte in carmera hearing to make a full and adequate inquiry into the conflict of interest. Also, appellant advised the trial court if he had to chose between poor representation and self-representation then he had no choice but to go pro se. (again these facts are conceded throughout the District Court's Decision). Furthermore, the action appellant took in invoking his 6th Amendment right to self-representation was justified to protect his 6th Amendment right to impartial jury selection and 8th Amendment right to adequate sentencing where the death penalty was a possible sentence

( continued on back of page 5 ) ...

## CERTIFICATE OF SERVICE

I hereby certify that on ___July 26, 2009___ I mailed a copy of
(date)

the Certificate of Appealability:

to _Thomas E. Brown (DAG)_, at _Department of Justice_

_820 N. French St., Wilm., Dela. 19801,_ the last known address,
by way of United States mail or courier.

___July 26, 2009___        ___James W. Riley___
Date                         Signature
                             Appellant

I further certify that I gave this Certificate
of Appealability and supporting Exhibit A to F to
prison officials on the above date for mailing to
the Clerk's Office of The Third Circuit Court Of
Appeals. 28 U.S.C § 1746.

                    J.R        9/26/09

that could have been recommended by the jury. In taking this course of action Appellant Riley was forced to give up his other 6th Amendment rights to put on an alibi defense and to testify in his own defense. Appellant represented himself throughout the guilt/innocent phase of the trial.

The jury acquitted Appellant of First degree intentional murder and Second degree conspiracy. But convicted Appellant of Felony murder, First degree Robbery and the weapon possession.

Due to personal reasons involving very emotional mitigating testimony from Appellant's family relatives, Appellant permitted stand-by counsel to conduct the penalty phase in which the jury voted 12 to 0 against imposing the death penalty. The trial judge sentenced Appellant to life imprisonment without parole plus 25 years.

Appellant filed a direct appeal to the Delaware Supreme Court alleging that he was deprived of his 6th Amendment right to be represented by competent counsel at every stage of the trial proceedings due to the trial court's failure to conduct an inquiry into the conflict of interest. This argument was based upon the same facts set forth herein. (See Appellant's Opening Brief exhibit D-1 thru 32; Reply Brief exhibit D-33 thru D-46 and Motion For Reargument exhibit D47 thru D-57).

These same arguments were presented to the district court in Appellant's Petition For Writ of Habeas Corpus. (See Habeas Petition exhibit E-1 to E-6). Also, Appellant made requests to both the Supreme Court and District Court to conduct the approach inquiries and to permit him to gain access to specific evidence that will support his contention that counsel's perjury allegations were not accurate. (See Appellant's Motion To Stay All The Proceedings Filed in the Supreme Court exhibit D-58 to D-62 and D-63 to D-68; Also See Motion For Evidentiary Hearing Filed in the District Court exhibit E-9 to E-13 and E-14 to E-18).

Both the Supreme Court and district court ruled upon the conflict of interest issue without reviewing the evidence supporting trial counsel's accusations of client perjury and to determine that counsel possessed knowledge Beyond A Reasonable Doubt that Appellant intended to commit perjury or had made any incriminating statements. (See Supreme Court's Decision exhibit F-1 thru F-11 And District Court's Decision exhibit F-12 thru F-39).

# *Swartz* | *Campbell* | *Detweiler*

**Joseph A. Gabay**
*Attorney at Law*

Swartz, Campbell & Detweiler
Mellon Bank Center
919 Market Street
P.O. Box 330
Wilmington, DE 19899

phone (302) 656-5935
fax     (302) 656-1434
e-mail jgabay@scdlaw.com
web    www.scdlaw.com

March 14, 2003

James Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Riley:

I apologize for not being able to make the trip today with Mr. Allingham, but look forward to seeing you on Friday at the Kent County Courthouse. I wanted to forward this so that you have an opportunity to consider my thoughts in connection with the State's plea offer in return for a plea to the murder charge that they would drop seeking the death penalty.

I have looked numerous times through the file and the transcript and come away with several impressions. It seems obvious to me that while there are some distinctions between what people are alleged to have said or seen, the evidence which circumstantially implicates you in Mr. Feeley's murder is quite strong.

Among these factors are

1) The fingerprint evidence;

2) Your testimony that you went from Philadelphia to Baltimore which coincidentally matches Brookins' statement that you were in Baltimore. While it may be true that Brookins in fact did the shooting the issue of foreseeability seems sealed in a felony murder case where individuals enter a store to commit a robbery knowing that at least one of them possesses a fire arm.

What follows is premised upon the notion that the fingerprint evidence will be admissible and certainly damning against you. That is enough to place you inside the store at the time of the robbery. Additionally, I am including a copy of Special Agent Sparks' testimony from your first trial. He will testify live at this trial.

In sum, the testimony and circumstantial evidence the State is likely to produce at trial will be overwhelmingly against you. This does not mean that I or any other attorney will try less hard to defend you. But I have enough experience in these matter to be able to professionally and accurately foresee the outcome.

Ex. A-1

Therefore, I would urge you to <u>strongly</u> and <u>objectively</u> evaluate your options. As your lawyer, it is my professional opinion that you will be convicted and most likely receive the death penalty. By accepting the State's plea offer you will avoid capital punishment. I strongly recommend you accept that offer.

As it pertains to the issue of mitigation, should we reach a death penalty phase, I note that there are several indications within the file that you would prefer to have the death penalty versus life imprisonment. Let me begin by saying that I find that to be a position that you should immediately reevaluate. You are still reasonably young and have an opportunity to live what could be as best as possible within the prison system a fruitful life. That being said, I need to know your position as to whether or not to present a mitigation case.

I see items within your mitigation file that would not support ethically putting on an alibi defense. These relate to an interview you had with Blumberg back in September 1987.

In the event you would elect not to present mitigation evidence to the Court, there would need to be a hearing with the Court on that issue.

I have had great success in presenting mitigation cases to a jury. There are several factors you could present as significant mitigators. However, your prison record is not very good, your prior criminal record is not very good, and I am not confident Judge Vaughn will extend mercy at the sentencing phase.

Therefore, I again state that it is my professional opinion and judgment that you should accept the plea offer whereby you are assured a life sentence.

Thank you for your ongoing courtesy and cooperation.

Very truly yours,

Joseph A. Gabay

JAG/td
cc:   Thomas J. Allingham, II, Esquire
       Christopher Tease, Esquire

Ex. A-2

## *Swartz | Campbell | Detweiler*

**Joseph A. Gabay**
*Attorney at Law*

Swartz, Campbell & Detweiler
Mellon Bank Center
919 Market Street
P.O. Box 330
Wilmington, DE 19899

phone  (302) 656-5935
fax      (302) 656-1434
e-mail  jgabay@scdlaw.com
web     www.scdlaw.com

March 20, 2003

Adam Singer, Esquire
Professional Ethics Committee Co-Chair
Cooch & Taylor
824 N. Market Street, #1000
P.O. Box 1680
Wilmington, DE 19899

Dear Mr. Singer:

Thank you for taking the time to read this request. This is a matter of some urgency which has arisen within the last twelve hours. This involves a capital murder case which is scheduled to commence jury selection on March 24, 2003 and trial on March 31, 2003.

The underlying facts of the case involve a defendant who was charged, tried, convicted and sentenced to death twenty years ago. For roughly eighteen years he fought through state and federal courts to have his death sentence overturned, citing a variety of issues. Following his denial for relief by the Third Circuit panel, he petitioned for rehearing en banc. Interestingly, the Court granted that application and in a stunning yet courageous decision, the Third Circuit reversed a ruling of the United States District Court and found that the Defendant's right to a fair trial was irreparably prejudiced by the State's systematic striking of black venirepersons.

The new trial he was afforded as a result of the Third Circuit's decision was delayed while the Delaware Supreme Court pondered the effect of Ring v. Arizona to Delaware's capital statutory scheme. Once the Delaware Supreme Court ruled that the Delaware system is constitutionally valid the way has been cleared for this retrial.

As a last-minute maneuver the Defendant sought to have chemical testing done on a piece of evidence on which his fingerprint was alleged to have been found at the crime scene. The purpose for this testing was that the Defendant alleged the print had been planted by the investigating police department so as to strengthen the case against him. With the assent of the State and the approval of funding by the trial court these tests were performed. This past weekend the conclusions of the chemist were returned to counsel and effectively blunted this possible defense. During this same time plea discussions were underway in which the



Philadelphia,        Mt. Laurel,      Media,         Wilmington,      Allentown        Harrisburg       Scranton        West Chester,    Fort Myers,      Bedminster     Cleveland.
Pennsylvania         New Jersey       Pennsylvania   Delaware         Pennsylvania     Pennsylvania     Pennsylvania    Pennsylvania     Florida          New Jersey     Ohio

Defendant in return for a plea of a life sentence would be spared exposure to the death penalty. I note as an aside based upon my experience of handling over thirty capital murder case that it is virtually a certainty that under the new capital punishment standard this Defendant will receive a sentence of death.

   Following several discussions concerning the overall nature of the case and specifics of the chemical testing, counsel recommended to him that he accept the State's plea offer. He requested to see rather than being read the conclusions referred to above. On Tuesday of this week one of his attorneys carried the printed email to the Delaware Correctional Center so the Defendant could read the conclusions verbatim for himself. During the course of that meeting the Defendant advised that attorney that it was his intention to seek to proceed *Pro Se.*

  • This raised the specter of why we come to your committee for guidance. The Defendant has asserted that the print was planted by the investigating police agency. At his first trial he put forth what can best be described as an alibi defense. That alibi defense was weakly presented due to the inability of witnesses to be available or made available to the Court. The Defendant testified and indicated that he was in Philadelphia at the time of the robbery and did not participate in the crime.

   The trial judge has now heard and granted the Defendant's application to proceed *Pro Se* following an inquiry under Feretta v. California. The trial judge has appointed current counsel to act as stand-by counsel in advising the Defendant as to whatever issues may arise during trial.

