leave to discharge his court-appointed attorneys, due to an alleged conflict of interest, and to represent himself at trial. After a hearing, the Superior Court granted Riley's motion but ordered Riley's court-appointed attorneys to remain in the case as stand-by counsel. Riley represented himself, with the assistance of stand-by counsel, at the guilt phase of his capital murder retrial. The jury acquitted Riley of intentional murder and conspiracy and convicted him of the remaining charges.

(2)     At Riley's request, stand-by counsel was reappointed as counsel of record to represent Riley during the penalty phase of the trial. Following the penalty hearing, the jury recommended, by a 12-0 vote, that Riley be sentenced to life imprisonment. The Superior Court adopted the jury's recommendation. After this appeal was filed, Riley filed a motion and affidavit waiving his right to counsel and requesting to represent himself on appeal. We remanded the matter to the Superior Court for a fact-finding hearing to determine if Riley's waiver of the right to counsel on appeal was made knowingly, intelligently, and voluntarily.

(3)     Following the hearing, the Superior Court concluded, under the circumstances, that Riley's waiver of counsel was made knowingly, intelligently, and voluntarily. Riley's court-appointed attorneys have filed a

---

Court of Appeals reversed Riley's convictions and sentence and remanded the matter for a new trial. *Riley v. Taylor*, 277 F.3d 261 (3[d] Cir. 2001).

(5)    After considering the Superior Court's report following remand, counsel's letter in opposition and Riley's response thereto, this Court ordered preparation of the transcript of the Superior Court's hearing on remand, as well as the transcript of the hearing on Riley's pretrial motion to proceed *pro se* at trial. After careful consideration, the Court concludes that the Superior Court's finding of a knowing, intelligent, and voluntary waiver is supported by the present record. Our conclusion, however, is without prejudice to Riley's right to argue in his direct appeal that he was constructively denied his right to counsel at trial and on appeal due to counsel's alleged conflict of interest.

(6)    Accordingly, the Court grants Riley's motion to proceed *pro se* on appeal without prejudice. To the extent Riley would like stand-by counsel at trial to continue as stand-by counsel in this appeal, he shall so inform the Clerk of this Court within 20 days of this Order. The Clerk thereafter shall issue a brief schedule.

NOW, THEREFORE, IT IS ORDERED that appellant's motion to proceed pro se on appeal is GRANTED consistent with this Order.

BY THE COURT:

Carolyn Berger
Justice

Ex.⁴ D-72

AO 241   (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District OF Delaware | |
|---|---|---|
| Name James W. Riley | Prisoner No. 00164116 | Case No. 04-1435-GMS |

Place of Confinement
Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| James W. Riley | V. Thomas Carroll, Warden |

The Attorney General of the State of: Delaware, Ms. M. Jane Brady

## PETITION

1. Name and location of court which entered the judgment of conviction under attack
Kent County Superior Court

2. Date of judgment of conviction April 11, 2003

3. Length of sentence NAture life imprisonment, plus 25 years

4. Nature of offense involved (all counts)
First degree murder and First degree robbery and Possession of Deadly weapon during commission of Felony.

5. What was your plea? (Check one)
(a) Not guilty ☑
(b) Guilty ☐
(c) Nolo contendere ☐
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

N\A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
(a) Jury ☑
(b) Judge only ☐

7. Did you testify at the trial?
Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?
Yes ☑   No ☐

(2)

Ex. E-1

AO 241   (Rev. 5/85)

9.  If you did appeal, answer the following:

(a) Name of court   Delaware Supreme Court

(b) Result   Appeal denied

(c) Date of result and citation, if known   Sept. 13, 2004 and Oct. 20, 2004. C.A. No. 259, 2003
See both decisions attached to motion for Reargument "Exhibit-C").
(d) Grounds raised
Riley was denied several constitutional rights due to a conflict
of interest involving trial counsel's disloyalty.

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court   N/a

(2) Result   N/a

(3) Date of result and citation, if known   N/a

(4) Grounds raised   N/a

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court   N/a

(2) Result   N/a

(3) Date of result and citation, if known   N/a

(4) Grounds raised   N/a

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐    No ☑

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court   N/a

(2) Nature of proceeding   N/a

(3) Grounds raised   N/a

(3)

Ex. E-2

AO 241    (Rev. 5/85)

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes  ☐    No  ☐

(5)  Result                N\A

(6)  Date of result        N\A

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court          N\n

(2)  Name of proceeding     N\A

(3)  Grounds raised         N\A

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes  ☐    No  ☐
(5)  Result                N\A

(6)  Date of result        N\A

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1)  First petition, etc.     Yes  ☐    No  ☐    N\A
(2)  Second petition, etc.    Yes  ☐    No  ☐    N\A

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N\A

12.  State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.
    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

Ex. E-3

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Riley was deprived of 6th Amendment right to be represented by counsel at every stage of the trial proceedings due to a conflict of interest between Riley and counsel.

Supporting FACTS (state *briefly* without citing cases or law): prior to trial Riley's Trial counsel made false accusations that Riley previously confessed to committing these crimes and manufactured false documents to support these incriminating allegations and then threaten to reveal these false accusations in open court and withdraw as counsel if Riley didn't accept the States plea offer to a sentence of life imprisonment and proceeded to testify in support of his alibi defense at trial. Therefore, Riley was forced to waive his constitutional rights to be represented by counsel at trial and waive his right to testify in his own defense in order to protect his 5Th, 6th and 8th Amendment rights against self-incrimination, to impartial jury selection and fair penalty hearing where death sentence could have been imposed. (See detailed supporting facts in Riley's Opening Brief Filed in Delaware Supreme Court pages 1 thru 15 Exhibit "A" with Full Appendix).

B. Ground two: The Trial court failed to conduct any inquiry into the conflict of interest between Riley and his Trial Counsel violating Riley's 6th and 14th Amendment rights to Fair Trial and adequate representation by conflict free counsel.

Supporting FACTS (state *briefly* without citing cases or law): See pages 16 thru 27 of Riley's Opening Brief Filed in Delaware Supreme Court (Exhibit "A") where the Facts and Law in support hereto show that Riley made repeated requests to the trial court to conduct an in camera hearing so he could reveal the circumstances surrounding the conflict of interest, (as alleged in Ground One). At that time, to cover up his disqualifying and illegal misconduct in manufacturing false documents and false incriminating accusations against Riley, Trial counsel improperly argued against conducting any inquiry by the court in private chamber to prevent the false incriminating information from being exposed to the News media prior to jury selection. Over the objection of Riley, the trial court impermissibly accepted stand-by counsel's request not to conduct an ex parte in camera hearing to make an inquiry into the conflict of interest, which is totally contrary to both Federal and State Law governing the standard for Reviewing conflict of interest claims. Trial Counsel even told the trial court that it wasn't the appropriate official to conduct such inquiries which is again contrary to State (Delaware) and Federal (U.S. Supreme and Third Circuit) Courts Law.

(See Supporting Facts and Law hereto in Riley's Reply Brief Filed in the Delaware Supreme Court Exhibit "B").

(5)  *Ex. E-4*

AO 241  (Rev. 5/85)

C. Ground three: The Delaware Supreme Court's decision under attack herein is tainted by a presiding Judge who previously noted his disqualification on appeal, violated Riley's 6th and 14th Amendment rights to appeal and procedural due process.

Supporting FACTS (state *briefly* without citing cases or law): When Riley received the Supreme Court's Order of September 13, 2004 denying his direct appeal and affirming the trial court's conviction, Riley notice that Chief Justice Steele's name appeared on that Order along with Justices Holland and Jacobs. (See Order attached to Riley's motion for rearqument Filed in Supreme Court Exhibit "C"). When Riley Filed his motion for rearqument he attached a copy of Judge Steele's previous memo dated 10/15/02 noting Steele's disqualification. (See memo dated 10/15/02 attached to Exhibit "c").
(Continue on reverse side of page 7)...

D. Ground four: The Delaware Supreme Court's decision on the conflict of interest issue was contrary to State and Federal Law governing the issue and was based upon an unreasonable determination in light of the evidence presented in the trial court proceedings, in violation of §28 U.S.C.§ 2254 (d)(1) & (2). Riley was denied right to be represented by competent counsel on appeal.

Supporting FACTS (state *briefly* without citing cases or law):
The Delaware Supreme Court also made decisions that were totally unreasonable and contrary to both State and Federal law. Although the State trial court records unconstradictorily reflect that trial counsel improperly argued against Riley's request for the trial court to conduct an inquiry into the conflict of interest out of the presence of the media and telling the trial Judge that he is not the appropriate official to conduct such inquiry in which the trial Judge impermissibly accepted which is contrary to United States Supreme Court Law, the Delaware Supreme Court ruled that the trial court in fact made an adequate inquiry into the conflict of interest, a Factual Finding based upon an unreasonable determination in light of the evidence presented in the trial court proceeding. The Supreme Court of Delaware also sustained Riley's convictions based on trial counsel's False evidence that Riley previously confessed to committing the crime and planned to commit perjury at trial without First conducting
(continued on reverse side of pg. 6)...

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

N/A

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☑

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing    don't Know

(b) At arraignment and plea    don't Know

*Ex. E-5*

AO 241    (Rev. 5/85)

(c) At trial    Joseph A. Gabay Esq. (Acted as Stand-by counsel)
Swartz Campbell LLC, 919 Market St., Fl. 17, P.O.Box 330
Wilmington, Delaware 19899

(d) At sentencing

mr. Gabay

(e) On appeal

pro se

(f) In any post-conviction proceeding

n\a

(g) On appeal from any adverse ruling in a post-conviction proceeding

n\a

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☑  No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☑
(a) If so, give name and location of court which imposed sentence to be served in the future:

n\a

(b) Give date and length of the above sentence:

N\a

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐  No ☐  N\a

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_James W. Riley_
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

October 26, 2004
Date

_James W. Riley_
Signature of Petitioner

(7)

Ex. E-6

In The United States District Court
For The District Of Delaware

James W. Riley,
        Petitioner,

V.                                          Civil Action No. 04-1435-GMS
                                                  (Habeas Case)
Thomas Carroll,

Warden,
        Respondent,

Petitioner's Motion To Conduct
Evidentiary Hearing And To
Enter Default For Failure Of
Respondent To Answer

Now Comes the prose petitioner James Riley who
respectfully request that this Honorable Court Conduct
Evidentiary Hearing And Enter Default against the
Respondent for failing to file timely Answer to
petitioner's Habeas Petition. In support of this
motion, petitioner state the following:

In petitioner Riley's habeas petition he requested
an evidentiary hearing on the issue of trial counsel's
conflict of interest and whether counsel possessed
accurate knowledge beyond a reasonable doubt before
wrongfully determining that petitioner would allegedly
testify falsely at trial. (See Ground Four of Habeas
Petition).