   Recently we received a box of file materials from post-conviction counsel. Counsel was particularly interested in searching for a tape with a psychiatrist in which the post-conviction counsel's memos noted that the Defendant may have made reference to his actual participation in this offense. Before counsel could locate that tape recording within the boxed materials a file was located entitled "Interviews." Counsel commenced to read these when it was observed that they involved multiple interviews with the Defendant by his post-conviction counsel. These were of particular note given a recent discussion with the Defendant in which he denied ever saying to the psychiatrist that he was present and/or participated in the robbery/murder. A review of that particular folder noted five separate interviews with post-conviction counsel and the Defendant in which he described in significant detail his own participation in the robbery and subsequent murder. Additionally, he detailed other actions which are consistent with events both prior to and subsequent to this crime.

   It is expected that at trial this Defendant will seek to assert either one or both of the following defenses:

   a) He will seek to maintain his alibi and produce witnesses to indicate that he was in Philadelphia at the time of the murder;

   b) He will continue to assert that the fingerprint was planted on the beer bottle located on the counter at the scene of the crime.

   Accordingly on behalf of all counsel representing this Defendant I ask for your prompt evaluation and response to the following questions:



Ex. B-2

1) Does stand-by counsel have an ethical obligation to advise the Court that the *Pro Se* Defendant intends to present false testimony to either the bench or jury?

2) If the answer to number one is yes, does the language of 11 <u>Del. C</u>. §4209 providing for the trial judge to pass on a verdict/sentence following a penalty phase of either death or life imprisonment without the possibility of parole require counsel to present question one to that Superior Court judge or proceed <u>in camera</u> before a separate member of the Superior Court?

3) If the answer to number two dictates that the <u>in camera</u> presentment be made to a separate judge of the Superior Court must/should such presentment be made in sealed papers without disclosure to the trial judge that such a representation is being made to one of his colleagues?

As indicated above, there is a pressing deadline for counsel to conceivably act in connection with this matter. I apologize for this short window of time, however this issue first arose March 18, 2003. I have tried to appropriately summarize and present to you as promptly as possible the necessary facts for your consideration of these questions.

Thank you for the effort that I know you will make in providing guidance to us. Please feel free to contact my office should you have any further questions or require additional details in connection with this matter.

Very truly yours,

Joseph A. Gabay

JAG/td

cc:    James Riley
       Christ Tease, Esq.
       Thomas J. Allingham, II, Esq.
       Mary MaloneyHuss, Esq.

$Ex. B-3$

## Issues

①     Does standby counsel have An ethical obligation to advise The Court That the <u>pro se</u> defendant intends to present false testimony to The Court?

②     If The Answer to #1 is "yes" does the language of 11 Del. C. 4209 providing for the trial judge to pass on A verdict/sentence following a penalty phase of either death or life imprisonment without The possibility of probation or parole require counsel to present question 1 to That Superior Court judge or proceed <u>in camera</u> before a separate member of The Superior Court?

③     If The Answer to #2 dictates That the <u>in camera</u> presentment be made to a separate Judge of the Superior Court, must/should such presentment be made in sealed paper without disclosure ~~that~~ to The trial judge That such a disclosure is being made?

Ex. B-4

Basis for These Issues

1.    11/13/91 interview of D by
         LC, MMH + LJ

2.    11/26/91 interview of D by
         LC + MMH

3.    12/6/91 interview of D by
         TA, LC + MMH

4.    12/17/91 interview of D by
         TA, LC + MMH

5.    1/6/92 interview of D by
         LC + MMH

Ex. B-5

**VICTOR F. BATTAGLIA**
**ROBERT D. GOLDBERG**
**ROBERT K. BESTE, JR.**
**PHILIP B. BARTOSHESKY**
**VICTOR F. BATTAGLIA, JR.**

# BIGGS AND BATTAGLIA
ATTORNEYS AT LAW
921 NORTH ORANGE STREET
P.O. BOX 1489
WILMINGTON, DELAWARE 19899
(302) 655-9677
TELECOPIER (302) 655-7924

OF COUNSEL
JOHN BIGGS III
GERARD P. KAVANAUGH, SR.
S. BERNARD ABLEMAN

Writer's Direct E-mail: Beste@batlaw.com

March 28, 2003

## CONFIDENTIAL

**BY FACSIMILE TO 656-1434**
Joseph A. Gabay, Esquire
Swartz, Campbell & Detweiler
919 Market Street, Suite 1700
Wilmington, DE 19801

> RE: **Professional Ethics Committee: Informal Inquiry, Informal Opinion Issued Pursuant to Section 4.05 of the By-Laws of the Committee of Professional Ethics**

Dear Mr. Gabay:

You have inquired as to appropriate professional conduct in the context of the facts stated below. Given the asserted time exigency of your situation, there is insufficient time for the Committee on Professional Ethics to issue a formal or expedited opinion, and the discussion herein reflects my views only. Moreover, as with all opinions of the Committee, this opinion is merely advisory, and is not binding on you, the Courts or any other tribunal.

## FACTS

The facts, as you have stated them, are as follows:

You have been appointed as standby counsel for a defendant in a capital murder case. Based upon your direct knowledge of facts, and those facts relayed to prior post-conviction counsel for the defendant, defendant will provide false or perjured testimony on the stand. I am informed by your office that, at this time, no request has been made of you, as standby counsel, to specifically assist with such perjured testimony, and you have no specific reason to anticipate that the defendant may change his mind at the last moment and ask you to participate in presenting his testimony. The questions that you have presented are:

1) Does standby counsel have an ethical obligation to advise the Court that the *Pro Se* Defendant intends to present false testimony to either the bench or jury?

Ex. B-6

Joseph A. Gabay, Esquire
March 28, 2003
Page Two

2) If the answer to the previous question is yes, does the language of 11 Del. C. Section 4209, providing for the trial judge to pass on a verdict/sentence following a penalty phase of either death or life imprisonment without the possibility of parole, require counsel to present the problem to that Superior Court judge or proceed in camera before a separate member of the Superior Court?

3) If the answer to question number two dictates that the in camera presentment be made to a separate judge of the Superior Court must/should such presentment be made in sealed papers without disclosure to the trial judge that such a representation is being made to one of his colleagues?

## DISCUSSION

The Delaware Rules of Professional Conduct (the "Rules") implicated in this issue are: 1.2(d), 1.6(a), 1.16(a)-(b), and 3.3(a)-(c). These pertinent rules provide, in relevant part, as follows:

**Rule 1.2. Scope of representation.**

(d)     A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

**Rule 1.6. Confidentiality of information.**

(a)     A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...

**Rule 1.16. Declining or terminating representation.**

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the rules of professional conduct or other law;...
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or of...

Ex. B-7

Joseph A. Gabay, Esquire
March 28, 2003
Page Three

**Rule 3.3. Candor toward the tribunal.**

(a)    A lawyer shall not knowingly:

(1)    make a false statement of material fact or law to a tribunal;

(2)    fail to disclose a material fact to the tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3)    fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4)    offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b)    The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c)    A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

Regrettably, in the short time period presented, but still after fairly thorough research, I am unable to find any case, opinion or article that touches directly upon the specific questions presented. Additionally, research assistance from the ABA Center for Professional Ethics was unable to locate any authority or writings on this issue.

Shockley v. State, Del.Supr., 565 A.2d 1373 (1989), does review the situation in which an attorney is faced with the dilemma of knowing that his client is going to commit perjury. That Court found that constitutional and ethical requirements were satisfied when an attorney notified the Court of his client's intent to commit perjury and, after consultation with the Court, counsel permitted the defendant to testify in narrative form. The Court found that, if a lawyer knows unequivocally that his client intends to commit perjury, the ethical issue is governed by State law, specifically, 3.3 and 1.16(b). The lawyer's obligation, when he learns his client is going to commit perjury, is to seek to persuade the client not to do so. If the client insists on giving false testimony, a lawyer may ask leave to withdraw. This Court found that, ordinarily, after such a warning, an attorney should not need to withdraw, because his client will not usually commit perjury. If, however, the client persists and the Court, when asked if counsel may withdraw and does not permit counsel to withdraw, then a lawyer may proceed to permit the client to testify in a narrative fashion. There is nothing in the Opinion, however, that compels the attorney to advise the Court of a client's potential perjury or compels the use of a narrative. The Court does state that before taking these steps, an attorney should have knowledge "beyond a reasonable doubt" before he can determine under Rule 3.3 that his client has committed or is going to commit perjury.



Ex. B-8

# *Swartz | Campbell | Detweiler*

**Joseph A. Gabay**
*Attorney at Law*

Swartz, Campbell & Detweiler
Mellon Bank Center
919 Market Street
P.O. Box 330
Wilmington, DE 19899

phone   (302) 656-5935
fax        (302) 656-1434
e-mail  jgabay@scdlaw.com
web     www.scdlaw.com

March 24, 2003

## *Personal & Confidential*

The Honorable Henry duPont Ridgely
President Judge
Superior Court
38 The Green
Dover, DE 19901

> **Re:    State v. James Riley**
> **ID No. IK85-05-0058**

Dear Judge Ridgely:

I am writing on an extremely confidential matter in connection with the above-captioned case. As you know, Judge Vaughn is assigned to handle the trial in this matter. However, it has come to our attention that there are ethical issues which because of Judge Vaughn's position as a possible fact finder cannot be directly brought to His chambers.

I am awaiting a decision from the Ethics Committee from the Delaware Bar Association. However, in the event that they do not respond to my request before the end of this week it will most likely be necessary to meet and discuss with Your Honor *ex parte* a rather significant issue in connection with the trial.

Accordingly, at this time I am writing merely to give you advance notice of this potential issue. Further, it is my request that this item be sealed pending further resolution of the case.

Thank you for your attention to this matter.