                                    1    ~~Ex. E~~ Ex. E-9

2. On December 9, 2004, this District Court issued an Order directing the STATE-Respondent to file a response to petitioner's habeas petition within 45-days. As of to date some 70-days has elapsed since issuance of the Court's Order and the Respondent has not filed an Answer or moved for Enlargement of Time in which to respond hereto. The Court should enter default judgment against Respondent and grant petitioner Riley's Writ of Habeas Corpus. Or at the very least the Court shall not delay conducting an evidentiary hearing as requested in the original habeas petition.

3. Petitioner allege in Ground Four of his habeas petition that no STATE court who reviewed the two issues ever conducted the constitutionally required inquiries into the "conflict of interest" and whether "trial counsel possessed accurate knowledge beyond a reasonable doubt to support the incriminating claims that petitioner will present a false alibi and offer perjure testimony in support of false alibi." See, Shockley v. STATE, 565 A.2d 1373, 1379 (Del. Supr. 1989) (Quoting United STATEs ex rel. Wilcox v. Johnson, 555 F.2d 115, 122 (3rd. Cir. 1977)) (Attorney needs a "Firm Factual basis" for determining whether his client will perjure himself) and Also, see, Government of Virgin Islands

2

v. Zepp, 748 F.2d 125, 133-34 (3rd Cir 1984),
holding that the ... "Court recognizes an important
countervailing policy of not penalizing the accused
for the failure of its attorney to object at trial
... where there is a claim of attorney conflict of
interest. (Citation omitted). To do so would make
sense only if we accept the proposition that the
responsibility for protecting against conflicts of
interests rests entirely upon the accused. Id. Thus,
where an objection has been properly made at
trial, or, where the record clearly show actual
conflict of interest and objections made at
trial did or should have put the trial court on
notice that potential conflict of interest
existed, this court's preference for developing
such on collateral attack need not be followed,
and a full consideration of the issue is appropriate. Id.
    4. As a direct result of trial counsel's and
State Judicial Officials' misconduct which violate
petitioner's civil and constitutional rights, the
petitioner was forced to represent himself during
trial in order to protect his 5th, 6th, 8th and
14th Amendment rights against self-incrimination,
to impartial jury selection and fair sentencing
where the death penalty could have been recommended
by the jury. Due Process was never afforded!

3

Ex. E-9

5. As a continuing result of this Judicial Misconduct, the petitioner was denied the most Fundamental constitutional rights provided in every trial proceeding — i.e. the constitutional rights to conflict-free counsel; the right to be represented by competent counsel at every stage of the trial proceedings, the right to present an alibi and testify in his own defense and right against self-incrimination because trial counsel revealed this False incriminating information to several other judicial officials about petitioner's intention to testify Falsely and present a bogus alibi defense.

6. Trial counsel manufactured False evidence and altered attorney/client confidential privileged information in petitioner's case Files to incriminate and threaten petitioner that if he exercised any of the above Fundamental constitutional rights to a Fair re-trial Ordered by the issuance of a Writ of Habeas Corpus by this district court, the Honorable Sue Robinson (D. Del. C.A. No. 91-438-SLR ORDER May 23, 2002), then counsel vowed that he will reveal the incriminating information to the court and prosecution in open court with the media present prior to jury selection and sequestration. IF this incriminating inaccurate information had been revealed to any potential juror prior to jury selection then

4   *Ex. E-10*

the entire jury venire would have been biased against petitioner. So petitioner was forced to represent himself At trial to prevent conflicting trial counsel from incriminating him and subjecting him to a possible re-sentence OF death.

7. Clearly, petitioner never received the re-trial within the constitutional directions of the Habeas Order. The STaTe Court's actions on re-trial and direct appeal blatantly demonstrate a continuing racist aTTiTude (which is nothing more but a high-Tech-Lynching) that they will never respect petitioner's rights as a Black Man accused of Killing a well known white business man. Petitioner even proved that the STaTe's witnesses' lied about his involvement in the robbery and murder and that the police falsified the fingerprint evidence which placed him at the scene of the crime.

8. The STaTe Courts' actions are also a form of retribution for the Third Circuit Court's decision, ruling that the STaTe of Delaware did in fact discriminate against black people in the jury selection process and that its laws on the discriminatory practice were unconstitutional. See, Riley v. Taylor, 277 F. 3d 261 (3d. Cir. 2001).

Ex. E-II

9. In Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), the United State Supreme Court recognized that district Courts had plenary authority to conduct evidentiary hearings (entirely) in their discretion, constrained only by those Six occasions in which a hearing was required. See, Cristin v. Brennan, 281 F.3d 404, 414 (3d. Cir. 2002); Townsend, at 317, 83 S. Ct. 745. Under Townsend, an evidentiary hearing was mandatory:

> (I)F (1) The merits of the Factual dispute were not resolved in the State hearing; (2) The State Factual determination is not Fairly supported by the record as a whole; (3) The Fact Finding procedure employed by the State Court was not adequate to afford a Full and Fair hearing; (4) There is a substantial allegation of newly discovered evidence; (5) The material Facts were not adequately developed at the State-Court hearing; or (6) For any reason it appears that the State trier of Fact did not afford the habeas applicant a Full and Fair Fact hearing.

(Townsend, Id.; Cristin, at 414 n.9).

10. For the exception of reason number 4 of Townsend's 6-mandatory Factors For granting of an evidentiary hearing, the contemporaneous records, Facts, issues, pleadings in the State Courts in the Appendix to petitioner's habeas petition in support For the Grounds For relief therein meet the prerequisite requirements of all other aspects of numbers 1, 2, 3, 5 and 6 of Townsend. The State of Delaware and petitioner's

Ex. E-12

trial counsel cannot find one tittle of law to support
or justify the racism and injustice they perpetuated
against petitioner. Their misconduct is criminal and in
violation of petitioner's civil liberties prohibiting
racial discrimination.

Wherefore, for the cause shown above, the
Court shall not delay conducting an evidentiary
hearing and because Respondent defaulted any
right to oppose this request by their failure
to file an Answer within the 45-days time
period prescribed by this Honorable Court, hence
judgment for the Petitioner shall be entered.

Respectfully submitted,

James W. Riley

James W. Riley, pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Date: March 1, 2005

7

Ex. E-13

In The United States District Court
For The District OF Delaware

James W. Riley,
    Petitioner,

    v.

Thomas Carroll, et al.,
    Respondents.

C. A. No. 04-1435-GMS
(Habeas case)

Motion For Reconsideration OF
Motion For Appointment OF Counsel
And Motion For An Evidentiary
Hearing

This court issued Two ORDERS dated March 29, 2006, denying petitioner's Motion For Appointment OF Counsel (D.I. #22) and Motion For An Evidentiary Hearing (D.I. #21).

For the good reasons shown below, this court shall reconsider granting petitioner's requests.

    a.   The Denial OF Appointment OF
        Counsel

The Court's order denying Appointment OF counsel is wrong And must be reconsidered and granted. The petitioner's trial counsel Altered Attorney/Client privilege information contained in petitioner's case File. Then trial counsel proceeded to use the False Altered information

1    ~~Ex.~~ Ex. E-14

to coerce petitioner into accepting the State's guilty plea Agreement to a sentence of natural life in prison. When petitioner refused to accept the plea offer, trial counsel then proceeded to threaten petitioner that if he testify at trial in support of his Alibi defense of being elsewhere other than the scene of the crime then trial counsel will reveal to the trial court and prosecution that petitioner's alibi is false And that he will have to withdraw as counsel. At that point A conflict of interest existed and petitioner motion the trial court to excuse his counsel and invoked his 6th Amendment right to represent himself. Because trial counsel Altered documents in petitioner's case files to incriminate him good cause is shown for this court to grant petitioner's motion for appointment of counsel for the limited purpose of obtaining petitioner's entire case files in the possession of present conflict counsel and retaining those files until further notice of this court.

This court need to find out what documents counsel Altered and destroyed. This evidence is relevant and material to all petitioner's issues before this court.

If this court refuse to grant this request then Any adverse ruling will be immediately appealed to the Third Circuit Court of Appeals.

The petitioner can't believe this court (An African American Judge) is condoning the blatant racism that was done to him by the white racist judges and attorneys in Delaware Superior, Supreme and District courts.

2    Ex. E-15

## b. The Denial Of An Evidentiary Hearing

The denial of an evidentiary hearing under the circumstances is equally appalling and the ruling is not clear on what the law requires. By its ruling is this court implying that when a trial counsel accuse his or her client with perjury that the trial court or appellate court has no constitutional obligation to conduct an adequate inquiry to determine that the counsel possess accurate knowledge beyond a reasonable doubt that his client will commit perjury or will testify falsely ?? Also, is this court implying that there is no constitutional duty to hold an inquiry when it has reasons to believe there is a conflict of interest ?

The racist trial court in this case had an obligation to make both inquiries because the conflict of interest resulted from trial counsel's criminal racist misconduct in altering documents in petitioner's case files and using this false information to support his knowledge beyond a reasonable doubt that his client (the petitioner) will present a false alibi defense when he take the stand to testify.

Attached to the State's Answer is a copy of the Delaware District Courts decision in Shockley v. Kearney, 1996 WL 431093. Shockley is the lead case in the Delaware State Courts on this issue and what inquiry is required. Thus, in note 2 on page 3 of Shockley

3    *Ex. E-16*

this Court cited Rule 3.3 (d) of the Delaware Lawyer's Rules of Professional Conduct which states:

> In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

(Rule 33 (d) ).