Respectfully submitted,

Joseph A. Gabay

JAG/td
cc:    James Riley
        Christopher Tease, Esquire
        Thomas J. Allingham, II, Esquire

Philadelphia,    Mt. Laurel,    Media,    Wilmington,    Allentown,    Harrisburg,    Scranton,    West Chester,    Fort Myers,    Bedminster,    Cleveland,
Pennsylvania    New Jersey    Pennsylvania    Delaware    Pennsylvania    Pennsylvania    Pennsylvania    Pennsylvania    Florida    New Jersey    Ohio

In The Supreme Court Of The State Of Delaware

James W. Riley,
        Appellant,

    v.

State of Delaware,            No. 259, 2003
        Appellee.


Appellant's Opening Brief
_____


By: James W. Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977


Date: April 7, 2004



Ex. D-1

# Table of Contents

Table of Citations                                    I

Nature & Stage Of Proceedings                      II, III

Statement of Facts                                    1

Argument:

Appellant James Riley Was
Deprived Of His 6th Amendment
Right To Be Represented By
competent counsel At Every
Stage Of The Trial Proceedings
Due To Trial court's Failure
To conduct Inquiry Into The
conflict Of Interest Between
Riley and counsel.                                   16

conclusion                                           27

Ex. D-2

# Table of Citations

Cases                                                                    Page

Atley v. Ault, 191 F.3d 865 (8th Cir. 1999)                27

Brady v. United States, 397 U.S. 742
         90 S.CT. 1463, 25 L.Ed.2d 747 (1970)        22

Crandell v. Bunnell, 144 F.3d 1213 (9th. Cir. 1998)        25

Government of Virgin Islands v. Zepp,
         748 F.2d 125 (3d Cir. 1984)                      23

Holloway v. Arkansas, 435 U.S. 484,
         98 S.CT. 1178 (1978                               27

Hudson v. Rushen, 461 U.S. 916, 103, S.CT.
         1896, 77 L.Ed.2d 285 (1983                       20

Schell v. Witek, 218 F.3d 1017 (9th.Cir. 2000)        16, 26

Shockley v. State, 565 A.2d 1373 (Del. Supr. 1989)    23, 24, 25

Smith v. Lockhart, 923 F.2d 1314 (8th.Cir. 1991)      17, 18, 19

Strickland v. Washington, 466 U.S. 668,
         104 S.CT. 2052, 80 L.Ed.2d 674 (1984)        18, 26

United States v. Gallegos, 108 F.3d 1272 (10th.Cir. 1997)    17, 21, 22, 27

Wood v. Georgia, 450 U.S. 261, 101 S.CT. 1097, 67
         L.Ed.2d 220 (1981)                               19

United States v. Greig, 965 F.2d 1018 (5th.Cir. 1992)    21, 23, 24

Ex. D-3

## Nature And Stage Of Proceedings

Riley was indicted originally in 1982 on charges of Murder First degree, Felony Murder, Conspiracy second degree and Robbery First degree. Following a jury trial, Riley was convicted of all charges and sentenced to death. The Delaware Supreme Court affirmed Riley's convictions and death sentence on direct appeal. Riley v. State, 496 A.2d 997 (Del. 1985). Riley unsuccessfully filed for State postconviction and federal habeas corpus relief. In 2001, the Third Circuit Court of Appeals reversed Riley's conviction and sentence and remanded the matter for a new trial. Riley v. Taylor, 277 F.3d 261 (3d. Cir. 2001).

On March 31, 2003, Riley was retried on the originally charges by a jury in the Kent County Superior Court who convicted him on the Felony Murder, Robbery and weapon counts. The jury acquitted Riley of Murder First degree and conspiracy charges.

Ex. D-4

# Statement of Facts

On March 31, 2003 the appellant James W. Riley was re-tried by a jury on two counts of Murder in the First Degree (11 Del. C. § 636), Conspiracy in the Second Degree (11 Del. C. § 512(1)), Possession of a deadly weapon during the Commission of a Felony (11 Del. C. § 1447 (a)), and Robbery in the First Degree (11 Del. C. § 832 (a) (2), in the Kent County Superior Court.

Prior to trial on March 14, 2003, appellant received a letter from his trial counsel, Mr. Joseph A. Gabay stating that:

> I see items within your mitigation File that would not support ethically putting on alibi defense. These relate to an interview you had with Blumberg back in September 1987.

( See, Mr. Gabay's letter, A-11-12).

A couple days later appellant met with counsel at the Kent County Court House holding cell to discuss why counsel

1    Ex. D-6

stated he could not represent appellant's alibi defense. At that time counsel stated that appellant had previously confessed to committing these crimes during a taped interview with psychiatrist Neil Blumberg in 1987; and because of this alleg confession counsel vowed that if appellant pursue an alibi defense or testify that he was not present at the scene of the crime then counsel would reveal to the court and prosecution that appellant's testimony is perjury. Thus, counsel further stated that because of these incriminating interviews and confessions he will not represent appellant at all critical stages of the trial proceedings.

On March 20, 2003, counsel sent a letter to Adam Singer Co-chair person of the Professional Ethics Committee detailing facts that he had actual tape recorded interviews with psychiatrist and other interviews with postconviction

2    Ex. D-7

counsels Lawrence J. Connell, Mary M.
Maloney Huss and Thomas J. Allingham during
which appellant made incriminating statements
about his participation in these crimes.
( See Counsel Letter To Ethics Committee, A 13
to A 15 ). Also, see, Counsel's personal notes
listing the issues for his beliefs that there
will be an ethical problem preventing him
from representing appellant at trial; and in
support of those beliefs counsel listed five
interviews appellant supposedly had with
postconviction counsels Lawrence J. Connell
( LC or LJ ), Mary M. Maloney Huss ( M M H )
and Thomas Allingham ( TA ). ( See Counsel's
notes A16-17 ).

Trial Counsel went as far as to
manufacture a false transcript of the
taped interview appellant had with
psychiatrist Neil Blumberg in 1987 which
contain deliberate false incriminating
statements attributed to Dr. Blumberg
against the appellant. ( Appellant has
this manufactured document in his

3   Ex. D-8

possession and will allow the court to review it at an ex parte request from the court).

On March 24, 2003, trial counsel sent the Honorable Henry duPont Ridgely a letter regarding the false allegations of ethical conflicts about alleged confessions or incriminating statements appellant deny ever making. (See Counsel's letter to Judge Ridgely, A-18).

On March 28, 2003, trial counsel received a response from the Professional Ethics Committee advising counsel that whenever a client is suspected of perjury the accusing attorney must have knowledge beyond a reasonable doubt before he can determine under Rule 3.3 that his client has committed or is going to commit perjury, citing Shockley v. State, Del. Supr., 565 A.2d 1373 (1989). (See Ethics Committee's Opinion A-19 to A-21 ).

Obviously trial counsel's false accusations that appellant made incriminating taped statements to psychiatrist

4    Ex. D-9

Neil Blumberg caused a serious conflict of interest between trial counsel and appellant which prompted appellant to invoke his 6th Amendment right to self-representation in order to protect his 5th amendment right against self-incrimination.

On March 19, 2003, the trial court held a hearing to determine representation which appellant specifically requested an ex parte in camera hearing so he could reveal the existing conflict of interest and supporting evidence to the court. (See relevant transcripts A-22 to A-49).

The reason why appellant did not want to reveal the facts of the conflict of interest in open court is because the information was overwhelmingly incriminating and involved accusations that appellant intended to offer false testimony during trial. These accusations by trial counsel was false and to permit such information

to leak out to the media prior to jury selection would have certainly prejudiced the whole Jury Venire against him. Over 90 per cent of all Delawareans either read the newspapers or witch the local news on television. And if this court read the transcripts to Determine Representation carefully (A 22 to A 49) it is apparent that the entire colloquy by the trial Judge, the State and appellant's counsel was directed at forcing (or tricking) appellant into revealing the perjury accusations against him in open court in hope that the negative publicity would be read in the newspapers by all potential jurors.

Both trial counsel and appellant alerted the trial Judge that there were serious ethical concerns involving the conflict of interest in counsel's representation of appellant. ( See A 32 to A 38 ).

However, over the objections of appellant, trial court accepted stand-by counsel's request not to conduct an ex parte

6   Ex. D-11

in camera hearing to make a full and adequate inquiry into the conflict of interest. (A43, A48).

Appellant advised the trial court if he had to chose between poor representation and self-representation then he had no other choice but to go pro se. (A29-30i). Thus, appellant represented himself throughout the guilt/innocent phase of the trial.

At trial, alleged codefendants Tyrone Baxter and Michael Williams testified for the State as follows: On February 8, 1982, Baxter and Riley traveled from Philadelphia to Dover and decided to rob Mr. James E. Feeley's liquor store. (A55-56). Williams drove Riley and Baxter to the store, waited in the automobile, and after the robbery, drove them to a bus station. (A57 to A63)

Inside the liquor store, Riley placed a quart bottle of beer on the counter and paid for it. (A59). When Mr. Feeley opened the cash register, Riley drew a pistol and Baxter removed approximately

7    Ex. D-12

a $150 from the register. Riley attempted to take Mr. Teeley's wallet but Teeley resisted. (A·60   ). At Baxter's urging, Riley shot Mr. Teeley in the leg. (A·60   ). As Baxter and Riley were leaving the store Mr. Teeley threw a wine bottle at Riley. (A·61). Baxter ducked behind a cigarette machine. Riley then shot Mr. Teeley in the chest at close range. (A·61, 62). Baxter and Riley fled, leaving the victim mortally wounded.

Williams then drove Baxter and Riley to the bus station where the two fled to Baltimore Maryland, and where they were apprehended several months later. (A·63, A-74).

Tyrone Baxter's mother, Joyce Baxter, testified that appellant Riley had spent the night before the robbery at her house in Dover. (A-82).

The State present testimony from four (4) police officers, Herman Lee Ford, Boyce Failing, Russell McNatt and Claude A. Sparks who testified that appellant Riley's fingerprints were on the beer

bottle found on the Store counter. ( Ford A-90, Failing A-89, Sparks A-97 to A991 and McNatt A 100 ).