It is apparent from the transcripts from the March 19, 2003, Hearing To Determine Representation in the trial Court, (contained in Appendix "A" of the petitioner's and Appendix "B" of the Respondent's Filed in the Delaware Supreme Court which were both provided to this court as part of the Certified records), that petitioner requested such a Rule 3.3 (d) ex parte hearing but Stand-by trial counsel argued against the trial court conducting such a hearing (A 39-38) and the trial Court granted counsel's request not to hold an ex parte inquiry. (B-50). Thus, contrary to Rule 33 (d) trial counsel told the trial Judge that he is not the appropriate individual who should conduct the in camera inspection of the evidence regarding the conflict of interest. (A-34 to 38).

Wherefore this court need not delay issuing a Final decision until the State provide this court with a copy of the March 19, 2003 transcript of Hearing To Determine Representation because the relevant portion of these transcripts are provided in the State Supreme Court Appendix(s) of the parties as cited above herein. This court shall therefore grant

4    Ex. E-17

petitioner's reconsideration of its initial denial of appointment of counsel and denial of an evidentiary hearing. If the court refuse to appoint counsel and conduct an inquiry as required by Shockley then the court shall not delay for months and years to issue a final decision so petitioner can seek the appropriate review by law in the Third Circuit Court.

James W. Riley, pro se

Delaware Correctional Center

1181 Paddock Road

Smyrna, Delaware 19977

Dated: March 31, 2006

## Proof Of Service Upon Respondents

This is to certify that petitioner, James Riley, mailed a copy of this document to Respondents Attorney, Thomas E. Brown, Deputy Attorney General, Department of Justice 820 North French Street, Wilmington, Delaware 19801; and service was issued on the date above.

Date: 4/4/06

5 Ex. E-18

DELAWARE SUPREME COURT

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

2004 OCT 20 P 3: 52

| | | |
|---|---|---|
| JAMES W. RILEY, | § | DEPUTY CLERK WILMINGTON |
| | § | No. 259, 2003 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below---Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Kent County |
| STATE OF DELAWARE, | § | Cr. A. Nos. IK82-05-0060; 0061; |
| | § | IK82-06-0838 |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted:      June 18, 2004
Decided:        September 13, 2004
Upon Rehearing: October 20, 2004[1]

Before **HOLLAND**, **BERGER** and **JACOBS**, Justices (constituting the qualified and available members of the Court *en Banc*)[2]

## O R D E R

This 20th day of October 2004, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)    The defendant-appellant, James W. Riley, has filed a pro se direct appeal from his convictions and sentences in the Superior Court.[3]    On April 11,

---

[1] Based on the arguments made in the appellant's motion for rehearing en banc, the Court's September 13, 2004 order has been re-issued with a new panel. The instant order replaces and supersedes the Court's previous order. The appellant's motion for rehearing en banc is otherwise denied.

[2] Supr. Ct. R. 4.

[3] Following Riley's request to proceed pro se in this appeal, the matter was remanded to the Superior Court for a fact-finding hearing. After receiving the Superior Court's report on remand, which found that Riley had voluntarily waived his right to counsel on appeal, this Court granted Riley's request to proceed pro se. *Riley v. State*, Del. Supr., No. 259, 2003, Berger, J. (Dec. 9,

Ex. F-1

2003, a Superior Court jury, on retrial, found Riley guilty of Murder in the First Degree, Robbery in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. Riley was sentenced to life imprisonment on the murder conviction and to a total of 25 years incarceration at Level V on the remaining two convictions.

(2)    Riley previously was convicted in 1982 of two counts of Murder in the First Degree, Robbery in the First Degree, Conspiracy in the Second Degree and Possession of a Deadly Weapon During the Commission of a Felony and was sentenced to death. His convictions and sentences were affirmed by this Court on direct appeal.[4] After unsuccessfully pursuing a state postconviction motion, Riley sought federal habeas corpus relief. In 2001, the United States Court of Appeals for the Third Circuit reversed Riley's convictions and ordered a new trial,[5] resulting in the convictions and sentences from which he now appeals.

(3)    In this appeal, Riley claims that, by failing to conduct an appropriate inquiry into his allegation of a disqualifying conflict of interest on the part of his appointed counsel and denying his motion to extend the time for filing a motion for a new trial on that ground, the trial judge constructively denied him his right to

---

2003). Riley was given the opportunity to request that his standby trial counsel continue as standby counsel in this appeal, but chose not to do so.

[4] *Riley v. State*, 496 A.2d 997 (Del. 1985).

[5] *Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001).

-2-

*Ex. F-2*

conflict-free counsel under the Sixth Amendment of the United States Constitution.[6]

(4) The factual background for Riley's claim is as follows. After Riley's convictions and sentences were overturned and his case returned to the Superior Court for re-trial, two attorneys were appointed by the Superior Court to represent him. On several occasions, Riley complained to the Superior Court judge about his court-appointed counsel. In February 2003, Riley complained that his counsel improperly refused to file a writ of certiorari in the United States Supreme Court. Also in February 2003, Riley complained that his counsel refused to have certain fingerprint evidence examined and requested leave to proceed pro se. He later withdrew this request. In March 2003, however, Riley complained that his counsel had failed to provide him with discovery material and again asserted his right to proceed pro se. In a letter dated March 18, 2003, Riley's counsel notified the Superior Court judge that Riley intended to represent himself at trial if he decided not to accept the State's plea offer. Subsequently, Riley decided not to accept the State's plea offer and, on March 19, 2003, the Superior Court judge held a hearing on Riley's request to proceed pro se at trial.

---

[6] At the August 12, 2003 fact-finding hearing following remand, Riley confirmed that this was the only issue he wished to raise in his direct appeal.

*Ex. F-3*

(5)    At the hearing, which was attended by Riley, Riley's two court-appointed defense attorneys, and two prosecutors, the judge conducted a colloquy with Riley concerning the reasons why he wanted to represent himself. Riley responded that the reasons, which involved "differences of opinions" between himself and his counsel, should not be stated in open court, but should be explored in a "private meeting" with his counsel and the judge. The judge asked if the reasons had to do with differences regarding how his case should be handled. Riley answered, "Right, yes." The judge then asked Riley if he felt competent to represent himself. Riley responded that this would be his "first time" representing himself, but that he would try and was "pretty sure" that he could handle it. He also stated that he would rather represent himself "if I had to chose (sic) between poor representation and self representation."

(6)    The judge then reviewed the charges and possible sentences with Riley and reminded Riley that he was responsible for becoming familiar with the rules of procedure and the rules of evidence. The judge pointedly told Riley that it was a mistake to represent himself, listing a number of pitfalls of self-representation. Acknowledging these admonitions, Riley replied: ". . . if you knew the facts as far as why I request to represent myself, then maybe you wouldn't think it was a mistake." The judge once more asked Riley if the reasons for his

-4-

Ex. F-4

with Riley.[8]  He stated that, due to the possible prejudicial impact on the trial,

someone other than the trial judge should conduct any inquiry into the specific

nature of the evidence in dispute.[9]  The judge then asked Riley if he agreed that

there were irreconcilable differences between him and his counsel, to which he

responded, "Yes," adding, ". . . that's why they can't represent me.  Because if

they do represent me, then certain evidence they couldn't put on."  Riley again

requested a "private" conference with the judge and his counsel.[10]

(9)    After asking several questions concerning Riley's level of education,

the judge ruled on his request to proceed pro se, explicitly declining to inquire

further into the evidentiary issues that formed the basis for the disagreement

between Riley and his counsel.  The judge stated: ". . . I have endeavored to

ascertain the reasons . . . why [Riley] wanted to represent himself, and . . . those

reasons seemed to focus on issues of evidence, probably strategy, and I've tried to

---

post-conviction counsel revealed that Riley had admitted to post-conviction counsel in five
separate interviews that he had participated in the robbery and murder.

[8] The record on appeal reflects that, on March 14, 2003, Riley's counsel wrote to Riley advising
him to accept a plea bargain and advising him that there was evidence in the file that he
previously had admitted to the crime in an interview with a psychiatrist.  In his opening brief,
Riley asserts, without record support, that his counsel told him that, if Riley testified at trial in
support of an alibi defense, he would inform the judge that the testimony was false.

[9] The record on appeal reflects that, on March 24, 2003, counsel informed then President Judge
Ridgely that, depending upon what happened at Riley's trial, he might be needed to resolve an
ethical issue that could not be presented to the trial judge.

[10] It should be noted that the three March 2003 letters written by Riley's counsel were not part of
the record in the Superior Court.  Rather, they became part of the record in this appeal when
Riley included them in the appendix to his opening brief.

*Ex. F-6*

satisfy myself that . . . it's irreconcilable . . . ." and, further, ". . . I am not inclined, . . . having satisfied myself that the differences between counsel and the defendant seem to relate directly to the case itself, . . . to hold some kind of an in camera proceeding with the defendant where I get involved in the details of that issue."

(10) Once again strongly admonishing Riley about the dangers of representing himself, the judge determined that Riley's decision to proceed pro se was knowing, intelligent and voluntary. He further ordered that Riley's counsel would remain as "standby counsel." When Riley objected to that arrangement, both the judge and counsel assured Riley that the purpose of standby counsel was to assist him only if he requested assistance. When the judge then explained that standby counsel would step in to represent Riley if he changed his mind about representing himself during the trial, Riley again objected, stating that the arrangement would result in a "conflict of interest."

(11) During trial, Riley represented himself, with the help of standby counsel. He elected not to testify in his own behalf. Certain portions of the transcript of Riley's first trial were admitted into evidence, including Riley's testimony that he was not in Dover, Delaware at the time of the murder and that the incriminating fingerprint evidence was planted. Riley chose not to address these matters in his closing argument. After trial had concluded, Riley requested that

Ex. F-9

standby counsel represent him during the penalty phase. The Superior Court granted Riley's request.