However, appellant Riley pleaded not guilty to each of the five charges against him and deny all the accusations by the state's witnesses.

On cross-examination appellant pointed out the inconsistencies in all the testimony of the state's witnesses as following: In return for his guilty plea and testimony against appellant Riley, Baxter received a life sentence. (A-67). The murder charges against Williams were dropped in exchange for his testimony. (A-75). Ms. Baxter recanted her prior statements to police that she observed the appellant Riley and her son Tyrone Baxter drive away in Williams' car on the morning of the robbery; however Ms. Baxter testified now that she were asleep on the morning the three left her house. (A84 to A87)

Tyrone Baxter recanted his testimony from 1982 that it was appellant Riley who placed the bottle of beer on the store counter; however Baxter now testify that it was he who in fact placed the bottle on the

counter. ( A 68  to  A 73)

Mr. Richard S. Haines who worked at Teeley's liquor store in 1982 testified that the cash register's receipt shows two (2) sells - one for $60 and the other was for a $105 the price of the bottle of beer. ( A 53-54 ). However, on cross examination Mr. Haines admitted that the previous $60 sell is consistent with the price of one can of beer in which Michael Williams admitted in his first recanted statement to police that he had a " can" of beer from Mr. Teeley's store. ( Haines A54, A54A and Williams A-76 ).   The cash register receipt and can of beer place Williams inside the store with Baxter coupled with the fact that an eye - witness, Steve Beebe testified on cross examin- ation that the second guy he observed going to and running away from the store was 6 feet tell. ( A50-51 ). Williams is a little over 6 feet in height. ( A-80     ).

Mr. Beebe admitted that because he and appellant is the same height, 5'6 or 5'7, the men he observed running away from the store most likely was not appellant Riley. ( A 50 to A 52)

10   Ex. D-15

Appellant also pointed out the inconsistencies in the fingerprint evidence. For instance, appellant pointed out that Detective Herman Ford identified the fingerprints taken from the beer bottle as being appellant's at the preliminary hearing prior to any affirmation from any qualified analyst which indicated that Detective Ford knew that prints were appellant's before lifting them, a material fact he couldn't have known when he allegedly took the prints at the crime scene on February 8, 1982. Realizing this mistake in falsifying the fingerprints evidence, Officer Boyce Tailing testified 21 years after the fact that he identified the prints as being appellant's prior to Detective Ford testifying to that fact at the May 13, 1982 preliminary hearing. (A 88 - 89). When appellant asked Mr. Tailing on cross examination which print he identified as appellant's, Tailing replied - I don't know. (A 89    ). Mr. Tailing further admitted that he did not file any reports regarding his analysis. (A 89)

11  Ex. D-16

The State's other fingerprint expert, Detective Russell McNatt, testified regarding new distinctive marking in the latent fingerprint lifts which are indicative to the impressions on the beer bottle. ( See McNatt's March 27, 2003 Report A149, 150).

These new alleged discovers were made 21 years after the original taking of the latent fingerprints by Detective Ford in 1982. ( A-112 ). However, appellant pointed out that Mr. McNatt's new discovers cannot be believed because 21 years ago the four officers, McNatt, Sailing, Ford and Clauda A. Sparks made separate independent analysis of the fingerprint evidence and neither of them documented these incriminating apparent impressions in each of the latent fingerprint lifts. ( see Appellant Closing Argument, A 129 to 144 ). Thus, the only analyst to file a standard report regarding the identification of the prints was F. B. I agent Clauda Sparks and there is no mention of such impressions. (Sparks' Testimony A 97 to A99 and Report A147 - 148).

12    Ex. D-17

Ms. Paulette Winkfield testified for the defense that Baxter and Williams were together the night before the robbery; and that Baxter showed her a handgun and requested that she drive him to Seeley's liquor store to rob it. (A113-115). When Ms. Winkfield denied Baxter's request for a get-away-driver, she observed Baxter getting into Michael Williams' car and drive away. (A115). Ms. Winkfield stated that appellant Riley was not with Baxter and Williams. (A116-119).

The other defense witness, Gary Momenko, testified that while in prison together in 1982 Baxter had told him that he, Baxter, not Riley, shot Seeley. (A120-123)

Appellant pointed out all these critical inconsistencies in the State's evidence during Closing Arguments to the jury. (See Appellant's Closing Arguments A129-144)

After hearing this evidence the jury found appellant not guilty of the intentional first degree murder and conspiracy counts.

Also the jury found appellant guilty on the felony murder, robbery and weapon counts. Appellant was sentenced to life imprisonment.

Due to the conflict of interest appellant never had an opportunity to present an alibi defense or testify in his own defense. (A-31). The jury needed to know how appellant and Baxter ended up in Philadelphia together and then in Baltimore Maryland where they were arrested three months later.

Appellant originally notified the trial court that he intended to testify in his own defense that he and Baxter were suppose to meet in Baltimore to buy a large quantity of drugs; that appellant went to Baltimore from Philadelphia; and that before going to Baltimore Baxter told appellant that he first had to go to Dover, Delaware to obtain his half of the money to buy the drugs and then meet appellant in Baltimore a few days later.

On April 23, 2003, appellant filed a motion for a new trial wherein he renewed or reiterated the conflict of interest claims and requested a hearing on the motion. (A 151 to 154).

On May 19, 2003, the trial court, from the bench, denied appellant's motion for a New Trial without a hearing to permit appellant to show prejudice from the conflict of interest. (A 145 - 146)

# Argument

Appellant James Riley Was Deprived Of His 6th Amendment Right To Be Represented By Competent Counsel At Every Stage Of The Trial Proceedings Due To Trial Court's Failure To Conduct Inquiry Into The Conflict Of Interest Between Riley And Counsel

## Standard And Scope Of Review

The court review a denial of request to substitute counsel and denial of a motion for a new trial under an abuse of discretion standard. Schell v. Witek, 218 F.3d 1017, 1024 (9th. Cir. 2000) ("Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth Amendment"). Id. 1025. It is well established and clear that the Sixth Amendment

requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward. See Smith v. Lockhart, 923 F.2d 1314, 1320 (8th. Cir. 1991). Similarly, a motion for a new trial based upon a claim of conflict of interest requires an evaluation whether a defendant's right to conflict-free representation has been violated in situations where the alleged conflict has been brought to the trial court's attention in a timely fashion. United States v. Gallegos, 108 F.3d 1272, 1280 (10th. Cir. 1997)

Appellant Riley asserted this claim prior to trial and in a motion for a new trial. (See Motion A151 to 154)

In the context of a claim of a conflict of interest the ultimate constitutional question that a reviewing court must answer is not whether

17    Ex. D-22

the state trial court "abused its discretion" in not deciding a motion for new counsel or new trial, but whether this error actually violated appellant's constitutional rights in that the conflict between appellant and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment. Schell, 218 F.3d at 1026; Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991).

Hereafter, the Scope of Review that shall be employed by this Court is when a conflict of interest result in a complete denial of counsel at a critical stage is shown, there is often no need to show prejudice, and the resulting trial is presumed to be unfair. See, Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).

18    Ex. D-23

Thus, a criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Smith, 923 F.2d at 1320.

Courts have long recognized that the 6th Amendment right to counsel contains a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties. Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); Smith, at 1320.

When a defendant raises a seemingly substantial complaint about counsel, the judge "has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction. Wood, 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981) (holding that mere possibility of a conflict of interest

triggers duty to inquire). The trial court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern. See, Hudson v. Rushen, 686 F.2d 826, 829 (9th. Cir. 1982), cert. denied, 461 U.S. 916, 103 S.CT. 1896, 77 L.Ed.2d 285 (1983).

In this case appellant Riley and his counsel advised the trial court that there was a serious conflict of interest between them. (A34-38); see, also the Statement of Facts above herein which are incorporated by reference to establish prejudice).

Appellant requested that the trial court conduct an in camera hearing so he could reveal the circumstances surrounding the conflict of interest. (A 27, 31, 34 and 39).

However, trial counsel improperly argued against conducting any inquiry by the court. (A34 to A38     .)

Over the objection of appellant the trial court impermissibly accepted stand-by counsel's request not to conduct an ex parte in camera hearing to make

20    Ex. D-25

an inquiry into the conflict of interest.
(A 43 , A 47 - 48)

The trial court's actions violated clearly established Federal constitutional law and constitute improper waiver of right to conflict-free representation. See United States v. Greig, 965 F.2d 1018, 1022 (5th. Cir. 1992) in which the Fifth Circuit Court held ... while we recognize that a trial court does not always have an affirmative duty to inquire into the possibility of a conflict of interest, it does have a duty to conduct a hearing once it has been alerted and certainly when it knows of the existence of an actual conflict of interest. Id. Of course, a court may avoid a conflict of interest problem by securing a waiver a defendant's right to conflict-free representation. United States v. Gallegos, 108 F.3d 1272, 1281 (10th. Cir 1997). However, the waiver of a constitutional right must not only be voluntary, but must be a knowing, intelligent act "done with sufficient awareness of the

21   Ex. D-26

relevant circumstances and likely consequences." Id. at 1281-82, citing Brady v. United States, 397 U.S. 742, 748, 90 S.CT. 1463, 1469, 25 L.Ed. 2d 747 (1970). In determining whether a defendant has waived his right to conflict-free representation, a court must "indulge every reasonable presumption against the waiver." Gallegos, at 1281.

The only possible reason why trial counsel objected to the trial court's inquiry into the conflict of interest is because it would have been discovered that counsel manu-factured false documents and made false accusations to several State officials that appellant confessed to committing these crimes to the psychiatrist in 1987 and again during several interviews with postconviction counsel Professor Lawrence Connell in 1991 and 1999. ( A11 to A21    ). These accusations are all false and in direct violation of the Professional Rules of Conduct DR 7-102 (A)(5) which provide that a lawyer shall not knowingly make a false statement of law or facts.