(12)  Shortly after the penalty phase of the trial had begun, Riley filed a pro se motion requesting an extension of the time within which to file a motion for a new trial. Riley argued that his motion for a new trial, which was grounded in his argument that his counsel's disqualifying conflict of interest had deprived him of his constitutional right to counsel, should be considered by the trial judge only after sentencing. At the sentencing hearing on May 19, 2003, the Superior Court denied Riley's motion, finding that there had been no disqualifying conflict of interest, only a disagreement between Riley and his counsel over trial strategy, and, moreover, that Riley's waiver of his right to counsel had been knowing, intelligent and voluntary.

(13)  The first issue to be determined in this appeal is whether Riley's counsel's actions created a disqualifying conflict of interest. Riley never specifically identifies his counsel's alleged "conflict of interest." He simply complains that his counsel would not pursue an alibi defense on his behalf. Rule 1.7 of the Delaware Lawyers' Rules of Professional Conduct provides that a lawyer has a "concurrent conflict of interest" if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the

*Ex. F-8*

representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."[11] Riley's claim of a "conflict of interest" does not fall into any of these categories.

(14)   Professional Conduct Rule 1.2 states that a lawyer "shall abide by a client's decisions concerning the objectives of representation," but also provides that the lawyer must act within the boundaries of the Rules and the law in carrying out those objectives.[12] Moreover, while a criminal defendant has a constitutional right to testify in his own defense, he does not have the right to testify falsely.[13] The United States Supreme Court has ruled that an attorney who refuses to cooperate with his client's planned perjury, as is ethically required, does not deprive the defendant of his right to counsel or his right to testify truthfully[14] and that such actions by counsel do not give rise to a disqualifying conflict of interest.[15] This Court has recognized that no per se conflict of interest between attorney and

---

[11] The three examples of a "personal interest of the lawyer" provided by the Comment to the Rule are, first, where "the probity of a lawyer's own conduct in a transaction is in serious question," second, "when a lawyer has discussions concerning possible employment . . . with an opponent of the lawyer's client, or with a law firm representing the opponent," and, third, when a lawyer refers "clients to an enterprise in which the lawyer has an undisclosed financial interest."

[12] See also Prof'l Conduct R. 1.6, 1.16, and 3.3.

[13] *Shockley v. State*, 565 A.2d 1373, 1377 (Del. 1989), citing *Nix v. Whiteside*, 475 U.S. 157, 173-76 (1986) (the right to counsel does not include the right to a lawyer who would assist the client in illegal activity).

[14] *Nix v. Whiteside*, 475 U.S. at 173-74.

[15] Id. at 176.

$Ex. F-9$

client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony.[16]  There is, thus, no factual or legal basis for Riley's contention that his counsel's actions constituted a conflict of interest or that his counsel should have been disqualified from representing him.[17]

(15)  Riley also contends that the trial judge failed to discharge his obligation to inquire fully into the disagreement between Riley and his counsel. The transcript of the colloquy between Riley and the judge at the March 19, 2003 hearing clearly reflects that the judge made the appropriate inquiries into the nature of the disagreement and properly determined, on that basis, that there was no disqualifying conflict of interest.[18]  Having made that determination, the judge properly concluded that Riley's choice was to either accept the representation of his court-appointed counsel or proceed pro se.

(16)  The final issue for consideration is whether there was error or abuse of discretion on the part of the Superior Court in granting Riley's request to proceed pro se.  The determination of whether a defendant has knowingly, intelligently and

---

[16] *Shockley v. State*, 565 A.2d at 1376-79.  We note that the cases cited by Riley in support of his claim of a conflict of interest are factually distinguishable from the case at bar.

[17] Riley argues that his counsel was reluctant to share the specifics of the disagreement with the judge because he wanted to hide his own misconduct.  We reject that characterization of Riley's counsel's actions.  Rather, as the record reflects, Riley's counsel was concerned about the possible impact on Riley's sentencing should the judge become aware of the specifics of Riley's proposed defense.  See *Holloway v. Arkansas*, 435 U.S. 475, 487 n. 11 (1978) (disclosure of client confidences to the trial court creates significant risks of unfair prejudice, especially when the disclosure is to a judge who may be called upon later to impose sentences).

[18] Prof'l Conduct R. 1.7; *Swan v. State*, 820 A.2d 342, 350-52 (2003).


Ex. F-10

voluntarily waived the right to counsel depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the defendant.[19]  Moreover, the judge can make that determination only by conducting a penetrating and comprehensive examination of all the circumstances and only after emphasizing to the defendant the perils he faces by representing himself.[20]  The transcript of the March 19, 2003 hearing clearly reflects that the judge conducted a detailed examination of the specific circumstances of Riley's request to proceed pro se and, while warning him repeatedly of the risks of doing so, properly granted his request.

(17)  This Court has reviewed the record carefully and has concluded that Riley's appeal is wholly without merit and devoid of any arguably appealable issue.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*Jack B. Jacobs*

Justice

---

[19] *Briscoe v. State*, 606 A.2d 103, 107 (Del. 1992) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Stigars v. State*, 674 A.2d 477, 479-81 (Del. 1996).

[20] Briscoe v. State, 606 A.2d at 107 (citing *Johnson v. Zerbst*, 304 U.S. at 465).

-11-

Ex. F-11

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES W. RILEY,                          )
                                         )
                Petitioner,              )
                                         )
        v.                               )        Civ. A. No. 04-1435-GMS
                                         )
THOMAS CARROLL, Warden, et. al.,         )
                                         )
                Respondents.             )

---

James W. Riley.  *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

---

## MEMORANDUM OPINION

June 19      , 2007
Wilmington, Delaware

*Ex. F - 12*



FILED

JUN 1 9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



Sleet, District Judge

## I. INTRODUCTION

Petitioner James W. Riley ("Riley") filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.)  For the reasons that follow, the court will deny his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1982, a Delaware Superior Court jury convicted Riley of murdering a liquor store owner during the course of a robbery.  Riley was sentenced to death, and the Delaware Supreme Court affirmed Riley's conviction and sentence.  Riley filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  The Superior Court denied Riley's Rule 61 motion, and the Delaware Supreme Court affirmed that judgment. *Riley v. State*, 585 A.2d 997 (Del. 1985).

In August 1991, Riley sought federal habeas relief pursuant to 28 U.S.C. § 2254.  Riley subsequently filed a motion to amend his § 2254 petition, and the Honorable Joseph J. Farnan, Jr. denied the motion to amend as well as Riley's original § 2254 petition. *Riley v. Snyder*, 840 F. Supp. 1012 (D. Del. 1993).  Riley appealed, and the Third Circuit Court of Appeals reversed the order denying Riley's motion to amend his habeas petition and remanded the case for further proceedings.  On remand, Judge Farnan denied Riley's amended habeas petition. *Riley v. Taylor*, 1998 WL 172856 (D. Del. Jan. 16, 1998).  Riley appealed, and although the Third Circuit Court of Appeals initially affirmed that decision, the Third Circuit subsequently granted Riley's petition for rehearing *en banc* on two issues and vacated the entire initial panel opinion. *See Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001).  Thereafter, the Third Circuit granted Riley's

1

$Ex. F-13$

petition for habeas relief and ordered a new trial. *Id.*

Judge Vaughn of the Delaware Superior Court appointed two attorneys to represent Riley during his re-trial. Riley filed several motions to represent himself and, in March 2003, Judge Vaughn conducted a colloquy and granted Riley's motion to proceed *pro se*. Judge Vaughn also appointed Riley's two defense attorneys as stand-by counsel. A Delaware Superior Court jury convicted Riley of first degree (felony) murder, first degree robbery, and possession of a deadly weapon during the commission of a felony, but acquitted Riley of intentional murder and a related conspiracy charge. *See Riley v. State*, 867 A.2d 902 (Table), 2004 WL 2850093 (Del. Oct. 20, 2004). Riley opted to have stand-by counsel represent him during the penalty phase of his proceeding. The Superior Court sentenced Riley to life imprisonment on the murder conviction and to a total of 25 years incarceration at Level V on the remaining two convictions. *Id.* at *1.

Thereafter, Riley filed a motion titled "motion to extend time to file a motion for new trial pursuant to Rule 33," which the Superior Court treated, and denied, as a motion for new trial. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No.259,2003, at A-145 and A-146, and A-151 to A-154.) Riley represented himself on direct appeal, and the Delaware Supreme Court affirmed his conviction and sentence. *See generally Riley*, 2004 WL 2850093.

Riley timely filed the instant petition pursuant to 28 U.S.C. § 2254. (D.I. 2.) The State filed an answer, and Riley replied. (D.I. 17; D.I. 18.) Riley's habeas petition is now ready for review.

2

$Ex. F - 14$

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford*, 538 U.S. at 206.

### B. Standard of Review

If a petitioner presented a federal habeas claim to the state's highest state court, and that

court adjudicated the claim on the merits, then federal habeas relief will only be warranted if the

state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been adjudicated on the merits for the purposes of 28

3

*Ex. F - 15*

U.S.C. § 2254(d) when the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct, and the presumption is only rebuttable by a demonstration of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Riley asserts the following four grounds for relief in his habeas petition:[1] (1) the trial court failed to conduct an adequate inquiry into the conflict of interest that existed between Riley and his two defense attorneys; (2) the Delaware Supreme Court erred in denying Riley's conflict of interest claim because it failed to determine if counsel possessed knowledge beyond a reasonable doubt that Riley's proposed alibi defense was perjurious; (3) Riley's waiver of representation was not voluntary or knowing because he only opted to represent himself in order to avoid representation by conflicted counsel; and (4) the Delaware Supreme Court decision affirming his conviction on re-trial is tainted by the participation of two justices who should have

---

[1]The court has re-numbered Riley's claims without changing the substantive arguments contained therein.

4

$Ex. F-16$

been disqualified for participating in prior proceedings involving Riley.

## A. Claims one, two, and three: Sixth Amendment violations

Claims one, two, and three, present variations of a single issue, namely, that the two
defense attorneys created, and were operating under, an actual conflict of interest because they
did not have an adequate reason for believing that Riley's proposed alibi defense was perjurious.
In his first two claims, Riley contends that he should be granted habeas relief because neither the
Superior Court, nor the Delaware Supreme Court, conducted an adequate factual inquiry into
counsels' basis for concluding that his alibi defense was false. In his third Sixth Amendment
claim, Riley argues that he did not knowingly and voluntarily waive his right to representation in
his re-trial because his request to proceed *pro se* was based on his fear of being represented by
conflicted counsel. (D.I. 18)

The factual background for Riley's Sixth Amendment claims, excerpted from the
Delaware Supreme Court's opinion and portions of the March 19, 2003 colloquy transcript, is as
follows.