Ex. D-27

"Had this evidence of misconduct been disclosed, trial counsel could have faced severe disciplinary consequences if it were ever known that he falsified, manufactured and altered the 1987 tape recorded interview appellant had with psychiatrist Neil Blumberg to suggest that appellant made incriminating statements of his involvement in these crimes. See Government of Virgin Islands v. Zepp, 748 F.2d 125 (3d. Cir. 1984); United States v. Greig, 967 F.2d at 1022-24, when an attorney clearly violate Professional Ethical Rules an actual conflict of interest is established.

Appellant's claims implicates both constitutional issues and ethical standards. See Shockley v. State, 565 A.2d 1373 (Del. Supr. 1989) in which the Delaware Supreme Court held ... that an attorney should have knowledge "beyond a reasonable doubt" before he can determine render Rule 3.3 that his client has committed or is going to commit perjury. Id. at 1379

23   Ex. D-28

Thus, a Shockley determination of trial counsel's knowledge beyond a reasonable doubt has never been conducted by the trial court.

However, on the record before this court, trial counsel's unethical conduct in manufacturing false documents and false accusations clearly violated the Model Code of Professional Responsibility as well as the American Bar Association's Model Rules of Professional Conduct. e.g., see, Greig, 967 F.2d at 1022.

Trial counsel's misconduct was so damaging to appellant's case that he was forced to invoke his 6th amendment right to self-representation in order to protect his 5th amendment right against self-incrimination and 6th amendment right to an impartial jury. Trial counsel threaten appellant that if he exercised his 6th and 14th amendment rights to testify in his own defense then counsel would reveal in open court

24  Ex. D-29

that appellant alibi defense is false. See again;
Shockley at 1377 wherein the Delaware
Supreme court recognize a defendant has
the right to testify in his own defense.

After the trial court failed to conduct
an in camera inquiry into the conflict
of interest appellant advised the court
that if he had to chose between poor
representation and self representation
then he have no other choice but to
represent himself. ( A 29 - 30 )

In Crandell v. Bunnell, 144 F.3d 1213
(9th. Cir 1998) the Ninth Circuit Court
held that Crandell was improperly forced
to choose between incompetent counsel
and no counsel at all. Id. at 1214. He
chose the latter and to represent
himself. Id. 1215. Under those unique
circumstances the Crandell Court
concluded that no showing of prejudice
was required because Crandell was
improperly left with no counsel

25
Ex. D-30

at all. Id. At 1216. The inherent prejudice in Crandell was therefore the denial altogether of the right to counsel. Appellant's factual situation is identical to Crandell where actual prejudice must be presumed.

Moreover, whether this court choose to fashion appellant's request to represent himself due to a conflict of interest or a complains about counsel's incompetency the law require that a determination be made as to the extent of prejudice the appellant suffered to amount to a constructive denial of assistance of counsel. See, Schell v. Witek, 218 F.3d at 1027-28, citing Strickland, 466 U.S. at 692, 104 S.CT. 2052 (" Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice).

As here when a defendant or his attorney gives the trial court notice of an alleged conflict and the trial

26 Ex. D-31

court fails to inquire into the conflict, a reviewing court will presume prejudice upon a showing of possible prejudice. See, Atley v. Ault, 191 F.3d 865, 872-73 (8th. Cir. 1999), citing Holloway v. Arkansas, 435 U.S. at 484-91, 98 S.Ct. at 1178-82 (1978).

Accordingly, a defendant's right to the effective assistance of counsel includes a right to "representation that is free from conflicts of interest". Gallegos, 108 F.3d at 1280.

## Conclusion

Based upon the arguments and supporting law cited above herein the Supreme Court is required to reverse appellant's convictions and sentences; or in the alternative remand this case back to the Superior court for an evidentiary hearing.

Date: April 7, 2004

James W. Riley

James W. Riley pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

27   Ex. D-32

IN The Supreme Court OF The State OF Delaware

James W. Riley,

    Appellant,

v.

State of Delaware,

    Appellee.

No. 259, 2003

## Appellant's Reply Brief

By: James W. Riley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Date: May 17, 2004

Ex. D-33

# Table Of Contents

Pages

Table of Citations    II

Summary Of Argument    1-2

  Argument :

      Appellant's Sixth Amendment Claim
      Is That When Notified Of The Potential
      Conflict Of Interest The Trial Court
      Violate Its Constitutional Duty Under
      Holloway v. Arkansas For Failing To
      Conduct An Adequate Inquiry. Thus
      Requiring An Automatic Reversal    3 - 11

Attachments:

   Motions To Stay The Proceeding —
                  Exhibits "A" and "B"

I Ex. D-34

# Table of Citations

**Cases**                                                          **Pages**

Cuyler v. Sullivan,
446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)   1, 2, 7

Glasser v. United States,
315 U.S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942)   10

Holloway v. Arkansas,
435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)   passim

Johnson v. Zerbst,
304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)   6

Tumey v. Ohio,
273 U.S. 510, 47 S.Ct. 437, 71 L.Ed 749 (1927)   10

Atley v. Ault, 191 F.3d 865 (8th. Cir. 1999)   1, 2, 9

Government of Virgin Islands v. Zepp,
748 F.2d 125 (3rd. Cir. 1984)   1, 2, 11

Schell v. Witek, 218 F.3d 1017 (9th. Cir. 2000)   11

United States v. Long, 857 F.2d 436 (8th. Cir. 1988)   passim

United States v. Musa, 220 F.3d 1096 (9th. Cir. 2000)   11

Riley v. State, 585 A.2d 719 (D. Supr. 1990)   7, 8

Shockley v. State, 565 A.2d 1373 (D. Supr. 1989)   11

## Summary Of Argument

Both Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) And Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) are the applicable United States Supreme Court cases governing the Standard Of Review For a trial Counsel's Alleged Conflict Of interest.

Although Holloway And Cuyler involved situations where the Alleged Conflict Of interest Arose due to counsel's joint representation Of co-deFendant, however the rule announced by these cases are not limited to such situations. See, Atley v. Ault, 191 F.3d 865, 870 No. 4 (8th. Cir. 1999) And Government of Virgin Islands v. Zepp, 748 F.2d 125, 135-36 (3rd. Cir. 1984).

For this reason the Appellee's Argument at pages 16-17 Of their Answering Brief which points Out the Factual difference between Appellant's situation and other cases cited by Appellant in the context where the Conflict Of interest Arose is without merit.

The Third Circuit Court Adopted the American Bar Association's deFinition Of conflict Of interest in the Canons Of Professional Ethics And held

... that :

    [A]ctual conflict of interest is evidenced

    if, during the course of the representation,

    the defendant's interests diverge with

    respect to a material factual or legal

    issue or to a course of action.

Zepp, 748 F.2d at 136.

    The Questions this court must decide is not whether the trial court abused its distretion in the context in which a conflict of interest exist, but however did an actual conflict exist, if so, did such conflict violate the defendant's constitutional rights in manner in which the defendant allege prejudiced him.

    If a defendant raise a conflict of interest claim prior to trial then the reviewing court must apply the Holloway Standard of Review of presume prejudice upon a showing of possible prejudice; however if a defendant raises a potential conflict of interest after trial, the court must apply the standard set forth in Cuyler requiring a showing of actual conflict of interest -- that is, that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests. See, Ault, 151 F.3d at 872-73; Zepp, 748 F.2d at 132-33.

2

Ex. D-39

Argument

## Appellant's Sixth Amendment Claim Is That When Notified Of The Potential Conflict Of Interest The Trial Court Violate Its Constitutional Duty Under Holloway v. Arkansas For Failing To Conduct An Adequate Inquiry, Thus Requiring An Automatic Reversal

There is no dispute that appellant Riley and his trial attorney alerted the trial Judge of the actual or serious potential for a conflict of interest that might occur during the trial. (Appellee's Answer page 14-15). Thus, Appellant's claim falls within the clearly established framework of Holloway.

Also there is no dispute that appellant made a specific request for the trial court to conduct an ex parte in camera inquiry into nature and extent of the conflict of interest in which trial counsel vigorously opposed. (Appellee's Answer page 14-18)

At page 15 of Appellee's Answering Brief the State try to justify trial counsel's impermissible argument against the trial court conducting an ex parte in camera inquiry into the conflict of interest, stating that:

... torn between his ethical responsibilities as an officer of the court, and his duty

3

Ex. D-38

to his client, Gabay delicately sought
to prevent any disclosure that might
jeopardize his client's life.

In support of its justification of trial counsel's
actions the Appellee cites United States v. Long, 857
F.2d 436, 446 (8th. Cir. 1988), holding that:

disclosure of defendant's intended perjury
to the court creates significant risks of
unfair prejudice to the defendant where
the judge will sentence the defendant

However this quote from Long does not support
Appellee's argument as contended would justify the
Appellant's trial counsel's impermissible statements
to the trial court to not make any inquiry into
the conflict of interest. At the end of that quote
from Long the 8th Circuit Court of Appeals directed
the reader's attention to Footnote 6 which states
in pertinent part:

Before disclosing to the court a belief of
impending client perjury, not only must
a lawyer have a firm factual basis for
the belief that his or her client will
commit perjury, but the lawyer must

4
Ex. D-39

Also have attempted to dissuade the
client from committing the perjury.

Long, 857 F.2d at 446.

Thus, the appellee's quote from Long does not stand
for the proposition that an attorney shall not disclose
a client's intended perjury to the court, but however
what the Long court clearly implicate is that due to
the significant risks of unfair prejudice resulting from
such incriminating accusation by a defendant's attorney
... the attorney first must have a firm factual basis
for the belief that his or her client will commit
perjury. Id. at 446

Furthermore, the Long court held that the trial
judge acted primarily with the concerns to make an
adequate inquiry into counsel's beliefs that Jackson
(Long's co-defendant) would testify falsely by
discussing the conflict with only the attorney and
his client present to reduce the resulting prejudice
by further disclosures of Jackson's confidences. Id.
At 446-49. Again, the appellant requested such
an ex parte in camera inquiry by the court to
reduce prejudice and disclosure of his confidences
(A-27, 31, 34 and 39), however trial counsel not only
improperly argued against it (A-34 to 38) but
counsel also argued that the state should be

5

Ex. D-40

present at this hearing (A34).