> After Riley's convictions and sentences were overturned and his case returned to the
> Superior Court for re-trial, two attorneys were appointed by the Superior Court to
> represent him. On several occasions, Riley complained to the Superior Court judge about
> his court-appointed counsel. In 2003, Riley complained that his counsel improperly
> refused to file a writ of certiorari in the United States Supreme Court. Also in February
> 2003, Riley complained that his counsel refused to have certain fingerprint evidence
> examined and requested leave to proceed *pro se*. He later withdrew this request. In
> March 2003, however, Riley complained that his counsel had failed to provide him with
> discovery material and again asserted his right to proceed *pro se*. In a letter dated March
> 18, 2003, Riley's counsel notified the Superior Court judge that Riley intended to
> represent himself at trial if he decided not to accept the State's plea offer. Subsequently,
> Riley decided not to accept the State's plea offer and, on March 19, 2003, the Superior
> Court judge held a hearing on Riley's request to proceed *pro se* at trial.
>
> At the hearing, which was attended by Riley, Riley's two court-appointed defense

5

Ex. F -17

attorneys, and two prosecutors, the judge conducted a colloquy with Riley concerning the reasons why he wanted to represent himself. Riley responded that the reasons, which involved "differences of opinions" between himself and his counsel, should not be stated in open court, but should be explored in a "private meeting" with his counsel and the judge. The judge asked if the reasons had to do with differences regarding how his case should be handled. Riley answered, "Right, yes." The judge then asked Riley if he felt competent to represent himself. Riley responded that this would be his "first time" representing himself, but that he would try and was "pretty sure" that he could handle it. He also stated that he would rather represent himself "if I had to chose [sic] between poor representation and self representation."

The judge then reviewed the charges and possible sentences with Riley and reminded Riley that he was responsible for becoming familiar with the rules of procedure and the rules of evidence. The judge pointedly told Riley that it was a mistake to represent himself, listing a number of pitfalls of self-representation. Acknowledging these admonitions, Riley replied: " . . . if you knew the facts as far as why I request to represent myself, then maybe you wouldn't think it was a mistake." The judge once more asked Riley if the reasons for his request to proceed *pro se* stemmed from a disagreement about how the case should be handled. Riley agreed, referring specifically to a disagreement with his counsel over the presentation of "mitigating evidence" and an "alibi defense." The judge again strongly advised Riley against representing himself.

When the judge asked if the attorneys wished him to ask any further questions of Riley, one of the prosecutors stated that he wished to address some of the issues raised by Riley in more detail. The prosecutor stated it was well known that the State intended to present latent fingerprint evidence from a beer bottle at trial and that defense counsel had ethical concerns about Riley's proposed strategy for countering that evidence. He further stated: "So it's not simply . . . a disagreement in terms of strategy, but restrictions, ethical restrictions on what defense counsel may be able to do, which has caused a conflict."

Defense counsel responded that he had concerns about raising such issues with the judge, since the judge would be the fact finder for purposes of sentencing. Defense counsel further stated that he had contacted the Professional Ethics Committee for input on his ethical concerns, and had raised those concerns with Riley. He stated that, due to the possible prejudicial impact on the trial, someone other than the trial judge should conduct an inquiry into the specific nature of the evidence in dispute.

*Riley*, 2004 WL 2850093, at *1-3.

At this point, the trial judge asked defense counsel "[w] hat are you asking me to do . . .

[if] anything?" ( D.I. 24, at 55.) The following interaction occurred:

6

*Ex. F -18*

DEFENSE COUNSEL: I don't think - - I would say, based upon what I believe this discussion would be between Your Honor and Mr. Riley, and I assume with [the other defense attorney] and I present, that [an *ex parte in camera* hearing] would not be appropriate at this point in time. That it would be appropriate – and just so you are clear, [the other defense attorney] can disagree with me, if his opinion view is different – we do not oppose Mr. Riley's application [to proceed *pro se*] based on our discussion with him. But I think the court can make its determination without having the inquiry, and I believe the inquiry would be detrimental to the process at this point in time.

THE COURT: Okay. Well, without going into any specifics, do I understand that there's an irreconcilable difference regarding evidence?

DEFENSE COUNSEL: I would say there's certainly likely to be, yes, sir.

THE COURT: All right. Do you agree with that, Mr. Riley?

RILEY: Yes. And . . . for them reasons there, that's why they can't represent me. Because if they do represent me, then certain evidence they couldn't put on. . . .

\*     \*     \*     \*

RILEY: It's something greater than that, that I think should be discussed in private chambers, between me and my lawyers and you, yourself.

(D.I. 24, at 55-57.)

After asking several questions concerning Riley's level of education, the judge ruled on his request to proceed *pro se*, explicitly declining to inquire further into the evidentiary issues that formed the basis for the disagreement between Riley and his counsel. The judge stated: ". . . I have endeavored to ascertain the reasons . . . why Riley wanted to represent himself, and . . . those reasons seemed to focus on issues of evidence, probably strategy, and I've tried to satisfy myself that . . . it's irreconcilable . . . and, further, . . . I am not inclined, . . . having satisfied myself that the differences between counsel and the defendant seem to relate directly to the case itself, . . . to hold some kind of an *in camera* proceeding with the defendant where I get involved in the details of that issue."

Once again strongly admonishing Riley about the dangers of representing himself, the judge determined that Riley's decision to proceed *pro se* was knowing, intelligent and voluntary. He further ordered that Riley's counsel would remain as "standby counsel." When Riley objected to that arrangement, both the judge and counsel assured Riley that the purpose of standby counsel was to assist him only if he requested assistance. When the judge then explained that standby counsel would step in to represent Riley if he changed his mind about representing himself during the trial, Riley again objected, stating that the arrangement would result in a "conflict of interest."

7

Ex. F -19

> During trial, Riley represented himself, with the help of standby counsel. . . . After trial had concluded, Riley requested that standby counsel represent him during the penalty phase. The Superior Court granted Riley's request.

*Riley*, 2004 WL 2850093, at \*1-3.

Riley presented his conflict of interest claims to the Delaware Supreme Court on direct appeal of his re-trial, and the Delaware Supreme Court denied the claims as meritless. Therefore, the court will review the Delaware Supreme Court's decision under § 2254(d)(1) to determine if the decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[2]  Additionally, where Riley challenges the state court decision on factual grounds, the court will review the state court decision under § 2254(d)(2) to determine if it was based on an unreasonable determination of the facts in light of the evidence presented.

The Sixth Amendment guarantees a criminal defendant "the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). To prevail on a Sixth Amendment claim based on a conflict of interest, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). An actual conflict of interest arises when "trial

---

[2]A Sixth Amendment conflict of interest claim is usually treated as a special type of ineffective assistance of counsel claim because, if the attorney actively represented conflicted interests that adversely affected his performance, the attorney's assistance will be presumed to have been prejudicially ineffective. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In Delaware, ineffective assistance of counsel claims must be asserted and reviewed on post-conviction review pursuant to Delaware Superior Court Criminal Rule 61. Therefore, when the Delaware Superior Court conducted a hearing on Riley's motion to proceed *pro se*, it specifically stated that any allegations involving the effectiveness of counsels' assistance would not be reviewed on direct appeal. (D.I. 17, *State v. Riley*, No. 259,2003, "Findings of Fact and Conclusions of Law", at ¶ 15 (Del. Super. Ct. Aug. 18, 2003)

8

*Ex. F-20*

to the Co-Chair of Delaware's Professional Ethical Committee regarding his concern. Judge Vaughn explicitly asked counsel what type of action was required, and counsel replied that the situation with Riley did not necessitate an *ex parte in camera* hearing at that particular point in time. Judge Vaughn then asked Riley more questions to ascertain the nature of the disagreement, and Riley still described the problem as a difference of opinion over the presentation of evidence. Riley consistently maintained that he wanted to represent himself, and he never asked for the appointment or substitution of new counsel.

In short, Judge Vaughn's factual inquiry into the nature of the "conflict" and into Riley's awareness of the "conflict" sufficiently satisfied his threshold duty of inquiry, thereby eliminating the need for any other type of inquiry such as an *ex parte in camera* proceeding. *See* § 2254(d)(1). Further, Judge Vaughn properly relied on counsel's assessment of the situation in determining that there was no conflict or need to conduct an *ex parte in camera* hearing, and he reasonably determined that the situation involved an evidentiary dispute that did not disqualify counsel from acting as stand-by counsel. *See Mickens*, 535 U.S. at 167-68 ("defense counsel is in the best position to determine if a conflict exists."); *See* § 2254(d)(2). Moreover, because Judge Vaughn repeatedly asked Riley to describe the problem in his own words, and Riley consistently referred to the problem as one of evidence, it was reasonable for Judge Vaughn to conclude that the problem between Riley and counsel involved a difference of opinion over strategy and the presentation of evidence.[4] *Id.* Accordingly, the court will deny Riley's first

---

[4]Although Riley objected to the appointment of the two attorneys as stand-by counsel by stating that such appointment would create a conflict, Riley subsequently agreed to the appointment of counsel on a stand-by basis after being assured by counsel and Judge Vaughn that he would be the one deciding what to offer as evidence and testimony. In response to Riley's objection to the appointment of stand-by counsel, counsel specifically stated that his

12

*Ex. F-21*

claim.[5]

## 2. Claim Two: Delaware Supreme Court's inquiry into the perjury issue

In his next claim, Riley argues that he is entitled to habeas relief because the Delaware

Supreme Court failed to hold an evidentiary hearing to determine if counsel possessed

knowledge beyond a reasonable doubt that Riley's proposed alibi defense constituted perjury.