Under such a procedure adopted by the Long court to conduct an ex parte in camera inquire hearing, the chance for violations of the defendant's constitutional rights will be reduced, the revelation of further client confidences will be prevented, and the defendant can make a knowing waiver of the constitutional right to testify and to counsel. Long, at 447 (citing Johnson v. Zerbst, 304 U.S. 458, 468-69, 58 S. Ct. 1019, 1024-25, 82 L.Ed. 1461 (1938). It will also be necessary to establish that the waiver was voluntary and that the defendant's rights were not violated prior to the waiver. Long, Id. 447

Actually the Long decision support Appellant's contentions that when a trial court is confronted with an attorney's allegation that his or her client intend to commit perjury an adequate evidentiary hearing must be held to determine (1) does an attorney possess a firm belief that his client will commit perjury; (2) was the defendant restrained by his attorney's actions from giving truthful testimony and (3) Since Appellant's attorney, like in Long, argued to the trial Judge ethical concerns which may prevent him from representing Appellant at every stage of the trial proceedings, may have created significant risks of unfair prejudice. See, Long, at 445-46 and FN. 7. Id.

The Long Court was concerned with the above three (3) factors because they had not been established by the trial court and if Jackson's attorney had no firm basis for his belief that Jackson will commit perjury, a violation of Jackson's right would occur. Id. at 444.

Confronted with the same problem here, the trial court's acceptance of appellant's trial counsel's request not to conduct any inquiry into the conflict of interest violated appellant's constitutional rights under Holloway and Long. The Cuyler Court recognized that where a defendant makes a timely objection, the trial court has an obligation under Holloway to determine whether an actual conflict exists. Id. Cuyler, 446 U.S. at 346, 100 S.Ct. at 1717.

Appellant reiterate here again that trial counsel's accusations that appellant confessed to committing these crimes during a 1987 taped recorded interview with psychiatrist Neil Blumberg, is not accurate and itself false. However, during an appeal from denial of postconviction relief in 1989 the Delaware Supreme Court had an opportunity to review Dr. Neil Blumberg's Reports from the 1987 interview with Appellant. See, Riley v. State, 585 A.2d 719, 726-28 (D. Supr. 1990). Nothing in the

7

Supreme Court decision in Riley even remotely Suggests that appellant had made any previous incriminating statements to Dr. Blumberg.

Appellant even filed several Motion To Stay All The Proceedings in this Appeal and requested this Court to compel appellant's Trial Counsel to turn over All the documents pertaining to Dr. Blumberg's 1987 interviews and the Five (5) alleged interview Appellant supposedly had with former postconviction attorneys. ( See Motions Attached hereto Exhibits A and B ). In those Motions Appellant explained the relevancy of these interviews to the issues of this Appeal and how they would be used to show that trial counsel's perjury accusations are not accurate. On March 29, 2004 this Court denied Appellant's Motions To Stay The Proceedings and request to compel trial counsel to disclose the interviews mentioned above to the Court and Appellant.

Now the State Argue throughout its Answering Brief the accuracy of trial counsel's perjury accusations based upon the materials the Supreme Court denied appellant access to.

The Appellee Also advances arguements in its Answering Brief At pages 20 to 22 About Strength of the State's case Against Appellant, and that Appellant could have simply argued his previous alibi trial testimony in Summation. However, this

8

Ex. D-43

argument of Appellee's Fails For several reasons; (1) Appellant was entitled to have counsel represent his alibi defense at every stage of the trial; (2) The State offered Appellant's prior trial testimony into evidence For impeachment purposes had Appellant testified differently at the re-Trial; (3) Appellant had Additional Facts to testify to in support of his alibi defense than the previous trial testimony; (4) Had appellant argued his alibi defense in Summation that he was somewhere else other than at the scene of the crime then Trial counsel had warranted appellant that he will reveal to the court and the State that Appellant is committing perjury which would have greatly prejudice Appellant's case in the late stages of the trial.

As stated above, Holloway requires reversal where the trial court Failed to discharge its duty to inquire into a known potential conflict because prejudice to the accused is presumed. 435 U.S. At 487-89, 98 S. Ct. At 1180-81. In reaching this determination, the Holloway court stated that the harmless-error standard did not apply because the right to have conflict-free assistance of counsel "'is too Fundamental and absolute to allow courts to indulge in nice calculations as to the Amount of prejudice arising From its denial'" and because any Form of harmless error analysis "would require, unlike most cases, unguided speculation". Atley v. Ault, 191 F.3d At 874 (quoting, Holloway

9

Ex. D-44

435 U.S. At 488, 491, 98 S.CT. At 1181, 1182 (Quoting Glasser v. United States, 315 U.S. 60, 75-76, 62 S.CT. 457, 467, 86 L.Ed. 680 (1942).

From the cases cited above it is clear that the prejudice is presumed regardless of whether it was independently shown. See Holloway, AT U.S. 489, AT S.CT. 1181, citing Tumey v. Ohio, 273 U.S. 510, 47 S.CT. 437, 71 L.Ed. 749 (1927), For example, stands for the principle that "[a] conviction must be reversed if [the asserted trial error occurred], even if no particular prejudice is shown and even if the defendant was clearly guilty".

Therefore, Appellee's argument about the overwhelming evidence against appellant And what appellant should or should not have done in revealing his complains to the trial Judge is insignificant in light of the recorded Facts that the conflict of interest was so great that trial counsel informed the trial court that he wrote to the ethics panel of the Delaware Bar Association asking for guidance and suggested to the Trial Judge that he is not the individual who should conduct the in camera inspection of Appellant's evidence of conflict of interest. (A35-36). Thus, the conflict between Appellant and counsel can hardly be considered a mere disagreement over trial strategy as Appellee allege at page 22 of its Brief.

10

Ex. D-45

IF the Supreme Court don't find appellant's arguments compelling on the trial record presented in support of this appeal then the only sensible thing to do is remand this case back to the Trial court for an evidentiary hearing to determine whether or not Trial counsel possessed a firm belief beyond a reasonable doubt that appellant had previously made incriminating statements about his participation in these crimes and that appellant intended to testify falsely at trial. Where a Trial court fail to hold or make an adequate Holloway inquiry, or for that reason, any inquiry into a potential conflict of interest then the reviewing court must remand for an evidentiary hearing to resolve the matter. See, Shockley v. State, 565 A.2d 1373 (D. Supr. 1989); Zepp, 748 F.2d at 132-33; Long, 857 F.2d at 444-447; Schell v. Witek, 218 F.3d 1017, 1027-28 (9th. Cir. 2000) and United States v. Musa, 220 F.3d 1096, 1103 (9th. Cir. 2000).

Wherefore, for the reasons set forth in appellant's Opening Brief and this Reply, the Supreme Court shall reverse appellants convictions and sentences and issue an appropriate ORDER granting a new trial.

Respectfully Submitted,

James W. Riley

Date: May 17, 2004

James W. Riley, prose
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

11

Ex. D-46

In The Supreme Court Of The State Of Delaware

James W. Riley,

    Appellant,

    v.              No. 259, 2003

State Of Delaware,

    Appellee.

## Motion For Reargument
### En banc

    The Appellant James Riley hereby moves the Court For reargument From its opinion and Order entered in this appeal dated September 13, 2004, denying Appellant's direct appeal.

    Appellant request reargument En banc before the Full Court because the court's Judgment is totally unreasonable and contrary to Federal constitutional case law governing the issue of an attorney's disqualification due to a conflict of interest. The grounds For reargument en banc are as Follows:

### Justice Steele Previous
### Disqualification

    1. It was plain error For Chief Justice Steele to have any involvement with appellant's appeal after previously disqualifying himself

(1) Ex. D-47

From this case during Certifyed Question of
Law regarding Ring v. Arizona application to
the Delaware Death Penalty Statute. See,
Attached hereto docket entry in State v. Riley,
No. 533,2002. For the Forgone reasons stated
in Justice Steele's October 15, 2002 Memorandum,
Judge Steele's disqualification is still outstanding
and appellant have not exercised any right
to waive disqualification in this appeal. Because
Justice Steele previously presided over this case
when he was a Superior Court Judge in Kent
County in which past involvement may have had
an Adverse affect on his judgment in his Appeal
at bar, therefore the decision rendered by
Justices Steele, Holland and Jacobs in this
case on September 13, 2004 must be hereby
vacated and a new panel of Judges convened
to reconsider the Briefs of the parties on
the merits.

The Court Overlooked Facts
Insupport of Conflict of Interest

2. On page 8 paragraph 13 of its Order,
this Court erroneously states that ... "Riley
never specifically identifies his counsel's alleged

(2) Ex. D-48

'conflict of interest'; that ..." He simply complains that his counsel would not pursue an alibi defense on his behalf". (See Court's Order attached hereto)

Contrary to what the Court states, however throughout appellant Riley's Opening and Reply Briefs he explained in vivid detail with supporting documentary evidence how his stand-by trial counsel intentionally manufactured false documents and made false accusations to several state officials that appellant confessed to committing these crimes to the psychiatrist in 1987 and again during several interviews with postconviction counsel Professor Lawrence J. Connell in 1991 and 1999. (See Footnotes 5, 6 and 7 of this Court's Order which refer to these false documents to affirm appellant's convictions and sentences).

The purpose for trial counsel's illegal conduct was a failed attempt to force appellant to accept the State's plea offer to a sentence of life imprisonment. (See Footnote 6 of the court's Order which refer to the plea bargain by appellant's counsel).