Riley contends that the Delaware Supreme Court should not have relied on the statements

contained in counsels' letter to the Professional Ethics Committee in determining the perjury

issue; instead, the Delaware Supreme Court should have independently reviewed the records to

which counsel referred.

As an initial matter, Riley's pronouncement that attorneys must possess knowledge

beyond a reasonable doubt that the defendant intends to commit perjury is a standard imposed by

Delaware caselaw.[6] *See Shockley v. State*, 565 A.2d 1373, 1379 (Del. 1989). Therefore, to the

---

understanding of stand-by counsel's role was "to protect [Riley's] interest in fundamental fairness as he proceeds, but not to interject into the trial any views we might have about the offering of testimony." (D.I. 17, App. to Appellant's Br. in *Riley v. State*, No. 259,2003, at A-44.) Judge Vaughn also explained that "[t]he stand-by counsel is there to assist you, to the extent that you wish to have their assistance, in making decisions and handling the case. They, as stand-by counsel, they don't tell you what to do, and it's up to you to as to when you want their assistance." *Id.* at A-45. Finally, Judge Vaughn specifically stated that if there were any issues that "develop in [the] area [of stand-by counsel's role), the Court can address them." *Id.*

[5]Additionally, even if Judge Vaughn should have undertaken a further initial inquiry, Riley is not be entitled to habeas relief because there was no actual conflict of interest that adversely affected counsel's performance. *See infra* at 14-17.

[6]The Third Circuit has articulated a requirement that a defense attorney have a "firm factual basis" for believing that the defendant intends to testify falsely before informing the trial court of the defendant's perjurious intent. *United States ex rel Wilcox v. Johnson*, 555 F.2d 115, 122 (3d Cir. 1986). Yet, even the Third Circuit has not addressed the precise issue here, namely, whether a state appellate court must conduct an evidentiary hearing to determine the basis for an attorney's belief regarding his client's planned perjury when that defendant represented himself

Ex. F - 22

extent Riley's claim is premised on a violation of Delaware law, the claim fails to present an issue cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62. 67-8 (1991).

Further, the court has not found any Supreme Court precedent addressing the precise issue here, namely, whether a state court presented with a post hoc issue involving a defendant's intent to commit perjury is required to conduct an evidentiary hearing to ascertain the factual basis for defense counsel's belief that the defendant intended to commit perjury, or whether the state court may rely on the reasons proffered by counsel for reaching that conclusion.[7] The closest Supreme Court precedent addressing this issue is *Nix v. Whiteside*, 475 U.S. 157 (1986), in which the Supreme Court held that a defendant's Sixth Amendment right to effective assistance of counsel is not violated when an attorney refuses to cooperate with the defendant in presenting perjured testimony at trial, or threatens to withdraw. In *Nix*, after the jury found the defendant guilty of second degree murder, the defendant filed a motion for new trial, asserting that his attorney had violated his right to a fair trial by advising him not to present certain testimony because counsel believed the testimony to be perjurious. The trial court held a hearing, heard testimony by the defendant and counsel, and denied the motion for new trial after determining that the defendant would have perjured himself had he testified at trial. Thereafter, the state appellate court, the federal district court, the federal circuit court, and the United States Supreme Court all accepted the trial court's finding that "counsel believed with good cause that [the defendant] would testify falsely." *Id.* at 163.

Although the trial court in *Nix* actually did conduct an evidentiary hearing to determine if

_____

at trial and did not testify at trial.

[7]The court also has not found any Third Circuit case addressing the precise issue here.

14

Ex. F-23

the defendant's proposed testimony constituted perjury, the court finds nothing in *Nix* requiring a state appellate court to conduct an evidentiary hearing when, as here, the state trial court did not do so.[8] Therefore, the court concludes that the Delaware Supreme Court's failure to conduct such a hearing was neither contrary to, nor an unreasonable application of, clearly established Federal law.

The court's inquiry, however, is not over. The fact that the Delaware Supreme Court did not conduct an evidentiary hearing regarding Riley's intended perjury and that it did not make any express findings of historical fact with respect to the perjury does not mean that the Delaware Supreme Court refrained from making any factual findings with respect to counsels' belief that Riley intended to commit perjury. "[I]f no express findings of fact have been made by a state court, the District Court [in a habeas proceeding] must initially determine whether the state court has impliedly found material facts." *Townsend v. Sain*, 372 U.S. 293, 314 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Additionally, the presumption of correctness under § 2254(e)(1) applicable to a state court's explicit factual findings applies to factual findings that are implicit in the state court's decision, unless the petitioner provides clear

---

[8]In fact, the record reveals that Riley actually asked the Superior Court to refrain from conducting an inquiry into the perjury issue. After the jury issued its guilty verdict, Riley filed a motion for new trial, arguing that stand-by counsel had been operating under a conflict of interest because they threatened to reveal attorney-client privileged information to the court if he presented his alibi defense during his trial. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No. 259,2003, at A-153.) Riley specifically stated that, "[a]t this late stage in the proceedings it would be potentially prejudicial for the court to review any new evidence in connection with [his] motion for new trial that could influence the trial judge's final decision as to the appropriate penalty." *Id.* at A-154. Limiting its review of the matter to "the colloquy at the time that [Riley] waived . . . counsel . . .," the Superior Court denied the motion for new trial because it was "satisfied that [Riley's] attorneys did not have any conflict of interest as such. There was simply a disagreement over trial strategy." *Id.* at A-146.

Ex. F-24

and convincing evidence to the contrary. *See Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000); *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)(presumption of correctness applies to the factual determinations of both state trial and appelllate courts). And finally, "[e]ven [when] a petitioner can rebut a state court's factual finding by clear and convincing evidence, [a court] can only grant habeas relief if the state court's factual finding was 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davenport v. Diguglielmo*, 2007 WL 412422, at *3 (3d Cir. Feb. 7, 2007)(non-precedential); *see* Fed. R. App. P. 32.1 (permitting the citation of federal judicial opinions that have been designated as non-precedential, unpublished, etc.) Therefore, the court must determine if the Delaware Supreme Court implicitly found Riley's proposed alibi defense to be perjurious, and if so, whether that determination was reasonable in light of the facts presented to the state appellate court on direct appeal.

The court will base its review under § 2254(d)(2) upon the following record, which is the same record that was presented to the Delaware Supreme Court. During his first trial in 1982, Riley testified that he was in Philadelphia at the time of the robbery and that he did not participate in the crime. However, no witnesses testified during that trial to support Riley's alibi defense, and a latent fingerprint lifted from a beer bottle found at the scene of the crime and identified as Riley's was introduced into evidence during the trial. *See Riley v. Snyder*, 840 F. Supp. 1012 (D. Del. 1993), *vacated on other grounds by Riley v. Taylor*, 62 F.3d 86 (3d Cir. 1995); (D.I. 17, App. to State's Ans. Br. in *Riley v. State*, No.259,2003, at B-57 through B-61.)

Prior to his re-trial in 2003, Riley sought chemical testing on the same beer bottle found at the crime scene in 1982. The chemical testing identified the fingerprint as Riley's. According

16

*Ex. F-25*

to counsel, Riley told counsel that he intended to testify that the police planted his fingerprint on the bottle, and that he intended to testify that he was in Philadelphia at the time of the murder and not in Dover (where the murder took place). Riley also stated that he would produce witnesses indicating that he was in Philadelphia at the time of the murder.[9]

Counsel received a box of file materials from Riley's former post-conviction counsel during their preparation for Riley's re-trial. That box contained former counsel's notes outlining his interviews with Riley. In those interviews, Riley described in significant detail his own participation in the robbery and subsequent murder. Riley also described other actions that were consistent with events both prior to and subsequent to the crime. Faced with the inconsistency between Riley's proposed alibi defense and the information contained in the post-conviction file, defense counsel concluded that Riley's proposed alibi defense was false. (D.I. 30, App. to Appellant's Op. Br. in *Riley v. State*, No. 259,2003)

At some point after that determination, Riley informed counsel that he intended to represent himself during his trial. Given the possibility of being appointed as stand-by counsel, counsel dictated a letter to the Co-Chair of Delaware's Professional Ethics Committee on March 19, 2003, the same morning on which the Superior Court was to conduct a hearing on Riley's motion to proceed *pro se*. In that letter, counsel asked if stand-by counsel would have an ethical obligation to advise the court of Riley's intent to present false testimony and, if so, whether it would be proper to notify Judge Vaughn about Riley's intent or whether counsel should notify a judge other than Judge Vaughn. Counsel also sent a letter to President Judge of the Superior

---

[9]This information was revealed in counsel's letter to the co-chair of Delaware's Ethical Committee. (D.I. 30, App. to Appellant's Op. Br. in *Riley v. State*, No. 259,2003)

17

$Ex. F-26$

Court who was not presiding over Riley's 2003 criminal trial warning him that there may be a potential problem in the future that would require review from someone other than Judge Vaughn. *Id.* Later that morning, after conducting a thorough colloquy, Judge Vaughn granted Riley's motion to proceed *pro se* and appointed defense counsel as stand-by counsel.

Evidence of the latent fingerprint lifted from the beer bottle in 1982 was introduced during Riley's re-trial, as was evidence from the chemical testing in 2003 that also identified the fingerprint as Riley's. Although Riley voluntarily waived his right to testify on re-trial, his testimony from the 1982 trial, including his alibi defense, was read to the jury.

Riley was convicted, and he appealed. On direct appeal, Riley argued that counsel did not have a reasonable basis for concluding that Riley's proposed alibi defense was false. In fact, Riley argued that counsel manufactured the evidence demonstrating the falsity of Riley's alibi defense. (D.I. 17.) However, Riley never disputed counsels' statements that Riley had informed counsel about his intent to present the alibi defense on re-trial and find witnesses to support that defense. The Delaware Supreme Court denied the claims raised in Riley's appeal.

After reviewing the state supreme court's decision in context with the record summarized above, the court concludes that the Delaware Supreme Court's decision reflects an implicit factual determination that Riley's proposed alibi defense was perjurious. In his initial appellate brief, Riley explicitly argued that the trial court had failed to conduct a "*Shockley*" inquiry to determine if counsel possessed accurate knowledge beyond a reasonable doubt Riley intended to testify falsely at trial.[10] Then, in his "motion for reargument *en banc*" presented to the Delaware Supreme Court, Riley specifically argued that the Delaware Supreme Court needed to conduct

---

[10]*Shockley v. State*, 565 A.2d 1373, 1379 (Del. 1989).