When appellant rejected the plea bargain his trial counsel proceeded to threaten him that if appellant testify at trial or present an alibi defense that he was not present at the scene

(3) Ex. D-49

of the crime then counsel will withdraw from the
case and reveal in open court (prior to jury selection)
that appellant intend to commit perjury.

As the record in this appeal clearly show appellant
made every attempt to request the trial court to
conduct an ex parte in camera inspection of the
documents trial counsel manufactured to suggest
that appellant previously made incriminating statements
of his involvement in these crimes and that he
will testify falsely at trial. At that time trial
counsel improperly argued against conducting any
inquiry by the court. The record show that trial
counsel even told the trial Judge that he is not the
appropriate person to conduct an inquiry into the
conflict of interest, which is contrary to both
State and Federal law. Over the continuing
objection of appellant (as the trial transcripts
contained his Appendix show) the trial court
impermissibly accepted trial counsel's request not
to conduct an ex parte in camera hearing or any
inquiry at all into the conflict of interest.

Contrary to the trial records the Delaware
Supreme Court concluded unreasonably that the
trial court conducted an adequate inquiry
into the conflict of interest.

(4) Ex. D-50

When a trial court is confronted with a conflict of interest issue or an issues of a lawyer's accusations that his client will commit perjury both State and Federal law demand that the trial court conduct an adequate inquiry of the propriety of counsel's actions. If the trial court is not the appropriate judicial official to make the inquiry into conflict of interest claims and attorneys' accusations of clients' potential perjury issues then who in the world are qualified to conduct that inquiry? Such a question of law established by the Supreme Court's Ruling in appellant's case clearly create a new rule of law. Thus, appellant must be afforded the new principles of law created for the appropriate official to decide claims of conflict of interest and claims of attorney's accusations of client's anticipated perjury. The Eighth Circuit Court of Appeals in United States v. Jackson, 857 F.2d 436, 447 n.10 (8th. Cir. 1988) offer several methods of alternative to establish such a post hoc procedure, one of which is to create a board of attorneys to decide ethical issues, citing Erickson, The Perjurious Defendant: A Proposed Solution to the Defense

(5)  Ex. D-51

Lawyer's Conflicting Ethical obligations to The Court and to His Client, 59 Den. L. J. 75, 88-91 (1981).

### The Three Categories OF A Conflict OF Interest Cited By The Commentary To Rule 1.7 OF The Delaware Lawyer's Rules OF Professional Conduct Does Not Exhaust All Situations

B. The Supreme Court states in paragraph 13 of its Order that appellant Riley's claim of a conflict of interest does not fall into any of the three (3) categories cited as mere examples to the commentary to Rule 1.7 of the Delaware Lawyer's Rules OF Professional Conduct (hereafter "D.L.R.P.C"). (see, Footnote 9 to the Supreme Court's Order).

However, the examples given by the commentary suggests that this Delaware Rule is inclusive, i.e., the designated instances prompting disqualification do not exhaust all situations in which a conflict of interest can exist. See, Government OF Virgin Islands v. Zepp, 748 F. 2d 125, 135-36 (3rd. Cir. 1984) and Atley v. Ault, 191 F.3d 865, 870 N.4 (8th. Cir. 1999). Also, see, Rule 1.7 (b)

(6) Ex.D-52

of the D.L.R.P.c which states in pertinent part:

> Rule 1.7 (b) - Notwithstanding The
> Existence OF A Concurrent Conflict
> OF Interest Under Paragraph (a), A
> lawyer may represent a client if:
> (2) The representation is not
> prohibited by law.

Accordingly, the appellant's trial counsel misconduct in manufacturing False documents and False accusations to suggest that Appellant had made incriminating statements of his guilt to captal murder is a criminal act of First degree perjury (~~not~~ prohibited by law) in violation of 11 Del. C. § 1223 And the Constitutional rights OF Appellant, thus disqualifying Counsel's representation under Rule 1.7 (b).

The only possible reason why trial counsel objected to the trial court's inquiry into the conflict of interest is because it would have been discovered that counsel manufactured False documents and made False Accusations to several State officials that appellant confessed to committing these crimes to the

(7) Ex. D-53

psychiatrist in 1987 and again during several
interviews with postconviction counsel Professor
Lawrence Connell in 1991 and 1999. These accusations
are all False and in direct violation of the
Professional Rules of conduct DR7-102 (A)(5)
which provide that a lawyer shall not knowingly
make a false statement of law or Fact. Had
this evidence of misconduct been disclosed, trial
counsel could have faced severe disciplinary
consequences if it were ever Known that he
Falsified, manufactured and altered the 1987
tape recorded interview appellant had with
psychiatrist Neil Blumberg to suggest that
appellant made incriminating statements of
his involvement in these crimes. See, Government
of Virgin Islands v. Zepp, 748 F.2d 125 (3d. Cir.
1984) and United States v. Greig, 967 F.2d 1018,
1022-24 (5th. Cir. 1992). When an attorney
as here clearly violate Professional Ethical Rules
an Actual conflict of interest is established.

   Appellant's claims implicates both Constitutional
issues issues and ethical standards. See,
Shockley v. State, 565 A.2d 1373 (Del. Supr.
1987) in which the Delaware Supreme Court
held ... that an attorney should have

(8)  Ex. D-54

Knowledge "beyond a reasonable doubt" before
he can determine under Rule 3.3 that his client
has committed or is going to commit perjury.
Id. at 1379. Rule 3.3 should be interpreted
to mean that a lawyer "is subject to sanction
for using false evidence when she (1) subjectively
has thoughts about the possibility of falsity, and
(2) has no reasonable doubt that the proposed testimony
would be false"). Id. AT 1379 n.7. Thus, Disqualif-
ication of an attorney may be based on either of the
following grounds: (a) conflict of interest, or (b)
integrity of the judicial system". See, United States v.
Greig, 967 F.2d 1018, 1024 n.17 (5th. Cir. 1992).

The Supreme Court Accepted Trial
Counsel's Perjury Accusations As
Being True Without Conducting
A Rule 3.3 Determination of
Evidence Supporting That Belief

4. In paragraph 14 of its Order the Delaware
Supreme Court state that appellant Riley's trial
counsel ... "who refuses to cooperate with his
client's planned perjury, as is ethically required,
does not deprive the defendant of his right to
counsel or his right to testify truthfully and

(9) Ex. D-55

that such actions by counsel do not give rise to a disqualifying conflict of interest."

However the court made this determination without ever conducting a mandatory Shockley inquiry pursuant to Rule 3.3 to ensure that the evidence relied upon by counsel establish the prerequisite knowledge "beyond a reasonable doubt" that the Appellant had previously made incriminating statements of his involvement in these crimes and intended to testify falsely to that fact at trial. 565 A.2d 1373, 1378-80. A mere inconsistency in client's story is insufficient ... to support the conclusion that a witness will offer false testimony. Shockley, at 1379.

The factual basis for the Court's determination is based upon the correspondences trial counsel wrote to the Professional Ethics Committee, to appellant and to President Judge Ridgely. (See footnote 5, 6 and 7 to the Court's order).

Appellant has consistently maintained that there is a conflict of interest due to the false incriminating accusations trial counsel made against appellant in those correspondences. In appellant's Opening and Reply Briefs he even invited this court to review a transcript that trial counsel manufactured from the 1987 tape recorded interview appellant had with psychiatrist which contains false incriminating

(10)  Ex. D-56

statements that appellant confessed to committing these crimes. As reflected in Footnote 6 on page 5 of the Court's Order, trial counsel attempt to use that false document to force appellant to accept the State's plea bargain.

Wherefore, this court must grant reargument en banc based upon appellant's Opening and Reply Briefs to examine all the evidence pertinent to making a Shockley determination whether trial counsel's possessed accurate knowledge beyond a reasonable doubt that appellant previously confessed to committing capital murder and intended to testify falsely at trial.

Because appellant's conflict of interest claim is based primarily upon these factual circumstances which was not addressed by the court and could result in trial counsel's disqualification, an adequate STATE court record must be established for Habeas Corpus review pursuant 28 U.S.C § 2254 (d)(1) & (2).

Likewise, this court must clarify the record regarding Chief Justice Steele's previous disqualification from presiding over appellant's appeal.

Date: Sept. 19, 2004

Respectfully submitted,

James W. Riley

James W. Riley, pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 1997

Ex. D-57

In The Supreme Court Of The State Of Delaware

James W. Riley,

    Appellant,

  v.

State Of Delaware,

    Appellees.

No. 259, 2003

## Motion To Stay All The Proceedings

Now comes, the Appellant James W. Riley, who moves this Honorable Court to stay all the proceedings for the good cause shown below:

1. Despite the obvious and indisputable conflict of interest between Trial counsel and Appellant Riley which existed prior to the start of Trial and continuing on appeal to this Delaware Supreme Court; See, Supreme Court's December 9, 2003 Order Granting Appellant's Request To Proceed Pro Se On Appeal;

    2. In It's Order at paragraph 5 the Supreme Court granted Appellant Riley the ... "right to argue in his direct appeal that he was constructively denied his right to counsel at trial and on appeal due to counsel's alleged conflict of interest."

Ex. D-58

3. The conflict of interest stems from trial counsel's false accusations that appellant Riley has previously confessed or had made incriminating statements of his actual participation in the crimes in which he is presently convicted of. The basis of trial counsel's false accusations was the assumption that appellant had confessed to committing these crimes during a taped interview with a psychiatrist in 1987. (See, Exhibits "A" and "B" attached hereto). Due to these false allegations, trial counsel refused to represent Riley at every stage of the trial proceedings. (See, exhibits "A", "B" and "E").

4. On February 9, 2004, appellant Riley filed a request with the Delaware Supreme Court for an extension of time to file an opening brief, because he needed more time to review the trial records he had recently obtained from standby trial counsel on January 23, 2004.