18

$Ex. F-27$

the "*Shockley*" inquiry into the basis for counsels' belief that Riley intended to commit perjury. Although the Delaware Supreme Court did not explicitly address Riley's *Shockley* argument in its decision, the Delaware Supreme Court did discuss the three March 2003 letters written by Riley's counsel explaining the basis for counsels' conclusion that Riley intended to commit perjury. The Delaware Supreme Court also considered, and rejected, Riley's argument that counsel fabricated the evidence indicating that his planned alibi defense was not true, and characterized the issue before it as involving a client's "planned perjury," or an attorney's questioning of "the veracity of his client's anticipated trial testimony," *Riley*, 2004 WL 2850093, at *3. Finally, at the end of its analysis, the Delaware Supreme Court cited *Shockley* to support its statement that "[t]his Court has recognized that no per se conflict of interest between attorney and client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony." *Riley*, 2004 WL 2850093, at *3.

When viewed in this context, the Delaware Supreme Court's final conclusion that there was no "factual or legal basis for Riley's contention that his counsel's actions constituted a conflict of interest or that his counsel should have been disqualified from representing him"[11] demonstrates the state supreme court's implicit factual determination that Riley's proposed alibi defense was fictitious. Riley attempts to rebut this factual finding by arguing that counsel was angered by Riley's failure to accept the plea agreement and therefore manufactured the evidence indicating the falsity of his alibi defense. However, because the record belies this specious argument, the court concludes that Riley has failed to provide any clear and convincing evidence to rebut the presumption that the Delaware Supreme Court's factual finding is correct. In turn,

---

[11]*Riley*, 2004 WL 2850093, at *3.

19

$Ex. F - 28$

the court also concludes that the Delaware Supreme Court's determination that Riley planned to commit perjury was reasonable in light of the facts presented to the state appellate court during Riley's direct appeal. Therefore, to the extent Riley challenges the Delaware Supreme Court's decision on factual grounds, the court concludes that habeas relief is not warranted under § 2254(d)(2).

Having determined that the Delaware Supreme Court reasonably concluded that Riley's proposed alibi defense constituted perjury, the court must next determine if the Delaware Supreme Court's denial of Riley's conflict of interest claim was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In *Nix*, 475 U.S. at 176, the Supreme Court held that the type of conflict arising from a client's proposal to commit the crime of perjury does not constitute an actual conflict rendering an attorney's performance presumptively ineffective or requiring the attorney's automatic disqualification. The Supreme Court explained that, "[i]f a 'conflict between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means." *Id.* at 176.

Here, because the alleged conflict stemmed from Riley's proposal to commit perjury, the Delaware Supreme Court properly identified *Nix* as the governing precedent and analyzed Riley's claim within its framework. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established Federal law.

Further, given *Nix*'s clear and unequivocal holding that the type of conflict arising from a client's intent to commit perjury does not constitute an actual conflict, the court concludes that

20

*Ex. F-29*

the Delaware Supreme Court reasonably applied Supreme Court precedent in holding that Riley's

two defense attorneys were not operating under an actual conflict of interest requiring their

disqualification.[12] And finally, given the absence of any actual conflict of interest, the court

concludes that the appointment of the two attorneys as stand-by counsel did not violate Riley's

Sixth Amendment right to conflict-free counsel.

Having determined that there was no actual conflict of interest, the court must review

Riley's claim under the two-pronged standard articulated by the Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984) to determine if counsels' actions violated Riley's Sixth

Amendment right to the effective assistance of counsel.[13] *See Hess v. Mazurkiewicz*, 135 F.3d

905, 910 (3d Cir. 1998) (if a petitioner can only establish the existence of a potential conflict of

interest, then, pursuant to *Strickland*, the petitioner will have to demonstrate prejudice in order to

prove counsel was ineffective). Under the first *Strickland* prong, a petitioner must demonstrate

---

[12]For example, the Delaware Supreme Court determined that defense counsels' refusal to pursue an alibi defense did not constitute a "conflict of interest" under the Delaware Lawyers' Rules of Professional Conduct because the case did not involve the representation of more than one client or involve representation materially limited by a personal interest of the attorney. Then, referring to Delaware caselaw and *Nix*, the Delaware Supreme Court explained that "no *per se* conflict of interest between an attorney and client is created when an attorney, recognizing his ethical obligations, questions the veracity of his client's anticipated trial testimony." *Riley*, 2004 WL 2850093, at *3. The Delaware Supreme Court also explained that, under *Nix*, a criminal defendant's right to testify does not include the right to testify falsely, and that an attorney may refuse to cooperate with a client's planned perjury without depriving the defendant of his right to counsel. *Id.*

[13]Although the Delaware Supreme Court did not explicitly review the merits of Riley's ineffective assistance of counsel claims under *Strickland*'s two-pronged standard, the Delaware Supreme Court implicitly addressed the issue by concluding that, pursuant to *Nix*, "an attorney who refuses to cooperate with his client's planned perjury, as is ethically required, does not deprive the defendant of his right to counsel." *Riley*, 2004 WL 2850093, at *3. Therefore, the court will review the claims under § 2254(d)(1).

21

*Ex. F - 30*

that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must establish prejudice by showing "a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). The *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Riley first contends counsel performed ineffectively by threatening to expose his perjury to the court and by threatening to withdraw unless Riley accepted the plea agreement. The record belies this challenge. Counsel's letters to the Co-Chair of Delaware's Professional Ethics Committee and to the President Judge demonstrates counsel's conscientious attempt to avoid revealing the substance of Riley's intended perjury to the trial court. Additionally, even though counsel urged Riley to accept the plea offer, neither the letters nor any other document in the record indicates that counsel threatened to withdraw. (D.I. 3, at A-11 and A-12.)

Moreover, even if counsel did threaten to reveal Riley's perjury or to withdraw as counsel, such conduct did not fall below an objective standard of reasonableness. As explained in *Nix*, "[w]hether [counsel's] conduct is seen as a successful attempt to dissuade his client from committing the crime of perjury, or whether seen as a 'threat' to withdraw from representation

22

*Ex. F - 31*

and disclose the illegal scheme, [counsel's] representation of [defendant] falls well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland*." *Nix*, 475 U.S. at 171.

Riley also cannot satisfy the prejudice prong of the *Strickland* standard. First, because the right to testify does not include the right to testify falsely, *Harris v. New York*, 401 U.S. 222, 225 (1971), Riley "has no valid claim that confidence in the result of his trial has been diminished by his desisting from the contemplated perjury." *Nix*, 475 U.S. at 176. Second, to the extent Riley contends that counsels' threats forced him to forego testifying at his re-trial, the transcript of the trial demonstrates that Riley's decision not to testify was both voluntary and knowing. (D.I. 17, App. to Appellant's Op. Br. in *Riley v. State*, No.259,2003, at A-125 to A-129.) And, perhaps most significantly, Riley cannot establish prejudice because his testimony from his first trial setting forth the alibi defense was actually admitted into evidence in his re-trial. Accordingly, the court concludes that Riley's claim regarding counsels' alleged threats does not warrant habeas relief.

Riley also contends that trial counsel provided ineffective assistance during the hearing on Riley's motion to proceed *pro se* because counsel argued against Judge Vaughn conducting an *ex parte in camera* inquiry into Riley's disagreement with counsel. In *Holloway v. Arkansas*, the Supreme Court held that an attorney should not disclose client confidences to the judge who may be called upon later to impose the defendant's sentence for fear of creating a significant risk of unfair prejudice. *Holloway*, 435 U.S. at 487 n.11. During the March 19, 2003 colloquy, counsel actually stated that, if any *ex parte in camera* hearing was needed at a later date, Judge Vaughn would not be the proper person to conduct such a hearing because of the impropriety of

23

*Ex. F-32*

discussing evidentiary issues with a judge who, pursuant to Del. Code Ann. tit. 11, § 4209, would become the finder of fact for sentencing purposes. (D.I. 24, at 53.) Accordingly, because the Delaware Supreme Court's denial of the instant claim was explicitly based on *Holloway*, the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law.

### 3. Claim Three: involuntary waiver of representation

Finally, Riley contends that his waiver of representation was involuntary and unknowing because he only asked to proceed *pro se* in order to avoid representation by conflicted counsel. Interestingly, however, Riley filed his motion to proceed *pro se* before counsel determined that Riley's proposed alibi defense was false, thereby casting doubt on his contention that he only decided to proceed *pro se* after counsel allegedly threatened to withdraw. Moreover, as previously explained, Riley's two defense attorneys were not operating under an actual conflict of interest. These two reasons alone provide the court with a sufficient basis for denying Riley's instant claim as factually baseless.

More significantly, however, the court concludes that Riley's claim does not warrant habeas relief when reviewed under § 2254(d)(1) and the framework provided the clearly established Supreme Court precedent governing self-representation claims. Pursuant to *Faretta v. California*, 422 U.S. 806 (1975), a criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. A trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting a defendant to proceed *pro se*. *Iowa v.*

24

$Ex. F- 33$

*Tovar*, 541 U.S. 77, 88 (2004).

Here, the Delaware Supreme Court's decision that Riley voluntarily and knowingly waived his right to representation by counsel constituted a reasonable application of *Faretta*. Prior to granting Riley's request to proceed *pro se*, Judge Vaughn reviewed Riley's background, explained the serious charges and potential sentence that Riley faced, reviewed the rules that Riley would have to follow during his criminal proceeding, warned Riley that making mistakes could severely hurt his case, and repeatedly advised Riley that he should not represent himself. In turn, Riley repeatedly stated that he understood his rights and the consequences of waiving counsel. Thus, even if Riley's decision to proceed *pro se* stemmed from his desire to present evidence that counsel was ethically constrained to present, Judge Vaughn conducted a sufficient *Faretta* inquiry and reasonably concluded that Riley's decision to represent himself was not involuntary or coerced. Accordingly, the court will deny Riley's involuntary waiver of representation claim.