5. After reviewing the materials standby trial counsel turned over to Mr. Riley, the following new documents were discovered:

a) Standby counsel's letter to the Honorable Henry duPont Ridgely dated March 24, 2003, (Exhibit C);

b) Professional Ethics Committee's decision to standby counsel's accusations of appellant Riley's intent to offer perjured testimony in support of his alibi defense, (Exhibit D);

Ex. D-59

c) Standby counsel's personal notes describing the Grounds For his beliefs That Appellant Riley will commit perjury and the supporting "Basis For these issues", (Exhibit F).

6. Thus, on page 2 of Exhibit "F" Standby counsel list Five (5) separate interviews between 1991 and 1992 that Appellant Riley had with LC (LJ), MMH and TA.

These abbreviations represent the names of post-conviction counsels Lawrence J. Connell, Mary Maloney Huss And Thomas Allingham.

7. In Additionally, on page 2 of Exhibit "A" and page 2 of Exhibit "B" Standby Counsel refFerred to the interviews that Appellant Riley had with psychiatrist Neil Blumberg in 1987.

8. Now it is Standby counsel's allegations That based upon these specific interviews mentioned in paragraphs 6 and 7 above that Appellant Riley supposedly confessed to committing these crimes.

9. However, Appellant Riley cannot adequately argue the issue that he was constructively denied a 6Th Amendment Right to counsel at Trial and on Appeal without having Full access to the 1987 tape recorded interviews with psychiatrist Neil Blemberg and All interviews listed by Standby counsel on page 2 of Exhibit F. Those interviews mentioned in Exhibit "F"

Ex. D-60

indicates that Professor Lawrence J. Connell (AKA-LJ or LC) of Widner University was present during the conversations between Appellant Riley, Mary Maloney Huss, and Thomas Allingham in which Riley supposedly made incriminating confessions. For this reason Appellant need to obtain an affidavit from Professor Lawrence Connell to verify that he never interviewed Riley with Mr. Allingham and Ms. Maloney Huss on more than one or two occasions and that Riley never made any incriminating statements at any time.

10. Appellant cannot adequately represent himself on appeal where standby counsel has altered or falsified documents in Appellant's case files which fraudulently suggests that appellant is committing perjury or has confessed to committing these crimes in order to force Appellant to accept the State's plea agreement against going to trial for a sentence of life imprisonment. (see Exhibits A, B, and E which Trial Counsel make threats to withdraw if Appellant didn't plea guilty to non-capital murder).

11. Appellant also have in his possession a document which suggests that postconviction counsels Mr. Allingham and Ms. Maloney Huss have falsely transcribed or altered the 1987 taped recorded interview between psychiatrist Neil Blumberg and Appellant Riley where there are deliberate false incriminating statements attributed to

Ex. D-61

Dr. Blumberg against the appellant.

12. Due to these exceptional circumstances standby counsel's conflict of interest cannot be overlooked without causing continuing prejudice to appellant Riley's constitutional rights to adequately represent himself on appeal.

Wherefore, this court cannot permit standby counsel to retain appellant's case files in light of allegations and direct proof that counsel have previously altered certain documents which critically infringed upon appellant's 5th, 6th and 14th Amendment rights against self incrimination, to be fully represented by competent counsel at every stage of the trial and appeal proceedings and rights to testify in his own defense and/or present an alibi defense. In order to advance these issues on appeal the requests made in support of this motion must be granted by Court.

Respectfully submitted,

James W. Riley

James W. Riley, pro se
Delaware Correctional Center
1181 Paddock Road
(Date: February 17, 2004    Smyrna, Delaware    19977

Ex. D-62

In The Supreme Court Of The State Of Delaware

James W. Riley,

     Appellant,

     V.

State of Delaware,

     Appellee.

No. 259, 2003

Appellant's Request To File This
Response To The State's Answer
To Motion To Stay Proceedings

    Now Comes the appellant James W. Riley who request that this Honorable Court permit him to File this response to the State's March 8, 2004 "Answer To Motion To Stay Proceedings". This request is premised upon the Following Facts:

    1. The State made several inconsistent arguments which violates Rule 3.3 (a)(1) and (a)(2) thru (a)(4) of the Professional Conduct Rules to Respond with Candor.

    2. The State made intentional misleading Arguments in paragraph 3 of its Answer, that appellant chose Not to Advise the Trial Judge of any details of the conflict of interest between he and Trial Counsel.

    In Support of the State's Argument they Attached to their Answer excerpts From the Transcripts of

1

Ex. D-63

Hearing To Determine Representation, in an Attempt to make their Argument compelling to the court. (see Transcripts Attached the State's Answer)

3. However, the State did not include the parts of the Transcripts that show that Appellant did make a reasonable and timely request to the trial court for an ex parte (private) hearing so he could reveal the existing conflict of interest and supporting evidence to the court. (see Those relevant Transcripts pages 23-30, 44 and 64 thru 71 Attached hereto). The reason why Appellant did not want to reveal the Facts of the conflict of interest in open court is because the information was incriminating and involved Accusations that Appellant intended to offer False testimony during Trial. These accusations by trial counsel was False and to permit such information to leak out to the media prior to jury selection would have certainly prejudiced the whole Jury Vender Against him. Over 90 per cent of All Delawareans either read the newspaper or witch the local news on television. And if this court read the Transcripts carefully it seems that the entire colloquy by Trial Judge, The State And Appellant's counsel was directed at Forcing (tricking) Appellant into revealing the perjury Accusations Against him in open court in hope that the Negative publicity would be read in the

2  Ex. D-64

Newspapers by All potential jurors.

4. The STATE also try to make out Appellant's complains to be About newly discovered evidence, or An Attempt to impeach A mere STATement by trial counsel, or some Attempt to expand the record with FacTs of little importance. However, that is not the issue here!! The issue is that trial counsel manufactured False documents And made False Accusations to Several STATE officials that Appellant confessed to committing these crimes to the psychiatrist in 1987 And again during several interviews with postconviction counsel Professor Lawrence Connell in 1991-1992. These Accusations Are All False And in direct violation of DR 7-102 (A)(5) which provide that "A lawyer shall not knowingly make a false statement of law or Fact". The Appellant, who is Acting pro se herein, seek to obtain those records in his Files so he can compare them with the manuFactured documents that trial counsel rely on to support the False claims that Appellant will give perjured testimony And False Alibi At trial. Also since the False Accusations involve Professor Lawrence J Connell And psychiAtrist Neil Blemberg who were both representatives of Appellant during the 1987 postconviction proceedings in the Delaware STATE Courts, the Appellant need to obtain sworn AFFidaviTs From Mr. Connell And Dr. Blemberg in support of Appellant's Arguments on Appeal.

3 Ex. D-65

5. Furthermore, the failure of the Trial Judge to inquire into conflict of interest after defense counsel's pretrial warnings of conflict violated right to effective Assistance of counsel because court has duty to avoid potential conflicts). See, Holloway v. Arkansas, 435 U.S. 475, 484-85 (1978); United States v. Greig, 967 F.2d 1018, 1022 (5th. Cir. 1992); Atley v. Ault, 191 F.3d 865, 871, 874 (8th. Cir. 1999); and United States v. Gallegos, 104 F.3d 1272, 1282 (10th. cir. 1999). The term "conflict or conflict of interest" appear in the Transcripts Three (3) times, see Attachments to State's Answer page 52 on B2 and pages 65 and 69 attached hereto. Thus, the Trial court was aware of the potential conflict of interest but failed to make the necessary inquiry into the nature and extent thereof.

6. In paragraph 2 of the State's Answer, the State correctly read Appellant's motion as a request to obtain certain papers from Standby counsel that will strengthen his claim that due to the conflict of interest he should have been given substitute counsel at trial and on this Appeal. Even in the context of a request for substitute counsel due to a conflict of interest a Trial court is still duty-bound to make an inquiry into the nature and extent of the conflict. See, Smith v. Lockhart, 923 F.2d 1314, 1321 (8th. cir. 1991) (right to counsel

4 Ex. D-66

make improper argument against in camera hearing, exhibit B2-B3 pages 52 thru 55).

Wherefore, this court shall grant appellant's requests outlined in his motion to stay all the proceedings, or grant him the appropriate relief according to law for the violations of his constitutional rights set forth in the contemporaneous record of pleadings which is plain on face of trial transcripts.

Respectful submitted,

James W. Riley

James W. Riley, pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Date: March 15, 2004

Ex. D-68

6

IN THE SUPREME COURT OF THE STATE OF DELAWARE

DELAWARE SUPREME COURT
FILED

| | |
|---|---|
| JAMES W. RILEY, | § |
| | § No. 259, 2003 |
| Defendant Below- | § |
| Appellant, | § |
| | § |
| v. | § Court Below—Superior Court |
| | § of the State of the Delaware, |
| STATE OF DELAWARE, | § in and for New Castle County |
| | § Cr. ID 0004014504 |
| Plaintiff Below- | § Cr.A. Nos. IK82-05-0060, -0061, |
| Appellee. | § and IK82-06-0838 |

2003 DEC 10  A  9 50

DEPUTY CLERK
WILMINGTON

Submitted:  November 21, 2003
Decided:    December 9 , 2003

## O R D E R

This  9th  day of December 2003, upon consideration of James

Riley's motion to proceed *pro se,* the Superior Court's report following

remand, and appointed counsel's letter in opposition to Riley's motion, it

appears to the Court that:

(1)    This is appellant James Riley's direct appeal from his life

sentence imposed following his retrial on two counts of murder in the first

degree, conspiracy, first degree robbery, and possession of a deadly weapon

during the commission of a felony.[1]    Prior to his retrial, Riley requested

---

[1] Riley was indicted originally in 1982.  Following a jury trial, he was convicted
of all charges and sentenced to death.  This Court affirmed his convictions and death
sentence on direct appeal.  *Riley v. State,* 496 A.2d 997 (Del. 1985).  Riley unsuccessfully
filed for state postconviction and federal habeas corpus relief.  In 2001, the Third Circuit

Ex. D-69