### B. Claim Four: participation of judges in Riley's direct appeal

In his final claim, Riley alleges that the Delaware Supreme Court erroneously affirmed his convictions and sentence due to the fact that two judges improperly participated in the decision. First, Riley contends that Chief Justice Myron Steele should have been disqualified from hearing his appeal because the Chief Justice presided over the 1989 post-conviction evidentiary hearing on Riley's *Batson* claim. (D.I. 2, at ¶ 12C.) The court will deny this claim as factually baseless. Although Chief Justice Steele participated in the initial appellate panel that denied Riley's appeal in September 2004, he was not on the actual panel that reconsidered and

25

$Ex. F- 34$

decided Riley's appeal *en banc* in October 2004.[14]

Riley also contends that Justice Holland should not have been included in the new

appellate panel on re-trial because Justice Holland was on the panel which denied Riley's post-

conviction appeal back in 1990, and it was the reversal of that 1990 decision that led to Riley's

re-trial in 2003. Although the record reveals that this claim is procedurally defaulted,[15] the court

will invoke its authority under § 2254(b)(2) to review the merits of the instant claim rather than

engage in an analysis under the procedural default doctrine. *See Hameen v. Delaware*, 212 F.3d

226, 251-52 (3d Cir. 2000)(stating that a federal court may "act consistently with [28 U.S.C. §

2254(b)(2)] when there is a possible procedural default."); *see also Bronshtein v. Horn*, 404 F.3d

700, 728 (3d Cir. 2005)(rejecting a procedurally defaulted claim as meritless).

The Third Circuit has held that the appearance of bias on the part of a state court judge,

without more, does not rise to the level of a constitutional violation cognizable on habeas review.

*See Johnson v. Carroll*, 369 F.3d 253, 259 (3d Cir. 2004). Here, Riley does not allege, and the

record does not reveal, any evidence that Justice Holland was actually biased against Riley, or

---

[14]The Delaware Supreme Court affirmed Riley's conviction and sentence rendered on re-trial on September 13, 2004. Riley filed a motion for rehearing *en banc*, which resulted in the formation of a new panel to re-consider Riley's appeal. That new panel, consisting of Justices Randy Holland, Caroline Berger, and Jack Jacobs, reconsidered Riley's appeal and issued a new superseding order dated October 20, 2004 affirming Riley's conviction and sentence. *See Riley v. State*, 2004 WL 2850093, at *1 nn.1-2 (Del. Oct. 20, 2004)(en banc)(citing Del. Supr. Ct. R. 4).

[15]Riley never presented his objection regarding Justice Holland to the Delaware state courts, and any attempt on Riley's part to obtain state court review of the instant claim at this point in time would be time-barred by Delaware Superior Court Criminal Rule 61(i)(1). Therefore, this claim is procedurally defaulted, precluding review on the merits absent a showing of cause and prejudice, or a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

26

Ex. F - 35

that Justice Holland relied on any extrajudicial information in determining Riley's direct appeal.

Therefore, the court will deny Riley's claim regarding Justice Holland as meritless.[16]

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule

22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Riley's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Riley's petition for habeas relief pursuant to 28 U.S.C. § 2254 is

denied. An appropriate order shall issue.

---

[16]If, however, the court cannot properly deny a procedurally defaulted claim as meritless, the court alternatively denies Riley's claim about Justice Holland as procedurally barred. Riley has not alleged, and the court cannot discern, any cause for Riley's failure to raise this claim to the Delaware state courts prior to filing the instant petition. In the absence of cause, the court does not need to address the issue of prejudice. Moreover, Riley has not provided reliable evidence of his actual innocence to satisfy the miscarriage of justice exception to the procedural default doctrine.

Ex. F - 36

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES W. RILEY,                          )
                                         )
              Petitioner,                )
                                         )
       v.                                )      Civ. A. No. 04-1435-GMS
                                         )
THOMAS CARROLL, Warden, et. al.,         )
                                         )
              Respondents.               )

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner James W. Riley's petition for the writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.  (D.I. 2.)

2. The court declines to issue a certificate of appealability.  *See*  28 U.S.C. § 2253(c)(2).

Dated: _Jue /9_ , 2007

_____
UNITED STATES DISTRICT JUDGE



```
 FILED

JUN 1 9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

*Ex. F -37*

In The United States District Court
For The District of Delaware

James W. Riley,
            Petitioner,
        v.
Thomas Carroll, et al,
            Respondents

C.A. No. 04-1435-GMS

RECEIVED
AUG 14 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Motion To Alter The Judgment
Rendered In The District Court's
Memorandum Opinion Dated
June 19, 2007 Denying Habeas
            Relief

Now come petitioner James W. Riley who
re-argue in this motion To Alter the Judgment
rendered by the District Court in its June 19, 2007
Memorandum Opinion denying habeas corpus relief.
See Local Rule 7.1.5 And F.R.C.P. 59(e). A
motion under Rule 59(e) should be granted to
correct a clear error of law or prevent
manifest injustice. Mobil Oil Corp. v. Amoco
Chems, Corp., 915 F. Supp. 1333, 1399 (D. Del. 1995)

The Court's Dismissal Of Mr. Riley's
Conflict Of Interest Claims Were
A Clear Error of law

The District Court ruling that an ex parte
                1   Ex. F-38

hearing is not required whenever a Trial Counsel
accuse his client of perjury and will testify
falsely is contrary to all Federal and State Court
law on this issue. See Chief Judge Sue L.
Robinson's Ruling in Shockley v. Kearney, 1996
WL 431093 (D.Del.) at page 3, 8 and 9 where
this Court stated that "[I]n Strickland, the
Supreme Court cited the Model Rules of Profession
Conduct, on which the Delaware Rules are based,
and discussed the usefulness of "prevailing norms
of practic" as reflected in American Bar Association
standards and the like as guides ... for determining
whether an attorney's assistance was objectively
reasonable. Id. at pg. 9. The Delaware Lawyer's
Rules of Professional Conduct, Rule 3.3 (d) states:
"in an ex parte proceeding, a lawyer shall inform
the tribunal of all material fact known to the
lawyer which will enable the tribunal to make
an informed decision, whether or not the facts
are adverse. Id. at pg. 3 FN 2. Thus, in such
ex parte hearing the Delaware Courts have
adopted the "prevailing norms of practice"
that an attorney must present evidence "beyond
a reasonable doubt" that his client intended
to commit perjury." Id. at pg. 9
    Since Riley's Trial Counsel was making perjury
Accusations against him then it was counsel's

2    Ex. F-39

duty under Rule 3.3 (d) to inform the trial court in ex parte of the factual circumstances supporting counsel's belief that Riley planned to testify falsely.

However, when Riley requested such an ex parte hearing be conducted by the trial court his trial counsel argued against it. Based upon trial counsel's improper arguments which were accepted by the trial court, no ex parte hearing was held to review the evidence supporting Trial counsel erroneous belief that Riley intended to commit perjury.

No Delaware State or Federal Court ever examined the evidence supporting Trial counsel's perjury allegations against Riley which consist of claims that Riley made several confessions to committing these crimes during interviews with Three (3) of his postconviction counsels in 1991 & 1992 and during interviews with psychiatrist in 1987.

Petitioner Riley contend that he never confessed to committing these crimes and there has been no Rule 3.3 (d) review of the evidence of any alleged incriminating confessions made by Riley in 1991, 1992 and 1987. However Riley contend that such incriminating accusations themselves are false and the action he took in invoking his 6th Amendment right to self representation was justified to protect

3    Ex. F-40

his 6Th Amendment right To imparTial jury selection
And 8Th Amendment right To adequate sentencing
where the death penalty was a possible sentence That
could have been recommended by The jury. In taking
this course of action, Riley was forced to give up
his other 6Th Amendments rights to put on an Alibi defense
And to testify in his own defense. Thus, trial counsel's
Accusations of client perjury is itself proof that counsel
threaten to withdraw as counsel or will not represent
Riley AT All stages of The Trial proceedings, or else
why would counsel bother To make such accusations?

This Court Also discern itself with the allege
strength of the prosecution's evidence against Riley,
(Although the jury acquitted him of First degree
intentional murder and conspiracy), which is
contrary to the leading conflict of interest
case of Holloway v. Arkansas, 435 U.S. 475, 489
(1978) citing Tumey v. Ohio, 273 U.S 510 (1927) that
"[A] conviction must be reversed if [the asserted
trial error occurred], even if no particular prejudice
is shown and even if the defendant was clearly
guilty."

Therefore this court's conclusion of Law that
Riley trial counsel's perjury accusations did not result
in an actual conflict of interest is totally contrary
to well established Delaware Law, federal case
Law and Rule 3.3(d) of the Delaware Lawyer's

Ex. F-41

4

Rules of Professional Conduct for ex parte proceedings (And habeas evidentiary hearings). This court should not have accorded the state courts' decisions any presumption of correctness or paid it any difference because it is incorrect and rooted in racism.

Neither the state court nor the district court established an evidentiary record for the third Circuit court to redress the basis of trial counsel's perjury accusations against Riley which are based on allege confessions made by Riley to his prior attorneys and psychiatrist. No confessions were ever made part of the state court records in which this district court deferred to.

The Court's ruling is so far off base with the applicable principle of law that it constitute a new Rule of Law in which a single Judge have no authority to do. The Court's ruling is contrary to Chief Judge Sue L. Robinson's decision in Shockley v. Keaney, supra.

Wherefore to prevent manifest injustice and to correct clear error of law this court must grant this request to Alter its Judgment of Memorandum Opinion dated June 19, 2007, and issue a writ of habeas corpus vacating Petitioner's convictions and sentences and remand this case back to the Delaware state Courts for a new trial.

Alternatively, Petitioner respectfully requests

Ex. F-42

5



UNITED STATES
POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



7500 LINDBERGH BLVD
PHILA PA 19176-9601

NIXIE UNIT



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

IN THE MAIL
FOUND LOOSE

J CALEB BOGGS FEDERAL BLDG
844 N KING ST
WILMINGTON DE 19801-3519

EP63